## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau and the People of the State of New York, by Eric T. Schneiderman, Attorney General for the State of New York, <br><br> Plaintiffs, <br><br> v. <br><br> RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz, <br><br> Defendants. | Case No. |

## COMPLAINT

Plaintiffs, the Consumer Financial Protection Bureau ("Bureau") and the People of the State of New York ("State of New York"), allege as follows:

## INTRODUCTION

1.       Defendants are in the business of, among other things, offering to advance funds to consumers who are entitled to receive compensation under a settlement fund or judgment.

2.       Consumers who received advances from Defendants include police officers, firefighters, paramedics, and other first responders to the World Trade Center attack on September 11, 2001 and former National Football League ("NFL") players suffering from brain injuries.

3.       These consumers, and others, are recipients of funds resulting from lawsuits or victim-compensation funds, such as the Zadroga Fund, established by the

James Zadroga 9/11 Health and Compensation Act of 2010, which allocated billions of dollars to assist first responders with mounting medical costs and lost income.

4.      Not all the money from these sources was immediately available to eligible consumers, even after their claims had been approved and they had been notified of the amounts of their awards.

5.      While consumers await payment of their awards, RD Legal Funding, LLC, RD Legal Finance, LLC, and RD Legal Funding Partners, LP (collectively, "RD"), under the direction of Roni Dersovitz ("Dersovitz"), swoop in with a "deal"—RD provides the consumers an up-front payment, which the consumers repay when they receive their awards. The total amount consumers must repay RD is considerably larger than the upfront sums given to them by RD, often by a multiple of two or more.

6.      Although RD mischaracterizes these transactions as "assignments," they are in fact offers to extend credit or extensions of credit for purposes of the Consumer Financial Protection Act of 2010. As a result of RD's mischaracterizations, consumers are unable to compare the cost of RD's products to alternatives. In addition to falsely marketing these transactions as "assignments," RD falsely claims that it can expedite funding and "cut through red tape;" misrepresents when consumers will receive funds; and collects on contracts that are void under state laws or, in the alternative, that function as loans with interest rates that exceed state-law usury limits and on which no payment is due. RD's misconduct thus costs consumers millions of dollars.

7.      Under New York law, RD's transactions are loans at usurious interest rates and thus void. To the extent the transactions are deemed assignments, they are

also void because, under New York law, they contravene public policy, constitute an unlawful sale or assignment of a personal injury claim, or both.

8.     The Bureau and the State of New York bring this action against Roni Dersovitz, RD Legal Funding, LLC, RD Legal Finance, LLC, and RD Legal Funding Partners, LP (collectively, "Defendants") under § 1054 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5564. The State of New York also brings this action under New York Executive Law § 63(12) and General Business Law ("GBL") Article 22-A, §§ 349 and 350. RD engaged in deceptive and abusive acts and practices in connection with its offering or providing extensions of credit to consumers who have been awarded payouts from sources such as a statutory compensation fund or a settlement fund, but were awaiting payment from the claims administrator. *See* 12 U.S.C. §§ 5531, 5536(a). Dersovitz knowingly or recklessly provided substantial assistance to RD in its deceptive and abusive acts and practices, in violation of the CFPA. *See* 12 U.S.C. § 5536(a)(3). Dersovitz directed and controlled RD's operations and participated in its deceptive and unlawful practices. Dersovitz, therefore, is also liable for the state-law violations alleged herein. *See* N.Y. Exec. Law § 63(12); N.Y. Gen. Bus. Law §§ 349, 350.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over this action because the action is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

10.     This Court has supplemental jurisdiction over the State of New York's state-law claims because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendants because the causes of action arise from Defendants' conduct of business in this district. 12 U.S.C. § 5564(f).

12.     Venue is proper in this district because a substantial amount of the transactions, acts, practices, and courses of conduct at issue occurred within this district and Defendants conducted business in this district. 28 U.S.C. § 1391(b)–(c); 12 U.S.C. § 5564(f).

## PARTIES

13.     The Bureau is an agency of the United States charged with regulating the offering and provision of consumer-financial products and services under federal consumer-financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority. *See* 12 U.S.C. § 5564(a)–(b).

14.     The State of New York, by its Attorney General ("NYAG"), is authorized to take action to enjoin (i) repeated and persistent fraudulent and illegal conduct under N.Y. Executive Law § 63(12), (ii) deceptive business practices under N.Y. GBL § 349, and (iii) false advertising under N.Y. GBL § 350. The NYAG also is authorized to initiate civil actions in federal district court to enforce provisions of the CFPA. *See* 12 U.S.C. § 5552(a)(1).

15.     RD Legal Funding, LLC is a limited-liability company. Its principal place of business is at 45 Legion Drive, Cresskill, NJ 07626.

16.     RD Legal Finance, LLC is a limited-liability company. Its principal place of business is at 45 Legion Drive, Cresskill, NJ 07626.

17.     RD Legal Funding Partners, LP is a limited partnership. Its principal place of business is at 45 Legion Drive, Cresskill, NJ 07626.

18.     Roni Dersovitz is the founder and owner of RD Legal Funding, LLC, RD Legal Finance, LLC, and RD Legal Funding Partners, LP. Dersovitz has substantial control over and involvement in the establishment of RD's business policies and practices. In connection with the matters alleged, Roni Dersovitz transacted business in this district.

19.     As described below, RD offers consumers extensions of credit that purport to be assignments. But RD knows or recklessly disregards that these assignments are invalid and that these transactions, in reality, function as offers or extensions of credit. These transactions were therefore consumer-financial products or services under § 1002 of the CFPA. 12 U.S.C. §§ 5481(5), 5481(7), 5481(15)(A)(i). RD is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6)(A).

## FACTS

### A.     Background

20.     RD has marketed products consisting of cash advances to consumers who have been approved to receive compensation for injuries from, among other sources, the Zadroga Fund and the class-action lawsuit by retired NFL players. RD offers or provides extensions of credit to consumers entitled to awards from these sources. After the fund or settlement has received final approval and the consumer has received notice of the

amount of a forthcoming payment, RD enters into an agreement with the consumer that purports to take a security interest in the consumer's award.

21.     Many consumers who are offered or extended credit by RD have severe injuries.

22.     Many consumers who have been approved for awards from the Zadroga Fund suffer from respiratory illnesses and cancers related to their exposure to dust and debris at the World Trade Center site. Many also report diagnoses of post-traumatic stress disorder, depression, anxiety disorder, and memory loss.

23.     Consumers who were plaintiffs in the NFL class-action lawsuit are former players who have been diagnosed with neurodegenerative diseases such as chronic traumatic encephalopathy ("CTE"), Alzheimer's, or Parkinson's disease. A settlement fund was approved by a court in 2015.

24.     Typically, RD enters into agreements with consumers to pay them a lump sum representing a fraction of the consumers' awards, thereby ensuring that sufficient funds will be available to pay RD when the consumers receive their awards. In exchange, the consumers agree to repay a far larger amount than the amount advanced.

25.     For example, one consumer was awarded $65,000 from the Zadroga Fund. While she waited for her full payment from the Fund, RD advanced her $18,590. When her award payment from the Fund arrived six months later, she repaid $33,800 to RD.

26.     Consumers are obligated, under RD's contracts, to first pay RD any amounts received from the claims administrator until the amounts owed under RD's contracts are satisfied. If the amounts owed under RD's contracts are fully satisfied and

there is a balance remaining from the award payment, consumers are then entitled to keep the balance.

27.     Dersovitz has authority and responsibility to dictate all the terms of consumer contracts. Specifically, Dersovitz makes decisions on the terms of the offers or extensions of credit.

28.     RD does not disclose the costs of the transactions in a manner that allows consumers to reasonably compare the cost of RD's product to the cost of similar products.

29.     Given the often short time from the advance of the funds to the payment of awards, RD's transactions cost consumers amounts that are equivalent in some cases to rates over 250%.

30.     After they receive their award payments, consumers repay RD directly.

31.     RD's contracts contain one of two types of repayment terms: (i) repayment of a lump sum that remains the same regardless of when the consumer receives her award and repays the amount advanced, or (ii) repayment of a lump sum that increases over time. With the latter option, the amount the consumer repays depends on when the consumer receives her award.

32.     The cost on a transaction under the first option may be particularly high for the consumer who receives proceeds shortly after signing an agreement with RD. For example, a severely disabled 9/11 first responder received his compensation-fund check three months after he borrowed $35,000 from RD; under the agreement, the first responder was required to repay $63,636. The additional payment of $28,636 to RD for the $35,000 advance over that brief period is equivalent to a rate over 250%.

33.     The second repayment option involves a complicated rebate scheme, and is known as the "rebate" option. Under this option, the repayment amount increases each month by an amount determined by a pre-set, typically undisclosed rate. Moreover, RD does not clearly disclose the final repayment amount. A consumer must determine the final repayment amount on her own by subtracting the "rebate" amount, which changes each month and is set forth at the end of the contract, from the "property" amount normally listed at the beginning of the contract.

**B.     RD knows or recklessly disregards that its purported "assignments" are invalid.**

34.     RD knows or recklessly disregards that the purported assignments are prohibited and that it is impossible to structure the transactions as assignments.

35.     For example, the NFL settlement agreement approved by a court in the Eastern District of Pennsylvania and affirmed by the Third Circuit provides that an assignment or attempted assignment of a class member's rights "will be void, invalid, of no force and effect and the Claims Administrator shall not recognize any such action." Class Action Settlement Agreement, As Amended, § 30.1, *Turner v. Nat'l Football League*, No. 2:12-md-2323-AB, ECF No. 6481-1 (E.D. Pa. filed Feb. 13, 2015).

36.     Similarly, the statute creating the Zadroga Fund provides that "the Special Master shall authorize payment to [a] claimant of the amount determined with respect to the claimant," and defines "claimant" as "an individual filing a claim for compensation under [the statute]." 49 U.S.C. § 40101, note. And the Zadroga Fund's policies prohibit RD from receiving payment directly from the Fund.

37.     RD even addresses the likelihood that the assignments would be invalidated, providing in its contracts that if the assignment is invalid, it may, for

example, demand repayment "plus interest calculated at 19.562 percent per annum, or the maximum rate permitted by law." RD also reserves the right to file a UCC financing statement if the agreement is characterized as a loan

38.     Despite its knowledge or reckless disregard that assignments are prohibited, RD falsely represents to consumers that its products are not an offer of credit but rather assignments of the consumers' interests in their anticipated payments.

39.     For example, on its website, RD asserts that its "plaintiff funding is not a loan."

40.     RD labels its contracts as "assignment and sale agreements." Most of RD's contracts with consumers do not disclose an interest rate for the transaction.

41.     Some of these contracts indicate explicitly that there is no "annual percentage fee" to disclose because "the transaction is a purchase and not a loan." Some of RD's contracts contain a disclosure section with a subsection labeled "annual percentage fee," but that subsection is typically blank or labeled "Not Applicable."

42.     Nor does RD otherwise disclose interest rates for its transactions to consumers. RD claims in communications with consumers that there is no applicable interest rate for its transactions.

43.     Because RD knows or recklessly disregards that the purported assignments are invalid, it functionally offers or provides a credit transaction in which consumers incur a debt and defer the right to repay. 12 U.S.C. § 5481(7).

**C.     RD falsely claims to expedite funding and "cut through red tape."**

44.     RD advertises to consumers that it will work to expedite the process of obtaining the consumers' award payments or settlement proceeds.

45.     For example, on its webpage specifically devoted to the Zadroga Fund, RD tells 9/11 first responders that it is "dedicated to helping you obtain your Zadroga settlement funds as quickly as possible." The page goes on to state that "[w]e pride ourselves on working closely with our clients and look forward to assisting those with Zadroga claims in obtaining accelerated access to their second payment." Both RD and Dersovitz tell 9/11 first responders that they will "cut through the red tape on your behalf and provide you immediate access to your funds."

46.     Dersovitz approves the contents of RD's website.

47.     In reality, RD does not act—nor does RD have any ability to act—on behalf of consumers to influence the Zadroga Fund or its award-distribution timeline.

48.     By the time consumers enter into an agreement with RD, they have already completed the application process and received an award-notification letter from the Zadroga Fund. In fact, RD requires that these administrative steps be completed to qualify for an advance from RD. RD does not assist consumers in completing these steps, nor does it take or have the ability to take any additional steps to obtain payments from the Zadroga Fund more quickly than they would otherwise be made.

**D.     RD misrepresents when consumers will receive funds.**

49.     On its website, RD promises that consumers will receive funds "within several days" after RD receives the necessary documentation to complete the consumers' transactions. In RD's communications with consumers who submitted applications for the product, RD routinely told consumers that it would wire funds by a specific date.

50.     In many instances, however, RD did not deliver the funds to the consumer by the promised date. Some consumers did not receive funds from RD until months after they were promised.

51.     Dersovitz has authority and responsibility to solicit funds from investors and determine when funds for consumers would arrive.

**E.     RD collects where no payment is due.**

52.     As set forth above, RD's contracts include purported assignments that are void, unenforceable, and uncollectible. RD nonetheless collects on these contracts.

53.     In the alternative, RD's contracts function as loans under state law. These loans have interest rates exceeding limits imposed by state usury laws. For example, under New York law, loans made to New York consumers are void, and thus no payment is due, if the interest rate exceeds 16%. N.Y. Gen. Oblig. Law §§ 5-501, 5-511. RD nonetheless collects on these loans.

54.     Dersovitz has authority and responsibility to determine whether RD should collect. Dersovitz himself made phone calls to at least one New York consumer to collect from that consumer.

**F.     Facts Specific to Claims Asserted Only by the State of New York**

In support of the state-law claims asserted in Counts VI through XI, the State of New York further alleges as follows:

55.     Although RD characterizes its contracts as "sales and assignments," the transactions are loans under New York law.

56.     Under New York law, an agreement constitutes a loan if, at the time the agreement is signed, it is virtually certain that there will be sufficient funds to repay the

amount advanced. Here it was virtually certain at the time that the agreements were signed that the federal government would have sufficient funds available to the pay the full amounts awarded by the Zadroga Fund to consumers, let alone the substantially lower amounts purportedly assigned or sold to RD.

57.     On many of their loans in New York, RD collected an effective interest rate ranging from 18% to over 250%.

58.     These interest rates exceed New York's civil usury cap of 16% and criminal usury cap of 25%.

59.     Loans made to New York consumers in excess of New York's usury laws are void, and thus no payment is due. N.Y. Gen. Oblig. Law §§ 5-501, 5-511. RD nonetheless collects on these loans.

60.     To the extent RD purported to structure these transactions as assignments, they violate New York's prohibition on assignments of personal-injury claims and contravene public policy. N.Y. Gen. Oblig. Law §§ 13-101.

## CAUSES OF ACTION

### Count I—Deception under the CFPA
### Asserted by the Bureau and the State of New York

61.     The allegations in paragraphs 1-54 are incorporated by reference.

62.     Under the CFPA, an act or practice is deceptive if (i) there is a representation or omission of information that is likely to mislead consumers acting reasonably under the circumstances; and (ii) that information is material to consumers. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

63.     RD routinely misrepresents that it is entering into contracts with consumers for valid and enforceable assignments.

64.     In fact, the assignments in RD's contracts are not valid and enforceable, which RD knew or recklessly disregarded.

65.     RD's misrepresentations are likely to mislead consumers acting reasonably under the circumstances.

66.     RD's misrepresentations are material because they would influence the decisions of a consumer acting reasonably under the circumstances.

67.     RD therefore engaged in deceptive acts in connection with an offer or extension of credit in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

68.     Dersovitz has significant responsibility for establishing RD's policies and practices, and he has substantial control over RD's operations.

69.     Dersovitz knowingly or recklessly provided substantial assistance to RD, a covered person engaged in deceptive acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3).

### Count II—Abusiveness under the CFPA
### Asserted by the Bureau and the State of New York

70.     The allegations in paragraphs 1-54 are incorporated by reference.

71.     Under the CFPA, an act or practice is abusive if it (i) "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service," (ii) "takes unreasonable advantage of . . . a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service," or (iii) "takes unreasonable advantage of . . . the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service." 12 U.S.C. § 5531(d).

13

72.     RD misrepresents that its contracts are for valid and enforceable assignments.

73.     Through this conduct, RD undermines consumers' understanding of the offer of credit, and in particular prevents consumers from understanding the terms, costs, and conditions of RD's offer of credit. RD's conduct also prevents consumers from meaningfully evaluating the cost of RD's offer of credit, from comparing the cost of the offer of credit to other alternatives that may be available to the consumers, and from determining whether RD's offers of credit are in their interest. Because consumers are misled concerning the validity of significant terms of the transactions and the nature of the transactions, they are not able to protect their interests in entering into them.

74.     RD therefore materially interferes with consumers' ability to understand terms and costs of RD's offers of credit, takes unreasonable advantage of consumers' lack of understanding of material costs or conditions of RD's offers of credit, and takes unreasonable advantage of consumers' inability to protect their interests in the transactions.

75.     RD therefore engaged in abusive acts in connection with an offer or extension of credit in violation of the CFPA. 12 U.S.C. § 5531(d)(1), (2)(B); 12 U.S.C. § 5536(a)(1)(B).

76.     Dersovitz has significant responsibility for establishing RD's policies and practices, and he has substantial control over RD's operations.

77.     Dersovitz knowingly or recklessly provided substantial assistance to RD, a covered person engaged in abusive acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3).

## Count III—Deception under the CFPA
## Asserted by the Bureau and the State of New York

78.    The allegations in paragraphs 1-54 are incorporated by reference.

79.    RD claims to provide a service that speeds up the disbursement of a consumer's award and "cuts through red tape." In fact, it does no such thing.

80.    A reasonable consumer would likely be misled by RD's false statement; consumers cannot be expected to know the internal administrative procedures of, for example, a victim-compensation fund administered by the United States government and to independently evaluate whether RD is, in fact, able to accelerate fund disbursement.

81.    RD's claims regarding accelerating disbursement are material to consumers, especially, for example, consumers who are severely disabled and may have large medical costs.

82.    RD therefore engaged in deceptive acts in connection with an offer or extension of credit in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

83.    Dersovitz has significant responsibility for establishing RD's policies and practices, and he has substantial control over RD's operations.

84.    Dersovitz knowingly or recklessly provided substantial assistance to RD, a covered person engaged in deceptive acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3).

## Count IV—Deception under the CFPA
## Asserted by the Bureau and the State of New York

85.    The allegations in paragraphs 1-54 are incorporated by reference.

86.     RD misrepresents to consumers when they would receive funds from RD, often promising consumers an earlier date of disbursement than the actual disbursement. In fact, on multiple occasions, RD did not deliver funds to consumers by the promised date. Many consumers experienced funding delays, some as long as several months.

87.     Consumers acting reasonably under the circumstances would likely rely on RD's representations regarding the date of funding and would likely be misled by RD's false statements.

88.     RD's misrepresentations are material because they go to the heart of consumers' decisions about whether to use the credit product RD offers. Indeed, consumers considering transactions with RD almost by definition are those who find themselves with more immediate needs for cash than can be met by the payouts they are eventually due. When the lump sums RD offers will arrive plainly is material to these consumers' decisions.

89.     RD therefore engaged in deceptive acts in connection with an offer or extension of credit in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

90.     Dersovitz has significant responsibility for establishing RD's policies and practices, and he has substantial control over RD's operations.

91.     Dersovitz knowingly or recklessly provided substantial assistance to RD, a covered person engaged in deceptive acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3).

### Count V—Deception under the CFPA
### Asserted by the Bureau and the State of New York

92.     The allegations in paragraphs 1-54 are incorporated by reference.

16

93.     RD collects on contracts that are void under state laws or, in the alternative, that function as loans with interest rates that exceed usury limits under state laws, and on which no payment is due.

94.     Collecting on contracts that are void under state laws creates the false impression that the contracts are enforceable and that borrowers are obligated to repay. This false impression is material, and reasonable consumers would not have known that the contracts are void.

95.     In the alternative, collecting on loans in amounts that exceed applicable state usury limits, and on which no payment is due, creates the false impression that the borrowers are obligated to repay usurious rates. This false impression is material, and reasonable consumers would not have known that the any repayment obligation was void.

96.     RD therefore engaged in deceptive acts in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

97.     Dersovitz has significant responsibility for establishing RD's policies and practices, and he has substantial control over RD's operations.

98.     Dersovitz knowingly or recklessly provided substantial assistance to RD, a covered person engaged in deceptive acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3).

### Count VI—Violation of New York Civil Usury Laws
### Asserted by the State of New York

99.     The allegations in paragraphs 1-60 are incorporated by reference.

100. New York Executive Law § 63(12) authorizes the NYAG to seek injunctive and other equitable relief and damages whenever an individual or entity engages in repeated or persistent illegal conduct.

101. New York General Obligations Law § 5-501 makes it unlawful to collect interest on loans or forbearances that exceed the rate set forth in New York Banking Law § 14-a.

102. New York Banking Law § 14-a provides that the maximum interest for loans or forbearances in an amount less than $250,000 is 16%.

103. Contracts that charge more than the maximum usury rate under New York General Obligations Law § 5-501 and Banking Law § 14-a are void. *See* N.Y. Gen. Oblig. Law § 5-511.

104. In the course of making loans in New York and to New York consumers, Defendants repeatedly charged and collected interest far in excess of 16%, in violation of New York's civil usury laws. *See* N.Y. Gen. Oblig. Law § 5-501; Banking Law § 14-a.

105. Defendants have therefore engaged in repeated and persistent illegal conduct in violation of New York Executive Law § 63(12).

## Count VII—Violation of New York Criminal Usury Laws Asserted by the State of New York

106. The allegations in paragraphs 1-60 are incorporated by reference.

107. New York Executive Law § 63(12) authorizes the NYAG to seek injunctive and other equitable relief and damages whenever an individual or entity engages in repeated or persistent illegal conduct.

108. Pursuant to New York Penal Law §§ 190.40 and 190.42, it is illegal to knowingly charge, take, or receive any money or other property as interest on a loan or

forbearance at a rate exceeding 25% per annum. Contracts that exceed the criminal usury cap are void under New York General Obligations Law § 5-511.

109.    In the course of making loans in New York and to New York consumers, Defendants repeatedly charged and received interest far in excess of New York's criminal usury laws. *See* N.Y. Penal Law §§ 190.40 and 190.42.

110.    Defendants have therefore engaged in repeated and persistent illegal conduct in violation of New York Executive Law § 63(12).

### Count VIII—Violation of New York General Obligations Law § 13-101 Asserted by the State of New York

111.    The allegations in paragraphs 1-60 are incorporated by reference.

112.    New York Executive Law § 63(12) authorizes the NYAG to seek injunctive and other equitable relief and damages whenever an individual or entity engages in repeated or persistent illegal conduct.

113.    Pursuant to New York General Obligations Law § 13-101, it is unlawful to sell or assign claims or demands to recover for personal injuries.

114.    Assignments that contravene public policy are also unlawful. N.Y. Gen. Oblig. Law § 13-101(3).

115.    To the extent that the transactions at issue are deemed assignments, they constitute an unlawful assignment of individual claims to recover for personal injuries under New York General Obligations Law § 13-101.

116.    Such assignments also violate public policy by allowing Defendants to profit from funds intended to compensate victims of 9/11 and football injuries.

117.    By entering into such assignments, Defendants repeatedly violated New York General Obligations Law § 13-101.

118.    Defendants have therefore engaged in repeated and persistent illegal conduct in violation of New York Executive Law § 63(12).

## Count IX—Violation of New York GBL § 349
## Asserted by the State of New York

119.    The allegations in paragraphs 1-60 are incorporated by reference.

120.    GBL § 349 authorizes the NYAG to bring an action for an injunction, restitution and civil penalties when any individual has engaged or is about to engage in deceptive practices in the State of New York.

121.    Defendants have engaged in deceptive acts and practices by conduct including but not limited to: i) misrepresenting that their products are a sale or assignment; ii) misrepresenting that individuals can assign their awards for personal injuries to Defendants; iii) failing to disclose the interest rate being charged; iv) misrepresenting that the agreements are enforceable when in fact they are void under New York law; and v) misrepresenting their ability to expedite the payment of awards and the date of disbursement of funds.

122.    Defendants have therefore engaged in deceptive acts and practices in violation of GBL § 349.

## Count X—Violation of New York GBL § 350
## Asserted by the State of New York

123.    The allegations in paragraphs 1-60 are incorporated by reference.

124.    GBL § 350 prohibits false advertising in the State of New York, and GBL § 350-d authorizes the NYAG to obtain civil penalties for each false advertisement.

125.    Defendants have engaged in false advertising by falsely advertising their agreements as a sale and not a loan and by falsely advertising their ability to expedite the payment of the awards.

126.    Defendants have therefore engaged in false advertising in violation of GBL § 350.

### Count XI—New York Executive Law § 63(12) Fraud
### Asserted by the State of New York

127.    The allegations in paragraphs 1-60 are incorporated by reference.

128.    New York Executive Law § 63(12) authorizes the NYAG to seek injunctive and other equitable relief and damages whenever an individual or entity engages in repeated or persistent fraudulent conduct.

129.    Defendants have engaged in repeated and persistent fraudulent conduct including but not limited to: i) misrepresenting that their products are a sale or assignment; ii) misrepresenting that individuals can assign their awards for personal injuries to Defendants; iii) failing to disclose the interest rate being charged; iv) misrepresenting that the agreements are enforceable when in fact they are void under New York law; and v) misrepresenting their ability to expedite the payment of awards and the date of disbursement of funds.

130.    Defendants have therefore engaged in repeated and persistent fraud in violation of New York State's Executive Law § 63(12).

### DEMAND FOR RELIEF

Plaintiffs request that the Court:

a.    enjoin Defendants from committing future violations of the CFPA and New York law;

b.      declare null and void contracts that violate New York law;

c.      award damages or other monetary relief against Defendants;

d.      order Defendants to pay redress to consumers;

e.      order disgorgement of ill-gotten revenues by Defendants;

f.      impose civil money penalties on Defendants under the CFPA;

g.      impose civil money penalties of $5,000 for each violation of Article 22-A

        pursuant to GBL § 350-d;

h.      order Defendants to pay the costs incurred in connection with prosecuting

        this action; and

i.      award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ANTHONY ALEXIS
*Enforcement Director*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*
JOHN C. WELLS
*Assistant Litigation Deputy*

*s/Benjamin Z. Konop*
BENJAMIN Z. KONOP (OH 0073458)
HAI BINH T. NGUYEN (CA 313503)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
Telephone (Konop): 202-435-7265
Telephone (Nguyen): 202-435-7251
Facsimile: 202-435-7722
E-mail: Benjamin.konop@cfpb.gov
E-mail: Haibinh.nguyen@cfpb.gov
Attorneys for Plaintiff
Consumer Financial Protection Bureau

22

ERIC T. SCHNEIDERMAN
*Attorney General of the State of New York*

JANE M. AZIA (NY 1539600)
*Bureau Chief, Consumer Frauds and Protection*
*Bureau*
MELVIN L. GOLDBERG (NY 1828284)
*Assistant Attorney General*
120 Broadway
New York, N.Y. 10271
Telephone (Azia): 212-416-8727
Telephone (Goldberg): 212-416-8296
Facsimile: 212-416-6003
E-mail: Jane.Azia@ag.ny.gov
E-mail: Melvin.Goldberg@ag.ny.gov
Attorneys for Plaintiff
State of New York