# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and THE PEOPLE OF THE STATE OF NEW YORK by ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL FOR THE STATE OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, and RONI DERSOVITZ, <br><br> Defendants. | Case No. 1:17-cv-00890-LAP |

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.    The Bureau's structure is constitutional ....................................................... 1
    A.    The Bureau's structure preserves the President's powers under Article II....... 1
    B.    The Bureau's structure preserves Congress's powers under Article I ............. 6
    C.    Even if the Bureau were unconstitutional, Defendants could not obtain the relief they seek because both the CFPB and the NYAG could still enforce the provisions of the CFPA................................................................................ 7

II.    RD is a covered person under the CFPA ....................................................... 9
    A.    The assignment clauses in the RD contracts are invalid............................. 10
        1.    The NFL settlement fund prohibits assignments ................................ 10
        2.    The federal law creating the Zadroga Fund and the Fund's own rules prohibit assignments of funds ......................................................... 13
    B.    RD offered or provided extensions of credit................................................ 14
    C.    A person need not both "extend credit" and "service loans" to be a "covered person" under the CFPA ......................................................................... 15

III.    The Complaint's state law claims should not be dismissed for lack of subject matter jurisdiction ....................................................................................... 17

IV.    All Counts in the Complaint state valid claims for relief ............................. 18
    A.    Rule 9(b)'s heightened-pleading standard does not apply ............................ 19
    B.    Even if Rule 9(b) did apply, the Complaint would satisfy the heightened-pleading standard ................................................................................... 21
    C.    Counts I, III–V, and IX–XI of the Complaint state claims under the CFPA, New York Executive Law § 63(12), and New York GBL §§ 349 and 350.... 22
        1.    Defendants' representations that the transactions are true sales or assignments were false, likely to mislead consumers, and material ... 23
        2.    Defendants' representations that they could expedite consumers' receipt of funds and "cut through the red tape" were false, likely to mislead consumers, and material ....................................................... 24
        3.    Defendants' representations about the timing of funding were false, likely to mislead consumers, and material......................................... 26
    D.    Count II of the Complaint states a claim under the CFPA for abusive acts and practices .................................................................................................. 28
    E.    Counts VI and VII of the Complaint properly allege claims for violations of New York usury law ................................................................................. 28
    F.    Count VIII of the Complaint properly alleges that if the transactions are sales, they are prohibited by N.Y. General Obligations Law § 13-101 ................... 33
    G.    The Complaint puts Defendants on notice of the claims against them........... 34
    H.    The Complaint adequately alleges that transactions occurred in New York .. 36

ii

I.   Defendants' request to "dismiss" claims regarding other transactions is misplaced and should be denied ................................................................. 38

CONCLUSION ........................................................................................................................ 39

## TABLE OF AUTHORITIES

**Cases**

*Agile Opportunity Fund, LLC v. Vectormax Corp.*,
  2011 N.Y. Misc. LEXIS 6617 (N.Y. Sup. Ct. Dec. 29, 2011) ........................................... 32

*Alaska Airlines, Inc. v. Brock*,
  480 U.S. 678 (1987) ................................................................................................ 8

*Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth.*,
  388 F.3d 405 (3d Cir. 2004) .................................................................................. 6

*Am. Home Prods. Corp. v. FTC*,
  695 F.2d 681 (3d Cir. 1982) ................................................................................ 26

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014) ................................................................... 35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 18, 24

*Ayotte v. Planned Parenthood of N. New England*,
  546 U.S. 320 (2006) ............................................................................................ 8

*Banks v. Consumer Home Mortg., Inc.*,
  2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) .................................................. 21

*Barclay Arms, Inc. v. Barclay Arms Assocs.*,
  144 A.D.2d 287 (N.Y. App. Div. 1988) .............................................................. 21

*Barnet v. Drawbridge Special Opportunity Fund LP*,
  2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014) ..................................................... 35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 18

*Billings v. O'Brien*,
  1873 N.Y. Misc. LEXIS 97 (1873) .................................................................... 34

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring, Inc.*,
  2011 WL 11074849 (N.Y. Sup. Ct. Aug. 26, 2011) .......................................... 32

*Bowery Nat'l Bank of N.Y. v. Wilson*,
  4 Daly 556 (1873) ............................................................................................. 34

*Capela v. J.G. Wentworth, LLC*,
  2009 WL 3128003 (E.D.N.Y. Sep. 24, 2009) .............................................. 10, 15

*Carnegie Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) .......................................................................................... 17

*Carter v. Stanton*,
  405 U.S. 669 (1972) .......................................................................................... 36

iv

*CFPB v. D&D Mktg., Inc.*,
   No. 15-cv-9692, ECF No. 57 (C.D. Cal. Nov. 17, 2016), Order Denying Defs.' Mot. to
   Dismiss ................................................................................................................... 9, 20

*CFPB v. Frederick Hanna & Assocs.*,
   114 F. Supp. 3d 1342 (N.D. Ga. 2015) ................................................. 19, 20, 22

*CFPB v. ITT Educ. Servs., Inc.*,
   219 F. Supp. 3d 878 (S.D. Ind. 2015) ............................................................... 7

*CFPB v. Morgan Drexen, Inc.*,
   60 F. Supp. 3d 1082 (C.D. Cal. 2014) .......................................................... 5, 7

*CFPB v. NDG Fin. Corp.*,
   2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ...................................................... 9

*CFPB v. Prime Mktg. Holdings*,
   No. 16-cv-07111 (BRO) (C.D. Cal. Nov. 15, 2016), Order re Def.'s Mot. to Dismiss ...... 20

*Christiansen v. Omnicom Grp., Inc.*,
   852 F.3d 195 (2d Cir. 2017) ............................................................................ 18

*Claridge v. No. Am. Power & Gas, LLC*,
   2015 WL5155934 (S.D.N.Y. Sept. 2, 2015) ................................................... 25

*Clever Ideas, Inc. v. 999 Restaurant Corp.*,
   2007 N.Y. Misc. LEXIS 9248 (N.Y. Sup. Ct. Oct. 26, 2007) ..................... 29, 30

*Cohen v. Hertz Corp.*,
   2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ................................................ 21

*Collins v. Aikman Prods. Co. v. Building Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) ............................................................................... 11

*Coregis Ins. Co. v. Amer. Health Foundation, Inc.*,
   241 F.3d 123 (2d. Cir. 2001) ......................................................................... 11

*Dana v. Dana*,
   48 Misc. 2d 717 (N.Y. Sup. Ct. 1965) ........................................................... 34

*Delgado v. Ocwen Loan Servicing, LLC*,
   2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) .............................................. 19

*Dollar Phone Corp. v. Dun & Bradstreet Corp.*,
   936 F. Supp. 2d 209 (E.D.N.Y. 2013) ........................................................... 28

*Echeverria v. Estate of Lindner*,
   7 Misc. 3d 1019(A) (N.Y. Sup. Ct. 2005) ...................................................... 31

*Exposition Press, Inc. v. FTC*,
   295 F.2d 869 (2d Cir. 1961) ........................................................................... 25

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) .......................................................................................... 5

v

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,*
   783 F.3d 395 (2d Cir. 2015) ................................................................. 22

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ................................................................... 2, 5, 7

*FTC v. AFD Advisors,*
   2014 WL 274097 (N.D. Ill. Jan. 24, 2014) ....................................... 20

*FTC v. Bronson Partners, LLC,*
   564 F. Supp. 2d 119 (D. Conn. 2008) ............................................... 26

*FTC v. E.M.A. Nationwide, Inc.,*
   767 F.3d 611 (6th Cir. 2014) ............................................................. 24

*FTC v. Freecom Commc'ns, Inc.,*
   401 F.3d 1192 (10th Cir. 2005) ............................................. 19, 20, 38

*FTC v. Med. Billers Network, Inc.,*
   543 F. Supp. 2d 283 (S.D.N.Y. 2008) ................................... 24, 25, 27

*FTC v. Sec. Rare Coin & Bullion Corp.,*
   931 F.2d 1312 (8th Cir. 1991) ........................................................... 38

*FTC v. Wyndham Worldwide Corp.,*
   10 F. Supp. 3d 602 (D.N.J. 2014) ..................................................... 20

*Gaidon v. Guardian Life Ins. Co. of Am.,*
   94 N.Y.2d 330 (N.Y. 1999) ............................................................... 27

*Galper v. JP Morgan Chase Bank, N.A.,*
   802 F.3d 437 (2d Cir. 2015) ................................................. 18, 24, 27

*Goldstein v. Pataki,*
   516 F.3d 50 (2d Cir. 2008) ............................................................... 18

*Goshen v. Mut. Life Ins. Co.,*
   98 N.Y.2d 314 (N.Y. 2002) ............................................................... 37

*Higgins v. Higgins,*
   119 N.Y.S.2d 103 (N.Y. Sup Ct. 1952) ............................................ 34

*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) .............................................................. 2, 3, 4, 5

*In re Dryden Advisory Group, LLC,*
   534 B.R. 612 (Bankr. M.D. Pa. 2015) .............................................. 30

*In re Minor,*
   443 B.R. 282 (Bankr. W.D.N.Y. 2011) ............................................ 33

*In re Minor,*
   482 B.R. 80 (Bankr. W.D.N.Y. 2012) .............................................. 33

*In re Nat'l Football league Players Concussion Injury Litig.,*
   821 F. 3d 410 (3d Cir. 2016) ............................................................ 10

*In re Thelen LLP,*
 736 F.3d 213 (2d Cir. 2013) ............................................................ 37

*In re Thompson Med. Co.,*
 791 F.2d 189 (D.C. Cir. 1986)......................................................... 26

*India.com, Inc. v. Dalal,*
 412 F.3d 315 (2d Cir. 2005) ............................................................ 12

*John Doe Co. v. CFPB,*
 849 F.3d 1129 (D.C. Cir. 2017)......................................................... 7

*Johnson v. Augsbury Org., Inc.,*
 167 A.D.2d 783 (N.Y. App. Div. 1990) .......................................... 12

*Keiler v. Harlequin Enters. Ltd.,*
 751 F.3d 64 (2d Cir. 2014) .............................................................. 14

*Klein & Co. Futures, Inc. v. Bd. of Trade,*
 464 F.3d 255 (2d Cir. 2006) ............................................................ 17

*Koch v. Acker, Merrall & Condit Co.,*
 18 N.Y.3d 940 (N.Y. 2012) ............................................................. 23

*Langan v. Johnson & Johnson Consumer Cos., Inc.,*
 2017 WL 985640 (D. Conn. Mar. 13, 2017) .................................. 25

*Leonard v. Abbott Labs., Inc.,*
 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ................................... 20

*Lobatto v. Berney,*
 1999 WL 672994 (S.D.N.Y. Aug. 26, 1999) .................................. 19

*Major's Furniture Mart, Inc. v. Castle Credit Corp.,*
 602 F.2d 538 (3d Cir. 1979) ............................................................ 31

*Matsumura v. Benihana Nat'l Corp.,*
 542 F. Supp. 2d 245 (S.D.N.Y. 2008) ............................................ 19

*McCormack v. Bloomfield,*
 399 F. Supp. 488 (S.D.N.Y. 1974) ................................................. 34

*McNair v. Heyman,*
 2016 WL 6820736 (S.D.N.Y. Sept. 19, 2016) ............................... 37

*Mistretta v. United States,*
 488 U.S. 361 (1989) ......................................................................... 2

*Morrison v. Olson,*
 487 U.S. 654 (1988) ............................................................. 2, 3, 4, 5

*Muhlrad v. Mitchell,*
 1997 WL 182614 (S.D.N.Y. Apr. 14, 1997) .................................. 17

*Myers v. United States,*
 272 U.S. 52 (1926) ........................................................................... 4

*Nat'l Petroleum Refiners Ass'n v. FTC,*
   482 F.2d 672 (D.C. Cir. 1973) ............................................................... 3

*New York v. Feldman,*
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ............................................. 37

*Nicosia v. Amazon.com, Inc.,*
   834 F.3d 220 (2d Cir. 2016) ........................................................... 36

*Novartis Corp. v. FTC,*
   223 F.3d 783 (D.C. Cir. 2000) ....................................................... 25

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   85 N.Y.2d 20 (N.Y. 1995) .............................................................. 23

*Peacock v. Lubbock Compress Co.,*
   252 F.2d 892 (5th Cir. 1958) ......................................................... 16

*Pelman ex rel. Pelman v. McDonald's Corp.,*
   396 F.3d 508 (2d Cir. 2005) ........................................................... 20

*People v. Applied Card Sys., Inc.,*
   27 A.D.3d 104 (N.Y. App. Div. 2005) ........................................... 23

*People v. Empire Prop. Sols., LLC,*
   2012 N.Y. Slip Op. 31035(U) (N.Y. Sup. Ct. Apr. 10, 2012) ........... 21

*People v. H&R Block, Inc.,*
   16 Misc. 3d 1124(A) (N.Y. Sup. Ct. 2007) .................................... 37

*People v. Mid Hudson Med. Grp., P.C.,*
   877 F. Supp. 143 (S.D.N.Y. 1995) ................................................. 38

*People v. Telehublink,*
   301 A.D.2d 1006 (N.Y. App. Div. 2003) ....................................... 37

*People v. Trump Enterpreneur Initiative LLC,*
   137 A.D.3d 409 (N.Y. App. Div. 2016) ................................... 21, 23

*Peterson Energia Inversora, S.A.U. v. Argentine Republic,*
   2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ................................ 18

*Petitt v. Celebrity Cruises*, Inc.,
   153 F. Supp. 2d 240 (S.D.N.Y. 2001) ........................................... 21

*PHH Corp. v. CFPB,*
   839 F.3d 1 (D.C. Cir. 2016) ......................................................... 5, 9

*Prophet v. Myers,*
   645 F. Supp. 2d 614 (S.D. Tex. 2008) .......................................... 20

*RD Legal Funding Partners, LP v. Santiago,*
   No. 651831/2016 (N.Y. Sup. Ct. filed Apr. 6, 2016) ...................... 13

*Reid v. Unilever U.S., Inc.,*
   964 F. Supp. 2d 893 (N.D. Ill. 2013) ............................................ 27

*Resort Car Rental Sys., Inc. v. FTC,*
  518 F.2d 962 (9th Cir. 1975) ............................................................... 25

*Rubenstein v. Small,*
  273 A.D. 102 (N.Y. App. Div. 1947) .................................................... 29

*SEC v. Credit Bancorp., Ltd.,*
  297 F.3d 127 (2d Cir. 2002) ................................................................ 12

*Sibert v. FTC,*
  367 F.2d 364 (2d Cir. 1966) ................................................................ 25

*Simmons v. Abruzzo,*
  49 F.3d 83 (2d Cir. 1995) .................................................................... 35

*Slodov v. United States,*
  436 U.S. 238 (1978) ............................................................................ 16

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.,*
  966 F. Supp. 2d 270 (S.D.N.Y. 2013) ................................................. 12

*Sullivan v. Int'l Fid. Ins. Co.,*
  465 N.Y.S.2d 235 (N.Y. App. Div. 1983) ............................................ 11

*Swan v. Clinton,*
  100 F.3d 973 (D.C. Cir. 1996) ............................................................... 2

*Transmedia Restaurant Co. v. 33 E. 61st Street Restaurant Corp.,*
  184 Misc. 2d 706 (N.Y. Sup. Ct. 2000) ........................................ 29, 30

*Tuition Plan, Inc. v. Zicari,*
  70 Misc. 2d 918 (N.Y. Civ. Ct. 1972) ................................................. 32

*Turner v. Nat'l Football League,*
  No. 2:12-md-2323-AB, ECF No. 6481-1 (E.D. Pa. filed Feb. 13, 2015) .......................... 11

*United States v. Fisk,*
  70 U.S. 445 (1865) .............................................................................. 16

*UPS Store, Inc. v. Hagan,*
  99 F. Supp. 3d 426 (S.D.N.Y. 2015) ................................................... 21

*Vantone Grp. LLC v. Yangpu NGT Indus. Co., Ltd.,*
  2015 WL 4040882 (S.D.N.Y. July 2, 2015) ........................................ 35

*Vee Bee Serv. Co. v. Household Fin. Corp.,*
  51 N.Y.S.2d 590 (N.Y. Sup. Ct. 1944) ............................................... 32

*Welch v. TD Ameritrade Holding Corp.,*
  2009 WL 2356131 (S.D.N.Y. July 27, 2009) ...................................... 21

*Williams v. Ingersoll,*
  89 N.Y. 508 (1882) ............................................................................. 33

*Winter v. Am. Inst. Med. Scis. & Educ.,*
  2017 WL 1063459 (S.D.N.Y. Mar. 17, 2017) ..................................... 20

*Wynder v. McMahon,*
  360 F.3d 73 (2d Cir. 2004) ............................................................................... 35

*Zond, Inc. v. Fujitsu Semiconductor Ltd.,*
  990 F. Supp. 2d 50 (D. Mass. 2014) ............................................................... 35

**Federal Statutes**
12 U.S.C. § 16 ........................................................................................................ 6
12 U.S.C. § 5302 .................................................................................................... 8
12 U.S.C. § 5481 ........................................................................................... 9, 14, 15
12 U.S.C. § 5491 ................................................................................................... 1, 2
12 U.S.C. § 5492 .................................................................................................... 5
12 U.S.C. § 5497 ................................................................................................... 5, 6
12 U.S.C. § 5511 .................................................................................................... 4
12 U.S.C. § 5531 ................................................................................................ 3, 9, 27
12 U.S.C. § 5552 .................................................................................................... 7
12 U.S.C. § 5563…………………………………………………...............3
15 U.S.C. § 41 (1934) ........................................................................................... 2
15 U.S.C. § 45 (1934) ........................................................................................... 3
15 U.S.C. § 46 (1934) ........................................................................................... 3
26 U.S.C. § 6672 .................................................................................................... 16
28 U.S.C. § 1367 .................................................................................................... 17
49 U.S.C. § 40101, note ........................................................................................ 13

**State Statutes**
N.Y. Executive Law § 63(12) ....................................................................... 21, 23, 27
N.Y. Gen. Bus. Law § 349 ........................................................................... *passim*
N.Y. Gen. Bus. Law § 350 ........................................................................... 21, 22, 23
N.Y. Gen. Oblig. Law § 13-101 ................................................................... 33, 34

**Federal Rules**
Fed. R. Civ. P. 8 ........................................................................................... *passim*
Fed. R. Civ. P. 9 ........................................................................................... 19, 20, 21, 22
Fed. R. Civ. P. 12 ......................................................................................... 18

**State Rules**
N.Y. C.P.L.R. 3013 ............................................................................................... 21
N.Y. C.P.L.R. 3016 ............................................................................................... 21

**Other Authorities**
44B Am. Jur. 2d Interest and Usury §§ 128, 129 ............................................. 32
53 C.J.S. Liens § 3 (2017) .................................................................................. 12
S. Rep. No. 111-176 (2010) ............................................................................... 8, 16

## INTRODUCTION

Defendants move to dismiss the Complaint, arguing that the structure of the Consumer Financial Protection Bureau ("Bureau") is unconstitutional, that they are not subject to the laws under which the Bureau and the People of the State of New York ("NYAG") bring the action, and that the Complaint fails to state claims for relief. As explained below, each of these arguments fails. Defendants also attempt to blame the victims, 9/11 first responders and former NFL Players suffering from various medical ailments, contending throughout their motion that consumers have a duty to read and understand the contracts they sign. But this is not a breach of contract case, and it is not predicated on violations of the contracts between consumers and RD Legal Funding, LLC, RD Legal Finance, LLC, or RD Legal Funding Partners, LP (together, "RD"). For these reasons, Defendants' motion should be denied.

## ARGUMENT

**I.      The Bureau's structure is constitutional.**

The Bureau's statutory structure is entirely consistent with constitutional separation-of-powers principles. As well-established precedent makes clear, the Bureau's structure preserves the President's and Congress's powers under the Constitution.

### A.      The Bureau's structure preserves the President's powers under Article II.

Defendants principally complain that the Bureau's structure is unconstitutional because Congress chose for it to be headed by a single Director who is removable only for "inefficiency, neglect of duty, or malfeasance in office." *See* Mem. in Supp. of Mot. to Dismiss ("Mem.") at 10–13; *see also* 12 U.S.C. § 5491(c)(3).[1] But controlling Supreme Court precedent establishes

---

[1] Defendants also apparently object that the Director's five-year term may "be extended indefinitely if the Senate does not confirm a successor." Mem. at 10. But if the Director holds

that the Constitution permits such for-cause removal protection for the head of an agency with

functions like the Bureau's.[2] In *Humphrey's Executor v. United States*, the Supreme Court

approved for-cause removal protection for Federal Trade Commission (FTC) members identical

to that afforded the Bureau's Director. 295 U.S. 602, 621–22, 632 (1935); *compare* 15 U.S.C.

§ 41 (1934) (authorizing removal "for inefficiency, neglect of duty, or malfeasance in office"),

*with* 12 U.S.C. § 5491(c)(3) (same). As the Supreme Court later reaffirmed, the power to remove

such officials for cause gives the President "ample authority to assure that the [official] is

competently performing his or her statutory responsibilities"—and such for-cause removal

limitations thus do not "interfere impermissibly with [the President's] constitutional obligation to

ensure the faithful execution of the laws." *Morrison v. Olson*, 487 U.S. 654, 692–93 (1988).

Defendants attempt to avoid this precedent by claiming that there are only "two limited

exceptions" to the "general rule" that the President must be able to remove officials at will, and

that the Bureau does not fall within those exceptions.[3] Mem. at 10, 11. Defendants misstate the

law. The Supreme Court's analysis in removal cases "is designed not to define rigid categories of

those officials who may or may not be removed at will by the President." *Morrison*, 487 U.S. at

689. Instead, "the real question" concerning removal restrictions is whether they "are of such a

---

over beyond his five-year term, the President could remove him at will during the hold-over
period. *Swan v. Clinton*, 100 F.3d 973, 986 (D.C. Cir. 1996).

[2] Indeed, the Supreme Court has never held unconstitutional the kind of "limited
restriction[] on the President's removal power" created where the President, or an at-will
subordinate, can remove an official for cause. *Free Enter. Fund v. Public Co. Accounting
Oversight Bd.*, 561 U.S. 477, 495 (2010).

[3] Defendants also object that the Bureau's structure is "novel." Mem. at 11. But "[o]ur
constitutional principles of separated powers are not violated . . . by mere anomaly or
innovation." *Mistretta v. United States*, 488 U.S. 361, 385 (1989). To prevail, Defendants must
show that any alleged novelty actually violates some separation-of-powers principle. They
cannot make that showing.

nature that they impede the President's ability to perform his constitutional duty, and the functions of the officials in question must be analyzed in that light." *Id.* at 691.

Defendants do not—and cannot—offer any reason why, given the Bureau's "functions," the removal restriction for the Bureau's Director impedes the President's ability to execute the laws, while identical restrictions for the five FTC commissioners do not. Indeed, the Bureau's functions are remarkably similar to those of the FTC at the time of *Humphrey's Executor*. At that time, the FTC had the power to prohibit "unfair methods of competition in commerce" by "persons, partnerships, or corporations, except banks and [certain common carriers]." 15 U.S.C. § 45 (1934). To carry out that power, the FTC had "wide powers of investigation," *Humphrey's Ex'r*, 295 U.S. at 621, into the practices of "any corporation engaged in commerce." 15 U.S.C. § 46(a) (1934). The agency could bring an administrative cease-and-desist proceeding against parties engaged in unfair competition and enforce any resulting order in court. *Id.* § 45. The FTC could also gather information regarding corporate practices and report that information to Congress. *See id.* § 46(f). With these powers, the FTC could "exert[] a powerfully regulatory effect on those business practices subject to its supervision." *Nat'l Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 685 (D.C. Cir. 1973).

The Bureau performs similar functions, but within a narrower slice of the economy. The Bureau enforces the "Federal consumer financial laws" that pertain to "consumer financial products and services," 12 U.S.C. §§ 5481(14), 5511, and, like the FTC, may prohibit "unfair" (as well as deceptive and abusive) practices—but only against "covered persons" or "service providers" who engage in those practices in connection with consumer financial products or services. *Id.* §§ 5531(a), 5536(a). It may initiate administrative proceedings or actions in court to enforce the laws within its authority. *Id.* §§ 5563, 5564. And it may collect and publish

information on consumer financial markets; conduct financial education; handle consumer complaints; and issue rules to implement consumer financial laws. *Id.* § 5511(c). Thus, the Bureau's functions, like the largely similar functions of the FTC in 1935, are not "so central to the functioning of the Executive Branch as to require as a matter of constitutional law" that the Bureau's Director "be terminable at will by the President." *Morrison*, 487 U.S. at 691–92.[4]

Contrary to Defendants' contention, Mem. at 12, the fact that the FTC has multiple members, while the Bureau is led by a single Director, does not make it unconstitutional for Congress to give the Bureau Director the same removal protections it gave the FTC. Although the Supreme Court in *Humphrey's Executor* noted that the FTC was a "body of experts," it made that observation only in addressing the *statutory-construction* question of whether the removal provision was intended "to limit the executive power of removal to the causes enumerated." *Humphrey's Ex'r*, 295 U.S. at 624, 626. The Court never suggested that this feature mattered for the provision's *constitutionality*. *Id.* at 626–32. This silence is telling. If the Supreme Court believed that the number of officials leading an agency makes a difference to the constitutionality of a removal limitation, it surely would have said so. Indeed, it would have been a natural way to distinguish *Myers v. United States*, 272 U.S. 52 (1926), an earlier decision disapproving a provision requiring Senate approval for the President to remove a (single) postmaster.

The Supreme Court's choice not to rely on the number of officials leading an agency is unsurprising, for there is no principled reason for an agency's multi-member structure to make

---

[4] Defendants suggest that the removal protections for FTC commissioners are permissible because that agency acts in a "quasi-judicial and quasi-legislative" capacity, while the Bureau exercises executive power. Mem. at 12 (alterations omitted). *Morrison* squarely refutes this by confirming that "the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." *Morrison*, 487 U.S. at 689 n.28.

any difference for the constitutionality of a for-cause removal restriction: An agency headed by one leader rather than five in no way diminishes the President's power. Indeed, even though two judges on the D.C. Circuit found that the Bureau was unconstitutional—in an opinion that has since been vacated—those judges acknowledged that, as between the single-Director Bureau and a multimember commission, there was "no meaningful difference in responsiveness and accountability to the President." *PHH Corp. v. CFPB*, 839 F.3d 1, 32 (D.C. Cir. 2016), *vacated*, *reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017). If anything, the Bureau's single-Director leadership only *increases* the President's power—for it enables the President to identify more easily the official responsible for any problems. *See CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1088 (C.D. Cal. 2014). Defendants object that a single Director is not "accountable to a multimember commission," Mem. at 12, but this is constitutionally irrelevant. What matters is accountability to *the President*—and *Morrison and Humphrey's Executor* establish that the ability to remove an official for cause gives the President "ample authority" to perform his constitutional duties. *Morrison*, 487 U.S. at 692–93.[5]

---

[5] Defendants also cite a laundry list of "additional structure features" that they contend impermissibly diminish the President's powers. Mem. at 10. But none does. The first provision that Defendants cite merely permits the Bureau to submit the Bureau's own legislative recommendations to Congress without the President's approval. *See* 12 U.S.C. § 5492(c)(4). The provision does not restrict the President's authority to express his own views on any matter. The next cited provision expresses Congress's intent about the deference that *courts* should afford the Bureau's interpretation of a federal consumer financial law. *See id.* § 5512(b)(4)(B). Defendants cannot credibly contend that judicial deference to the legal interpretations of agencies generally, or independent agencies specifically, is unconstitutional. *Cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 523–26 (2009) (plurality op.) (same standards apply to review of actions of independent and other agencies). Nor did Congress violate the Constitution by clarifying that, although the Bureau must provide the Office of Management and Budget with the Bureau's financial operating plans and forecasts, this requirement does not imply that that office has any jurisdiction or oversight over the Bureau's affairs. *See* 12 U.S.C. § 5497(a)(4)(E). Whether an agency comports with Article II does not depend on "such bureaucratic minutiae" as "who controls the agency's budget requests and funding." *Free Enter. Fund*, 561 U.S. at 499–500. And

**B.      The Bureau's structure preserves Congress's powers under Article I.**

Defendants likewise err in contending that the Bureau's funding insulates it from "meaningful oversight or control from Congress." Mem. at 13. Defendants' contention that the Bureau Director funds the agency "without congressional approval," Mem. at 13, grossly mischaracterizes the Bureau's funding. *Congress* established funding for the Bureau by authorizing it to obtain funds reasonably necessary to carry out its mission from the Federal Reserve System's earnings, up to specified annual limits. *See* 12 U.S.C. § 5497(a). And Congress retains full power to change that funding pursuant to the ordinary legislative process. Defendants' contention that "Congress is . . . prohibited from reviewing the CFPB's use of [its] funds," Mem. at 13, is likewise erroneous. Although the statute limits review by the House and Senate *Appropriations Committees*, *see* 12 U.S.C. § 5497(a)(2)(C), nothing in the statute prevents Congress as a whole, either House of Congress, or any other committee from reviewing the Bureau's funding. And, of course, Congress remains fully able to oversee the Bureau by passing legislation to alter its authority, change its structure, or displace its regulations.

To the extent that Defendants mean to suggest that the Constitution prevents Congress from funding the Bureau in the way it did, they are wrong. Congress may fund agencies as it chooses, either through annual appropriations bills or through some other mechanism.[6] *See Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth.*, 388 F.3d 405, 409 (3d Cir. 2004)

---

the Director's authority to hire, fire, and delegate powers to Bureau employees, *see* Mem. at 10, likewise does not diminish the President's power—and Defendants do not even attempt to explain how it does.

[6] Consistent with this well-established authority, Congress has likewise funded other financial regulators outside the annual appropriations process. *See* 12 U.S.C. § 16 (Office of the Comptroller of the Currency); *id.* § 243 (Federal Reserve Board); *id.* § 1755 (National Credit Union Administration); *id.* § 1817(b) (Federal Deposit Insurance Corporation); *id.* § 4516 (Federal Housing Finance Agency).

("Congress may . . . decide not to finance a federal entity with appropriations," but rather

through some other funding mechanism); *see also Morgan Drexen, Inc.*, 60 F. Supp. 3d at 1089

(approving Bureau's funding); *CFPB v. ITT Educ. Servs.*, 219 F. Supp. 3d 878, 896–97 (S.D.

Ind. 2015) (same).

> **C.      Even if the Bureau were unconstitutional, Defendants could not obtain the
> relief they seek because both the CFPB and the NYAG could still enforce the
> provisions of the CFPA.**

Because both the President and Congress retain their full authorities under the

Constitution, Defendants cannot establish that the Bureau's statutory structure violates the

Constitution. But even if the Bureau's structure were somehow unconstitutional, Defendants

could not obtain the relief they seek—complete elimination of the Bureau and dismissal of this

lawsuit. *See* Mem. at 14, 16. To begin, the NYAG, not just the Bureau, asserts the claims against

Defendants under the CFPA.[7] Defendants do not—and could not—make any argument that the

NYAG is somehow unconstitutional and cannot enforce that law.

Nor could Defendants prevail even if the NYAG did not join in the CFPA claims.

Defendants' "argument that the alleged separation-of-powers violation requires that the Bureau

be stopped in its tracks ignores traditional constraints on separation-of-powers remedies." *John

Doe Co. v. CFPB*, 849 F.3d 1129, 1133 (D.C. Cir. 2017). "[W]hen confronting a constitutional

flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic

portions while leaving the remainder intact." *Free Enter. Fund*, 561 U.S. at 508 (internal

quotation marks omitted). That is particularly true where, as here, Congress has included an

---

[7] The CFPA expressly authorizes state attorneys general to enforce the CFPA.  12 U.S.C.
§ 5552(a)(1).

express instruction that "[i]f any provision of this Act . . . is held to be unconstitutional, the remainder of this Act . . . shall not be affected thereby." 12 U.S.C. § 5302.

Defendants attempt to avoid this congressional command by arguing that an express severability provision creates only a "presumption" that Congress intended for courts to excise any unconstitutional provision rather than invalidating the entire statute. Mem. at 15. But only "strong evidence that Congress intended otherwise" can overcome that presumption. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987). Defendants can point to no such evidence—let alone "strong evidence"—here. Defendants opine that Congress would not have wanted to create an agency that was not "independent." Mem. at 16. But this reflects an unduly cramped view of Congress's goals. Congress created the Bureau so that responsibility for consumer financial laws would no longer be spread among seven separate regulators, some of whom "routinely sacrificed consumer protection for short-term profitability of banks." S. Rep. No. 111-176, at 15 (2010) (internal quotations omitted). This resulted in "conflicting regulatory missions, fragmentation, and regulatory arbitrage." *Id.* at 10. Severing any offending provision, even if it made the Bureau in some sense less "independent," would serve Congress's goal of "end[ing] the fragmentation of the current system by combining the authority of the seven federal agencies involved in consumer financial protection in the CFPB." *Id.* at 11.[8] Thus, if this Court were to conclude that the for-cause removal protection is unconstitutional, there is no reason to believe that Congress would have preferred eliminating the Bureau over making the Director removable at will. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) ("After finding an

---

[8] Defendants' conclusory assertion that severance is not possible because the Court would actually "need to rewrite" the statute, Mem. at 16, is simply wrong. Indeed, Defendants do not even explain what the Court would have to "rewrite."

application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?").

Thus, even if the Bureau were unconstitutional (it is not), severance would be the proper remedy. And that fact militates against dismissal, as courts confronting challenges to the Bureau's constitutionality have unanimously found. *See CFPB v. NDG Fin. Corp.*, No. 15-cv-5211 (CM), 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016) (declining to address challenge to Bureau's constitutionality because "even if Defendants are correct that the CFPB's structure is unconstitutional, the only appropriate remedy would not prevent or delay this suit"); *CFPB v. D&D Mktg., Inc.*, No. 15-cv-9692, ECF No. 57 (C.D. Cal. Nov. 17, 2016), Order Denying Defs.' Mot. to Dismiss, at 7–8; *cf. PHH Corp.*, 839 F.3d at 39 (holding that proper remedy was severance of "for cause removal" provision, which would "not halt the CFPB's ongoing operations" or its ability to hold wrongdoer liable).

## II.        RD is a covered person under the CFPA.

Defendants next assert that the Complaint must be dismissed because none of the Defendants is a "covered person" under the Consumer Financial Protection Act of 2010 ("CFPA"). This contention also fails.

An entity is a covered person if it "engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6). The CFPA prohibits covered persons from engaging in unfair, deceptive, or abusive acts or practices in connection with the consumer financial products or services they offer. *See id.* §§ 5531, 5536. Among the products or services that render an entity a covered person is "extending credit." *Id.* § 5481(15)(A)(i).

The CFPA defines "credit" as the right "to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment for such purchase." *Id.*

9

§ 5481(7). Defendants argue that RD is not a covered person because it does not extend credit or otherwise offer or provide a consumer financial product or service. Based on the properly pleaded allegations of the Complaint, however, RD does offer or provide extensions of credit.

**A.    The assignment clauses in the RD contracts are invalid.**

Defendants contend that the RD transactions are "assignments" or "true sales" and thus do not involve the right to defer payment of a debt. *See, e.g.*, Mem. at 36, 18–21. But while RD's contracts describe their transactions with consumers as "assignments" of the consumers' interests in their awards, the provisions purporting to effect assignments are invalid and unenforceable.

In determining whether a transaction constitutes an assignment, courts look to the validity of any assignment provision in the underlying agreement. *See, e.g.*, *Capela v. J.G. Wentworth, LLC*, No. 09-cv-882 (SJF) (WDW), 2009 WL 3128003 (E.D.N.Y. Sep. 24, 2009). Here, the assignment provisions in RD's contracts are invalid and unenforceable under the very terms of the funds from which consumers' awards arise: the order establishing the NFL settlement fund contains an explicit anti-assignment clause, *see* Compl. ¶ 35, and the federal law establishing the September 11th Victim Compensation Fund ("Zadroga Fund") and the rules governing awards from the fund likewise prohibit RD's purported assignments, *see id.* ¶ 36.

**1.    The NFL settlement fund prohibits assignments.**

The order establishing the NFL settlement fund clearly prohibits assignments of proceeds from the fund. In the class-action settlement agreement approved by the district court and affirmed by the Third Circuit, *see In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 420 (3d Cir. 2016), a clause entitled "No Assignment of Claims" provides that an "assignment" of or "attempt to assign" any class member's "rights or claims relating to the subject matter of the Class Action Complaint . . . will be void, invalid, of no force and effect and the Claims Administrator shall not recognize any such action," Class Action Settlement

Agreement, as Amended, § 30.1, *Turner v. Nat'l Football League*, No. 2:12-md-2323-AB, ECF No. 6481-1 (E.D. Pa. filed Feb. 13, 2015); Compl. ¶ 35. The NFL settlement agreement provides that it "will be interpreted and enforced in accordance with the laws of the State of New York," *id.* § 27.1(a), and, under New York law, the agreement's anti-assignment provision is valid and effective, and it voids the purported assignments in RD's contracts. *See, e.g.*, *Sullivan v. Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 235 (N.Y. App. Div. 1983) ("[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments."). In short, the NFL settlement agreement contains clear and legally enforceable language precluding assignments of rights and claims, and thus the assignment clauses are void, invalid, and of no force or effect.

Defendants argue that the phrase "rights or claims relating to the subject matter of the Class Action Complaint" in the NFL anti-assignment provision narrowly prohibits only assignments of rights and claims in the NFL complaint, not rights and claims under the settlement agreement. *See* Mem. at 43. Defendants are wrong for several reasons. First, the Second Circuit commonly interprets the term "relating to" to have a broad scope. *See, e.g.*, *Coregis Ins. Co. v. Amer. Health Foundation, Inc.*, 241 F.3d 123, 128–29 (2d. Cir. 2001) ("The term 'related to' is typically defined more broadly."); *Collins v. Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (discussing that, in the context of arbitration clauses, the phrase "'arising out of or relating to th[e] agreement' is paradigm of a broad clause"). And under the ordinary meaning of the broad term "related to," a consumer's right or claim to an award resulting from the order in the matter plainly is related to the subject matter of the complaint.

Second, if interpreted as Defendants suggest, the anti-assignment provision would make little sense. The complaint in the NFL action does not provide any of the parties "rights"; only the settlement agreement does that. The settlement agreement provides that "the Claims Administrator shall not recognize" assignments. Class Action Settlement Agreement, § 30.1. The natural reading of the provision's plain language is that it prohibits exactly what RD's contracts purport to achieve: the assignment of rights that arise under the agreement to resolve the case.

Defendants' argument that references to liens in other provisions of the NFL settlement agreement must mean that the settlement proceeds are assignable also fails. Mem. at 43–44. Defendants' argument conflates two distinct legal concepts, liens and assignments. A lien differs from an assignment in critical ways. *See, e.g.*, 53 C.J.S. Liens § 3 (2017) ("The term 'lien' has similarities to, but is distinguishable from, terms and concepts such as . . . assignment."). A lien is a "security interest in property," *SEC v. Credit Bancorp., Ltd.*, 297 F.3d 127, 138 (2d Cir. 2002), and conveys "nothing more than a right or claim against property interest," *Johnson v. Augsbury Org., Inc.*, 167 A.D.2d 783, 784 (N.Y. App. Div. 1990). On the other hand, an assignment involves a "transfer of a right, interest, or claim from one person to another" and allows the assignee to stand in the shoes of the assignor. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 279 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). References to liens in the settlement agreement thus are not inconsistent with its prohibition of assignments. *See India.com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005).

Finally, Defendants contend that the use of the word "assigns" in the Amended Final Order and Judgment in the NFL class action means that "certain assignments are permitted." Mem. at 44. But this language does not help RD: The NFL agreement permits assignments only as long as they do not involve rights or claims relating to the subject matter of the NFL

12

complaint. *See* Class Action Settlement Agreement, § 30.1. For example, the agreement would provide the NFL the ability to assign *its liabilities* arising from the settlement. References to "assigns" do not contradict the anti-assignment provision.

>**2.    The federal law creating the Zadroga Fund and the Fund's own rules prohibit assignments of funds.**

The federal law creating the Zadroga Fund prohibits assignments of payments from the Fund—it specifically limits payments to "claimants." 49 U.S.C. § 40101, note. A claimant is defined as "an *individual filing a claim* for compensation under section 405(a)(1)." *Id.* (emphasis added); *see id.* ("[T]he Special Master shall authorize *payment to such claimant* of the amount determined with respect to the claimant." (emphasis added)). Such a claim requires, among other elements, "information from the claimant concerning the *physical harm that the claimant suffered*, or in the case of a claim filed on behalf of a decedent information confirming the decedent's death, *as a result of the terrorist-related aircraft crashes of September 11, 2001*." Air Transportation Safety and System Stabilization Act of 2001 § 405(a)(2)(B), 49 U.S.C. § 40101, note (emphasis added). RD did not suffer physical harm as a result of September 11, so it is not an eligible claimant.

Similarly, the written policies of the Fund are clear in prohibiting non-claimants from receiving payment directly from the Fund. *See* Compl. ¶ 36. In fact, recent guidance from the Fund warns consumers that "[f]ederal law prohibits the assignment of claims" in the manner in which RD structures their transactions. September 11th Victim Compensation Fund, *Policies and Procedures*, at 62–63 (May 2017), https://www.vcf.gov/pdf/VCFPolicy.pdf. Consistent with these provisions, the Fund ignores RD's request to be paid directly and instead makes payments directly to consumers, who then, according to RD itself, must repay RD. *See* Compl. ¶ 30; *see also* Compl., *RD Legal Funding Partners, LP v. Santiago*, No. 651831/2016 (N.Y. Sup. Ct. filed

Apr. 6, 2016) (lawsuit by one of Defendants against consumer alleging that the Zadroga Fund sent award proceeds directly to consumer). By making it impossible to structure the transactions as assignments, federal law—and the policies endorsed by the Special Master authorized to administer it—prohibits the assignments of payments from the Zadroga Fund.

**B.     RD offered or provided extensions of credit.**

Defendants also incorrectly argue that they are not subject to the CFPA's prohibitions because they do not offer or provide credit, and are therefore not "covered persons" for purposes of that law. As described, because the assignment provisions in the RD contracts are invalid and unenforceable, the contracts are not sales or assignments, and indeed RD knows or recklessly disregards that the purported assignments are invalid. RD thus functionally offers or provides a credit transaction in which consumers incur a debt and defer the right to repay. *See* Compl. ¶ 43 (citing 12 U.S.C. § 5481(7)). The Complaint alleges that consumers enter into contracts with RD under which they receive a lump sum and agree to repay a far larger amount in the future. *See id.* ¶ 24. And indeed, under the contracts' own express terms, the transaction is to be treated as an extension of credit if the attempted assignment is invalid. *See id.* ¶ 37. These offers or provisions of credit transactions are plainly a consumer financial product or service. *See id.* ¶ 19 (citing 12 U.S.C. § 5481(15)(A)(i)). RD offered or provided these transactions, *see id.* ¶ 20, and is therefore a covered person, *see id.* ¶19 (citing 12 U.S.C. § 5481(6)(A)). These allegations, and the supporting facts alleged regarding the transactions, amply satisfy Plaintiffs' pleading obligations at the motion to dismiss stage. *See* Fed. R. Civ. P. 8(a); *see also Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

Defendants' principal argument to the contrary rests on its incorrect assumption of valid assignments. According to Defendants, the consumer has no right to defer payment of a debt because the consumer "has sold off the right to a future receivable which, when distributed, is

immediately due" to RD. Mem. at 19. But the relevant prohibitions on assignments mean that consumers cannot "sell"—nor can RD "buy"—their award proceeds. Rather, if the contracts are valid at all, the contracts were functionally an offer or provision of credit in which consumers incur a debt and defer the right to repay. The transactions thus meet all the elements of an offer or provision of credit under § 5481(7).

Defendants suggest that *Capela*, 2009 WL 3128003, at *9–11, stands for the proposition that consumers like those who enter into transactions with RD have no repayment obligation to RD. It does not. In *Capela*, which addressed a plaintiff's claims under the Truth in Lending Act, the court concluded that the plaintiff had no repayment obligation because the valid assignment effectuated the transfer of the plaintiff's repayment obligation to a third party. *See id.* at *10. But here, because the assignment clauses are invalid, there is no valid assignment to transfer a repayment obligation to the Zadroga Fund or the NFL settlement fund. The repayment obligation stays with the consumers, who must repay RD directly, assuming the contracts are valid at all. *See* Compl. ¶ 30.

Because RD's assignments are invalid, RD is offering and providing credit transactions. RD is thus a "covered person" and subject to the CFPA.

### C.   A person need not both "extend credit" and "service loans" to be a "covered person" under the CFPA.

Section 1002(15)(A)(i) of the CFPA provides that the term financial product or service means "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit." 12 U.S.C. § 5481(15)(A)(i). Defendants raise the novel contention that the word "and" in this provision must mean that, to qualify as a covered person under the CFPA, an entity must both "extend credit" and "service loans." Defendants' strained reading ignores the purpose of the CFPA and ordinary rules of statutory construction.

15

To interpret the meaning of the word "and" in a statute, the Supreme Court has long noted that courts should look to legislative intent. *United States v. Fisk*, 70 U.S. 445, 447 (1865) ("In the construction of statutes it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe 'or' as meaning 'and' and again 'and' as meaning 'or.'"). Consequently, it is not uncommon for courts to hold that the word "and" can be used disjunctively. *See, e.g.*, *Slodov v. United States*, 436 U.S. 238, 250 (1978) (concluding that the word "and" was used disjunctively in 26 U.S.C. § 6672 which imposed a tax penalty on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title"); *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 894 (5th Cir. 1958) (holding that "and" was disjunctive in the context of a statute that required an employer to pay overtime wages to employees "engaged in the ginning and compressing of cotton").

Further, the CFPA's legislative history clearly shows that Congress considered lending and servicing loans to be distinct consumer financial products or services. Indeed, Congress explicitly noted that servicing loans may be, and often is, conducted by a party separate from the lender, and indicated that servicing loans—separate and apart from lending—is to be treated as a different financial product or service. S. Rep. No. 111-176, at 159–60 (2010) (stating, in describing consumer-financial products and services covered under the bill, that "[t]hese include, among others listed, the servicing of mortgage loans and debt collection services where the financial service being provided is the result of a contract between the lender and the servicer or debt collector."). Congress plainly meant for the CFPA to apply to any person that engages in either offering or providing credit or servicing loans; there is no basis to conclude that it intended to cover entities that do both. This interpretation is consistent with the language of the statute and common financial industry practices—the backdrop against which Congress legislated. Lenders

are not necessarily loan servicers. There is thus no requirement that RD service loans to fall

within the ambit of § 1002(15)(A)(i). Because Defendants offered or provided extensions of

credit, they are covered persons and subject to the CFPA.

### III.  The Complaint's state law claims should not be dismissed for lack of subject matter jurisdiction.

In the unlikely event that this Court dismisses the CFPA claims at issue here, this Court

should nonetheless maintain jurisdiction over the state law claims.

If a federal court dismisses all claims over which it has original jurisdiction, pursuant to

28 U.S.C. § 1367(c)(3), that court has the discretion to exercise supplemental jurisdiction over

the remaining state law claims. When considering whether to keep the state law claims, "district

courts should balance values of judicial economy, convenience, fairness, and comity . . . ." *Klein*

*& Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 263 (2d Cir. 2006) (citing *Carnegie Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The decision of whether to exercise supplemental

jurisdiction thus "accommodates a range of concerns and values" and allows for "flexibility."

*Cohill*, 484 U.S. at 350.

Balancing judicial economy, convenience, fairness, and comity argues for retaining

jurisdiction of New York's claims. Doing so would be the best way to accomplish quick and

efficient progress in this case. This Court has already invested time and energy to meet with the

parties in person, familiarize itself with the facts of the case, and address relevant issues,

including in the pending motion. These factors speak to both judicial economy and convenience

and weigh in favor of retaining jurisdiction. *See Muhlrad v. Mitchell*, No. 96-cv-3568 (DLC),

1997 WL 182614, at *4 (S.D.N.Y. Apr. 14, 1997) (retaining supplemental jurisdiction where

"motion to dismiss has already been briefed at expense to both parties" and claim can be easily

resolved). It would also be more convenient for the parties to remain in federal court, where the

Complaint has been filed and where the Court is familiar with the issues, rather than beginning litigation anew in state court. The state laws at issue are not novel and thus concerns of comity are not implicated. Finally, fairness weighs in favor of supplemental jurisdiction. By requesting the dismissal of state law claims for the sole purpose of having the NYAG refile in state court, Defendants would delay the proceedings and their ultimate liability. *See* Mem. at 23. This unnecessary delay would unfairly perpetuate the harm to the victims.

Accordingly, even if all claims conferring original federal jurisdiction are dismissed, the Court should exercise supplemental jurisdiction over the state claims.

## IV.   All Counts in the Complaint state valid claims for relief.

Defendants also argue that the Bureau's and the NYAG's claims fail as a matter of law. The Court should reject this argument because these claims are alleged with sufficient factual support for the Court, accepting the facts as true, to infer Defendants' liability.

When considering a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all factual allegations in a complaint should be accepted as true and all reasonable inferences should be drawn in plaintiffs' favor. *See Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017); *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443–44 (2d Cir. 2015); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "[A] plaintiff must provide 'more than labels and conclusions,' such that '[f]actual allegations . . . raise a right to relief above the speculative level,'" yet "a complaint is not required to contain 'detailed factual allegations'" to survive a motion to dismiss. *Peterson Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739 (LAP), 2016 WL 4735367, at *13 (S.D.N.Y. Sept. 9, 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alterations in original); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

18

The Complaint satisfies this standard. Defendants' arguments to the contrary ignore the obligation to accept the allegations in the Complaint as true and instead inappropriately argue the merits of the allegations. Defendants' conclusions are both unsupported by facts and wrong on the law, and their motion to dismiss should be denied accordingly.

A.     **Rule 9(b)'s heightened-pleading standard does not apply.**

Defendants argue that the entire Complaint sounds in fraud and every claim must be dismissed under the heightened-pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Mem. at 23–25. Defendants are incorrect that Rule 9(b) applies, and even if the Counts in the Complaint were subject to Rule 9(b)'s strictures, the allegations would meet the rule's requirements.

"[T]he United States Supreme Court has consistently cautioned against extending [Rule 9(b)'s] heightened pleading standard beyond claims for fraud or mistake." *CFPB v. Frederick Hanna & Assocs.*, 114 F. Supp. 3d 1342, 1372 (N.D. Ga. 2015). By its terms, Rule 9(b) only applies to claims for "fraud or mistake," and "consumer protection claims are not claims of fraud, even if there is a deceptive dimension to them." *Id.* A claim for deception is "simply not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005). Defendants cite several cases that they contend suggest Rule 9(b) should be applied here. They do not. In short, Defendants fail to take into account the distinction between fraud claims and garden-variety claims of deception under consumer-protection statutes. *See Lobatto v. Berney*, No. 98-cv-1984 (SWK), 1999 WL 672994, at *9 (S.D.N.Y. Aug. 26, 1999) (applying Rule 9(b) to a securities fraud claim); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (stating that Rule 9(b)'s standards applies to common-law claims such as fraud and mistake); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427 (NGG), 2014 WL 4773991, at *14

19

(E.D.N.Y. Sept. 24, 2014) (stating Rule 9(b)'s standards without analyzing its applicability to the California unfair competition claim at issue).

Most courts that have grappled with the question have concluded that Rule 9(b) does not apply to claims brought under various consumer protection statutes, including: the CFPA, *see Frederick Hanna*, 114 F. Supp. 3d at 1371–74; *D&D Mktg.*, Order at 17–18; the FDCPA, *see Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008); the FTC Act, *see Freecom Commcn's*, 401 F.3d at 1203 n.7; *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 627–28 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015); and the Telemarketing Sales Rule, *see FTC v. AFD Advisors*, No. 13-cv-6420, 2014 WL 274097, at *2 (N.D. Ill. Jan. 24, 2014). *But see CFPB v. Prime Mktg. Holdings*, No. 16-cv-07111 (BRO) (C.D. Cal. Nov. 15, 2016), Order re Def.'s Mot. to Dismiss, at 10 (finding that Rule 9(b)'s standards do apply but only if defendants acted knowingly and in a "unified course of conduct.").

Likewise, Rule 9(b) does not apply to claims under New York's consumer protection laws. The Second Circuit, in *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), explained that "because [General Business Law] § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices" and because "§ 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)[.]" *Id.* at 511; *see also Winter v. Am. Inst. Med. Scis. & Educ.*, --- F. Supp. 3d ----, 2017 WL 1063459, at *17 (S.D.N.Y. Mar. 17, 2017) ("Claims under N.Y. GBL § 349, however, are examined under the more liberal pleading standard of Fed. R. Civ. P. 8(a)."); *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 440–41 (S.D.N.Y. 2015); *Leonard v. Abbott Labs., Inc.*, No. 10–cv–4676 (ADS)(WDW), 2012 WL 764199, at *17–*19 (E.D.N.Y. Mar. 5, 2012). More specifically, Rule 9(b) does not apply

"because Section 349 does not require proof of intent to deceive or justifiable reliance[.]" *Banks v. Consumer Home Mortg., Inc.*, No. 01-cv-8508 (ILG), 2003 WL 21251584, at *6 (E.D.N.Y. Mar. 28, 2003); *Petitt v. Celebrity Cruises*, Inc. 153 F. Supp. 2d 240, 265 (S.D.N.Y. 2001) (Rule 9(b) does not apply to GBL § 349 claims.). "[T]he Second Circuit has held that, as a categorical matter, claims under § 349 are only required to meet the requirements of Rule 8(a)." *Welch v. TD Ameritrade Holding Corp.*, No. 07-cv-6904 (RJS), 2009 WL 2356131, at *24 n.13 (S.D.N.Y. July 27, 2009). Rule 9(b) also does not apply to GBL § 350. *See Cohen v. Hertz Corp.*, No. 13-cv-1205 (LTS)(AJP), 2013 WL 9450421, at *5 (S.D.N.Y. Nov. 26, 2013) ("Actions in fraud under [GBL §§] 349 and 350 are not subject to the stringent pleading requirements of Rule 9(b)."). The same logic applies to Executive Law § 63(12), which also does not require intent or reliance. *See People v. Trump Entrepreneur Initiative LLC*, 137. A.D.3d 409, 417 (N.Y. App. Div. 2016) (stating that neither intent nor reliance needs to be established for a § 63(12) claim); *People v. Empire Prop. Sols., LLC*, 2012 N.Y. Slip Op. 31035(U), at *2 (N.Y. Sup. Ct. Apr. 10, 2012) ("the general notice pleading requirement of CPLR 3013 apply to Executive Law § 63(12) claims" and the "strict pleading requirements for causes of action sounding in common law fraud (CPLR 3016) do not . . .").[9]

    **B.**    **Even if Rule 9(b) did apply, the Complaint would satisfy the heightened-pleading standard.**

Even if Rule 9(b) did apply, the Complaint's allegations are sufficient. Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are

---

[9] New York Civil Practice Law and Rules ("CPLR") 3016(b) is the direct state analog to Rule 9(b). It was intended to apply to claims based in common law fraud in order to ensure that such a pleading contains sufficient specificity to "permit the inference of fraudulent intent," which is an element of such a claim. *Barclay Arms, Inc. v. Barclay Arms Assocs.*, 144 A.D.2d 287, 288 (N.Y. App. Div. 1988), *aff'd*, 74 N.Y.2d 644 (N.Y. 1989).

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015). The Complaint alleges that RD, along with Roni Dersovitz, misrepresent that their products are a sale or assignment, misrepresent their ability to expedite the payment of awards, misrepresent when consumers will receive funds, collects on contracts that are void under state law, misrepresent that the agreements are enforceable when in fact they are void under New York law, misrepresent that individuals can assign their awards to Defendants, and fail to disclose the interest rate. *See* Compl. ¶¶ 5–7, 20–66. The Complaint also alleges that the misrepresentations are made in RD's contracts, *see id.* ¶¶ 31, 37, 40, on its website, *see id.* ¶¶ 39, 45, 49, and in communications with consumers, *see id.* ¶¶ 49, 54. And the Complaint alleges that Defendants know or recklessly disregard that the assignments are invalid under the terms of the NFL settlement agreement and the federal law and policies governing the Zadroga Fund, that RD does not have the ability to influence the Zadroga Fund, that RD did not deliver funds to consumers by the promised date, and that RD has collected on void contracts. *See id.* ¶¶ 34–43, 47, 50, 54. These allegations satisfy the requirements of Rule 9(b).

### C.   Counts I, III–V, and IX–XI of the Complaint state claims under the CFPA, New York Executive Law § 63(12), and New York GBL §§ 349 and 350.

Defendants assert that the Complaint does not adequately allege deceptive conduct. As explained below, Defendants are wrong. Counts I, III–V, and IX–XI, which address Defendants' deceptive representations, sufficiently plead the claims alleged. A claim for deception under the CFPA requires a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. *See Frederick Hanna*, 114 F. Supp. 3d at 1372. A representation or omission is deceptive pursuant to GBL §§ 349 or 350 if it is likely to mislead a

22

reasonable consumer acting reasonably under the circumstances. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995). Executive Law § 63(12) empowers the Attorney General to seek injunctive and other relief whenever a person or business engages in "repeated or persistent fraud or illegality." "Fraud" under § 63(12) is not common-law fraud, but is statutorily defined broadly as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions." Conduct violates Executive Law § 63(12) if it "has the capacity or tendency to deceive" both the average consumer and "the ignorant, the unthinking, and the credulous." *People v. Applied Card Sys., Inc.*, 27 A.D.3d 104, 106 (N.Y. App. Div. 2005). It is not necessary to establish intent to deceive or reliance under GBL §§ 349, 350, or Executive Law § 63(12). *Trump*, 137. A.D.3d at 417; *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). Based on these standards, if the CFPA is violated, so too is the New York law at issue. The relevant counts allege each of the necessary elements.

### 1. Defendants' representations that the transactions are true sales or assignments were false, likely to mislead consumers, and material.

Counts I, V, IX–XI allege that Defendants asserted that their transactions are true sales or assignments, amongst other deceptive acts or practices. As explained in the Complaint and *supra* Section II.A., that was not true: The assignment clauses are invalid. Defendants' arguments that the assignments were valid are wholly unavailing. Moreover, while Defendants contend that these claims should be dismissed because the transactions at issue were not loans, the misrepresentation alleged in these counts is that Defendants misrepresented the validity of the assignment provisions, which is likely to mislead a consumer acting reasonably about a material aspect of the transactions.

         **2.**     **Defendants' representations that they could expedite consumers'**
                    **receipt of funds and "cut through the red tape" were false, likely to**
                    **mislead consumers, and material.**

Defendants also contend that the statement "cut through the red tape" is not deceptive.

This argument is wrong. As an initial matter, Defendants ignore most of the relevant allegations,

instead focusing only on this single statement. Mem. at 34–35. The Complaint alleges that

Defendants made other misleading statements regarding their ability to affect how quickly

consumers would receive their awards such as:

- Defendants are "dedicated to helping you obtain your Zadroga settlement funds as quickly as possible"; and

- "We pride ourselves on working closely with our clients and look forward to assisting those with Zadroga claims in obtaining accelerated access to their second payment."

Compl. ¶ 45. These statements claiming to expedite consumers' awards are false, likely to

mislead consumers, and material. *See* Compl. ¶¶ 6, 44–48, 79–84, 121, 125, 129. Viewed  in the

light most favorable to Plaintiffs, the Complaint sufficiently alleges Defendants' deceptive

misrepresentations. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443–44 (2d Cir.

2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678–80 (2009)).

Defendants baldly assert that their statements are "not misleading to a reasonable

consumer." Mem. at 34. Despite the plain language of Defendants' representations, they appear

to contend that the statements' true meaning is made clear in their contracts. Yet the very cases

that Defendants cite for support undermine their argument. For example, *FTC v. E.M.A.*

*Nationwide, Inc.*, 767 F.3d 611, 631–32 (6th Cir. 2014), says that it is the overall net impression

of a given advertisement or representation that matters, *not* an overall net impression of the

"entire course of dealing" as Defendants suggest. *See id.*; *FTC v. Med. Billers Network, Inc.,* 543

F. Supp. 2d 283, 304 (S.D.N.Y. 2008); Mem. at 34. As the court observed in *E.M.A. Nationwide*,

> A court need not look past the first contact with a consumer to determine the net impression from that contact, and a court may consider individual advertisements or messages to determine the net impression. . . . [E]ach advertisement must stand on its own merits; even if other advertisements contain accurate, non-deceptive claims, a violation may occur with respect to the deceptive advertising.

767 F.3d at 631-32 (internal citations and quotation marks omitted).

The principle that subsequent disclosures, in contracts or otherwise, do not cure initial misrepresentations is well-established. *See, e.g.*, *Exposition Press, Inc. v. FTC,* 295 F.2d 869, 873 (2d Cir. 1961) ("The law is violated if the first contact is secured by deception even though the true facts are made known to the buyer before he enters into the contract of purchase." (internal quotation marks, citations, and ellipses omitted)); *Med. Billers Network*, 543 F. Supp. 2d at 304 (same); *Sibert v. FTC*, 367 F.2d 364, 365 (2d Cir. 1966) (finding that an initial deception was not cured by subsequent clarifying disclosure); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261 (PKC), 2015 WL5155934, at *5 (S.D.N.Y. Sept. 2, 2015) (stating that New York courts have found disclaimers insufficient to grant a motion to dismiss GBL § 349 claims and denying motion to dismiss); *Resort Car Rental Sys., Inc. v. FTC,* 518 F.2d 962, 964 (9th Cir. 1975) (finding that a deceptive statement is not cured "even if the buyer later becomes fully informed before entering the contract").

Defendants also contend that the statement "cut through the red tape" is not material because it is actually about the source rather than the timing of the payments. This argument is equally flawed. A claim is "material if it involves information important to consumers and, hence, is likely to affect their choice of, or conduct regarding a product." *Med. Billers Network,* 543 F. Supp. 2d at 304 (internal quotation marks, citations, and alterations omitted). Express claims and intentionally implied claims are presumed to be material. *See Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, No.

3:13-cv-1470 (JAM), 2017 WL 985640, at *9 (D. Conn. Mar. 13, 2017) ("[A]n express or deliberately implied claim made by a company is presumptively material.") (quoting *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 135 (D. Conn. 2008)).

And here, Defendants' deceptive statements would be material even absent a presumption of materiality. They target the very reason why consumers would consider entering into agreements with Defendants in the first place—the desire to obtain their payments from the funds sooner. Defendants' conclusory assertion that their statements relate only to the source of the funding is inconsistent with the plain meaning of those statements—that Defendants can affect the processes of the entities that provide consumers' awards—and ignores their own numerous other representations about expediting funding. *See* Compl. ¶¶ 44–48, 79. And even if Defendants' offer to "cut through the red tape" could be construed as referring to the source of funding, it would still be deceptive because it gives rise to another interpretation that is false. Advertisements or claims that are literally or technically true are considered deceptive if they create a false impression or if they are subject to more than one interpretation, one of which is false. *See In re Thompson Med. Co.*, 791 F.2d 189, 197 (D.C. Cir. 1986); *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 688 (3d Cir. 1982).

Ultimately, as alleged in the Complaint, Defendants' claims that they could expedite settlement funding and "cut through the red tape" were both misleading and material, and the Complaint adequately pleads deceptive conduct in this regard.

### 3.    Defendants' representations about the timing of funding were false, likely to mislead consumers, and material.

Defendants attack the Complaint's allegations that Defendants misrepresented when consumers would receive funds from RD, arguing that their failures to make payments were not unfair, deceptive, or fraudulent conduct, but rather a simple breach of contract. *See* Mem. at 35–

36. Whether or not these failures breached RD's contracts with consumers is wholly irrelevant; the Complaint does not allege breach of contract.[10] Rather, it alleges deceptive acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), and New York General Business Law § 349, as well as fraudulent acts in violation of New York Executive Law § 63(12).

Defendants' reliance on *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 914-15 (N.D. Ill. 2013) is misplaced. *Reid* was an action brought by private parties and not pursuant to the government's explicit statutory enforcement authority and thus has no relevance here. Moreover, it is clear that claims "based on deceptive practices" are distinct from contract claims. *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 345 (N.Y. 1999).

Here, the facts as alleged in the Complaint establish Defendants' deceptive practices and satisfy the Bureau's and NYAG's burden at this stage. *See Galper*, 802 F.3d at 443. Defendants made promises on their website and statements in direct communications with consumers as to the timing of receiving funds. These representations were false and misleading. *See* Compl. ¶¶ 49–51, 86. Such claims both are presumed to be material, *see supra* p. 25–26, and are material in fact. They directly address the very reason that consumers would consider entering an agreement with Defendants—to get their payments as soon as possible. *See* Compl. ¶¶ 87–88; *Med. Billers Network*, 543 F. Supp. 2d at 304 (a claim is "material if it involves information important to consumers and, hence, is likely to affect their choice of, or conduct regarding a product" (internal quotation marks, citations, and alterations omitted)). In short, whether or not Defendants' conduct breached their contracts, their misrepresentations about when they would make payments were violations of the CFPA and New York law.

---

[10] Furthermore, a breach of contract argument does not make sense because the agreements themselves do not speak to timing for payment. Defendants' argument that the Complaint must identify which of the 27 contracts were breached is thus similarly nonsensical.

**D.      Count II of the Complaint states a claim under the CFPA for abusive acts and practices.**

Defendants argue that Count II of the Complaint, which alleges Defendants' abusive acts or practices, fails because the transactions were assignments or true sales. *See* Mem. at 36–37. But, as discussed *supra*, the assignment clauses are invalid and the transactions are not true sales.

Defendants also argue that RD's contracts provided a notice to consumers to seek professional advice and thus "disclosed to consumers the precise issue." Mem. at 37. Defendants do not explain why such a notice would be relevant to the claim of abusive acts or practices, but appear to contend that because their contracts directed consumers to seek professional advice, Defendants could not have materially interfered with consumers' ability to understand the transactions or taken unreasonable advantage of consumers. That argument is untenable. Well-established law makes clear that Defendants may not misrepresent the nature of their transactions and then sanitize or eliminate the misrepresentation with a contrary notice, let alone with a directive that consumers should consult another source to determine if Defendants' explicit descriptions of the transactions are accurate. Lastly, Defendants reliance on *Dollar Phone Corp. v. Dun & Bradstreet Corp.*, 936 F. Supp. 2d 209, 214 (E.D.N.Y. 2013), *see* Mem. at 37, is inapposite here. *Dollar Phone* did not involve an alleged misrepresentation.

In sum, the Complaint alleges that Defendants, by misrepresenting that RD's contracts are for valid and enforceable assignments, violated the CFPA by materially interfering with consumers' ability to understand the terms of the transactions and taking unreasonable advantage of consumers. *See* Compl. ¶¶ 72, 74. The CFPA specifies the elements of such a claim, and Defendants' conduct in misrepresenting the nature of the transaction satisfies each of those elements. Indeed, Defendants do not even argue to the contrary.

**E.      Counts VI and VII of the Complaint properly allege claims for violations of New York usury law.**

28

Defendants ask the Court to dismiss Counts VI and VII, alleging that they have violated New York's civil and criminal usury laws, on the grounds that the transactions at issue are sales, not loans. *See* Mem. at 26–35, 37. But Defendants mischaracterize the factors that determine whether a transaction is a sale or loan for purposes of New York law. Although Defendants call their agreements "assignments and sales," under New York law, an agreement is a loan, if at the time the agreement is signed, it is virtually certain that there will be sufficient funds to repay the amount advanced. *See* Compl. ¶¶ 56–57. Simply calling an agreement an "assignment and sale" is not dispositive. The Court should reject Defendants' contention that the NYAG has failed to state a claim for civil and criminal usury.

The critical factor in determining whether a transaction is a sale or loan under New York law is the degree of risk. Where the buyer/lender bears a significant risk to the principal, then the transaction is invariably deemed a sale. On the other hand, where, as here, there is little or insignificant risk to the principal, the transaction is deemed a loan. As held in *Rubenstein v. Small,* 273 A.D. 102, 104 (N.Y. App. Div. 1947), "[f]or a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." In *Clever Ideas, Inc. v. 999 Restaurant Corp.*, No. 0602302/2006, 2007 N.Y. Misc. LEXIS 9248, at *5–6 (N.Y. Sup. Ct. Oct. 26, 2007), the court held that a restaurant's so-called "advance meal sales" transactions were actually loans subject to New York's usury laws because the personal guarantees and security interest in the restaurant's property meant "there are no reasonable means of non-payment, and accordingly no risk of non-payment. Consequently, the usury defense is available to the defendants and will not be dismissed." The court explicitly disavowed *Transmedia Restaurant Co. v. 33 E. 61st Street Restaurant Corp.,* 184 Misc. 2d 706 (N.Y. Sup. Ct. 2000), which Defendants relied upon, *see*

Mem. at 28, holding that "the *Transmedia* case is easily distinguishable from this case [*Clever Ideas*] due to the absence of a personal guarantee and security interest, the presence of which ensure payment and reduce the necessary risk." *Clever Ideas*, 2007 N.Y. Misc. LEXIS 9248, at *5–6.

In this case, there is "no reasonable means of non-payment, and accordingly no risk of non-payment." The payments to the 9/11 first responders and the former NFL players were promises from the United States federal government and the NFL, respectively, both of which can be counted on with absolute certainty to have the wherewithal to pay their obligations. The agreements also provided for a filing of a Financing Statement and Amendments under the Uniform Commercial Code in the event that a judicial, administrative or other proceeding characterized the transaction as a loan. [11]  Thus, Defendants ensured they would get paid if the transactions were, in fact, loans. Nevertheless, Defendants argue that their agreements are sales and assignments because their agreements (i) provide that they have "no recourse" against the seller, *see* Mem. at 27–29; (ii) give them the right to demand direct payment from the holder of the funds, *see id.* at 29; (iii) do not give consumers the right to repurchase, *see id.* at 30; and (iv) by their plain language reflect the parties' intent to enter into a sales agreement, *see id.* at 30–31.

But the language of Defendants' agreements, and the four factors cited, are not sufficient to make these transactions sales. As noted in *In re Dryden Advisory Group, LLC*, 534 B.R. 612 (Bankr. M.D. Pa. 2015), a case relied on heavily by Defendants, while courts may consider a "list of factors" in assessing whether a transaction is a loan or sale, the primary factor is "the allocation of risk." *Id.* at 620. Although transactions in *Dryden* were sales, the court made clear

---

[11]  The NYAG's limited inquiry to date shows that Defendants made UCC filings to secure the Zadroga agreements.

that such a determination cannot be made simply by reviewing the four corners of the underlying agreement. It noted that the "labels" used in an agreement "offer little of value in determining the true character of the agreement." *Id.* at 622. The court stated:

> Analysis of the various factors and their impact on the nature of the parties' agreement is fact-intensive, and a determination must be made based on the totality of the circumstances. The court must examine "the parties' practices, objectives, business activities and relationships and determine whether the transaction was a sale or a secured loan only after analysis of the evidence as to the true nature of the transaction.

*Id.* at 621 (internal alterations and citation omitted).

In determining the usurious character of an agreement, New York courts have repeatedly looked beyond form to consider the underlying essence of the transaction. For example, in *Echeverria v. Estate of Lindner*, 7 Misc. 3d 1019(A), at *5–8 (N.Y. Sup. Ct. 2005), the court disregarded both the formality of a purported assignment of litigation proceeds and contractual language that allowed recovery only from the proceeds of litigation. Finding "a very low probability that judgment would not be in favor of the plaintiff[,]" the court concluded that the funding agreement constituted a loan subject to the defense of usury. *Id*. at *8.

In *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538, 543–46 (3d Cir. 1979), the court engaged in a similar analysis, finding that the transactions at issue were loans and not sales despite language in the agreement referring to "sales" and "purchases." The court found that such "nomenclature" was not controlling and that the transactions constituted loans because the transactions presented "none of the risks present in a true sale" and because the conduct of the parties indicated that the transactions were in fact loans. *Id.* at 543, 546. It noted:

> Neither the form of a contract nor the name given it by the parties controls its interpretation. In determining the real character of a contract courts will always look to its purpose, rather than to the name given it by the parties. The proper construction of a contract is not dependent upon any name given it by the parties,

31

or upon any one provision, but upon the entire body of the contract and its legal
effect as a whole.

*Id.* at 543 (internal quotation marks, alterations, and citations omitted); *accord Blue Wolf Capital*

*Fund II, L.P. v. Am. Stevedoring, Inc.*, No. 651560/2010, 2011 WL 11074849, at *5 (N.Y. Sup.

Ct. Aug. 26, 2011) (finding that the court is required to look at the nature of the transactions,

rather than the terms of the agreement to determine if there was usurious interest charged); *Agile*

*Opportunity Fund, LLC v. Vectormax Corp.*, No. 015235/2009, 2011 N.Y. Misc. LEXIS 6617, at

*10–11 (N.Y. Sup. Ct. Dec. 29, 2011) (permitting amendment of the defendant's Verified

Answer to include affirmative defense of usury where indirect payments, not denominated

interest, potentially violated New York's usury laws); *Tuition Plan, Inc. v. Zicari*, 70 Misc. 2d

918, 919–21, 923 (N.Y. Civ. Ct. 1972) (finding what was categorized as a time-sale agreement in

reality a disguised loan at usurious interest rates); *Vee Bee Serv. Co. v. Household Fin. Corp.,* 51

N.Y.S.2d 590 (N.Y. Sup. Ct. 1944), *aff'd*, 269 A.D. 772 (N.Y. App. Div. 1945); *see also* 44B

Am. Jur. 2d Interest and Usury §§ 128, 129.

      Here, as alleged in the Complaint, Defendants' transactions with consumers functioned as

extensions of credit or loans at usurious interest rates for purposes of New York law. *See* Compl.

¶¶ 6, 29, 32, 55–60.[12] Defendants did not assume any risk at the time the agreements were

entered into because it was virtually certain that the federal government would have more than

sufficient funds to pay the full amounts awarded by the Zadroga Fund, let alone the far smaller

amounts advanced by Defendants, and would honor its commitment to 9/11 first responders. *See*

---

[12] While not before the Court at this time, it should be noted that a deposition of a former
NFL player who entered into a contract with Defendants was taken on May 17, 2017 in which
the deponent testified that Roni Dersovitz repeatedly told him that the agreement he entered into
was a loan, notwithstanding the language in the document. At the appropriate time, the Court
should consider this testimony, and other evidence of Defendants' conduct, before making a
determination as to whether the agreements are sales or loans.

Compl. ¶ 57. Similarly, the NFL had more than sufficient funds to pay amounts under the NFL

settlement. This lack of risk is the hallmark of a loan under New York law, and combined with

the exorbitant repayment terms for funds advanced, makes out a claim for usury under New York

law. As such, the Court should reject Defendants' contention that New York's usury laws do not

apply because the agreements here are sales and not loans.

####    F.    Count VIII of the Complaint properly alleges that if the transactions are sales, they are prohibited by N.Y. General Obligations Law § 13-101.

Defendants argue that Count VIII should be dismissed because their agreements merely

provide for the transfer of proceeds, not claims, and therefore do not violate the prohibitions in

General Obligations Law § 13-101(1) against selling or assigning claims to recover for personal

injuries. But Defendants repeatedly contend that they bear risk in the transactions based on the

language in their contracts, including a non-recourse clause, making their transactions true sales

rather than loans. *See, e.g.*, Mem. at 19 (under the Agreements, consumers "incur *no repayment*

*obligation whatsoever*"). If there is true risk here, then the Complaint adequately alleges that the

agreements constitute an unlawful assignment of a claim.

Defendants essentially argue that their agreements give them legal title to a portion of the

consumers' claims. But courts have not recognized the validity of legal title on a claim for

personal injuries as an exception to GOL § 13-101(1)'s prohibition against assignments of

personal injury claims—courts have only recognized the exception of an equitable lien. *See In re*

*Minor*, 482 B.R. 80, 84 (Bankr. W.D.N.Y. 2012) (citing *Williams v. Ingersoll*, 89 N.Y. 508, 519

(1882) (under New York law, such a contract will take effect as an equitable assignment)); *In re*

*Minor*, 443 B.R. 282, 288 (Bankr. W.D.N.Y. 2011) (party opposing the Trustees' motion to

settle claim could acquire no legal interest in any cause of action belonging to the debtor in

bankruptcy, as under New York law, the assigning documents establish only an equitable lien).

Defendants' agreements also violate § 13-101(3) by contravening the public policy of New York. Despite Defendants silence regarding GOL § 13-101(3), Defendants' Zadroga agreements, which attempt to profit from public funds used to compensate victims of a national tragedy, violate public policy. Courts applying New York law support this conclusion, having held several types of assignments void as against public policy. *See, e.g.*, *McCormack v. Bloomfield*, 399 F. Supp. 488 (S.D.N.Y. 1974) (assignment of personal injury claim where the purpose of the assignment was to avoid the binding effect of an arbitration clause); *Dana v. Dana*, 48 Misc. 2d 717 (N.Y. Sup. Ct. 1965) (assignment of personal injury claims by patient to physician who treated patient at a free public hospital); *Higgins v. Higgins*, 119 N.Y.S.2d 103 (N.Y. Sup Ct. 1952) (assignment in a pre-nuptial agreement by wife to husband of any alimony received in the event of a divorce in excess of $25 per week); *Bowery Nat'l Bank of N.Y. v. Wilson*, 4 Daly 556 (1873) (assignment by sheriff of fees yet to be earned in the exercise of his official duties); *Billings v. O'Brien*, 1873 N.Y. Misc. LEXIS 97 (1873) (assignment by public officer of salary yet to be earned). *Bowery* and *Billings* are particularly instructive. Those decisions were premised on the fact that payment of public funds for a public purpose should go to the anticipated recipient. Here, public funds were designated to compensate victims of a terror attack, not to benefit a legal funding company. Accordingly, the Court should deny Defendants' motion to dismiss Count VIII.

**G.    The Complaint puts Defendants on notice of the claims against them.**

Defendants argue that the Complaint should be dismissed because the Government does not differentiate between the three RD Defendants, and therefore does not provide any factual basis to distinguish their conduct. *See* Mem. at 37–38. Yet, as alleged in the Complaint, each of the Defendants engaged in the illegal conduct at issue. Where, as here, entities are intertwined, acted jointly, and each engaged in the alleged conduct, there is no merit to this claim.

The standard is clear: "Dismissal under Rule 8 . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Barnet v. Drawbridge Special Opportunity Fund LP*, No. 14-cv-1376 (PKC), 2014 WL 4393320, at *10 (S.D.N.Y. Sept. 5, 2014) (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995) (internal brackets omitted); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (asserting that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants"). "The test of Rule 8 pleading sufficiency is simply whether Defendants have received adequate notice of the claims." *See Vantone Grp. LLC v. Yangpu NGT Indus. Co., Ltd.*, No. 13-cv-7639 (LTS), 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015); *Wydner*, 360 F.3d at 79.

The Complaint in this case is straightforward and gives ample notice to the RD Defendants of the basis for the claims. *See Barnet*, 2014 WL 4393320, at *11; *Vantone*, 2015 WL 4040882, at *4; *Wydner*, 360 F.3d at 79–80; *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144 (S.D.N.Y. 2014) (finding that the complaint provided fair notice to defendants despite argument that defendants were lumped together). The three RD Defendants are referred to collectively because each engaged in the wrongdoing alleged in the Complaint. *See Zond, Inc. v. Fujitsu Semiconductor Ltd.,* 990 F. Supp. 2d 50, 53–54 (D. Mass. 2014) (denying motion to dismiss on the basis of group pleading because "it can be reasonably inferred that each and every allegation is made against each individual defendant").

While RD Legal Funding Partners, LP and RD Legal Finance, LLC are on the face of the agreements, RD Legal Funding, LLC is also intimately involved in agreements where both RD Legal Funding Partners, LP and RD Legal Finance, LLC are the primary parties. *See* ECF No. 30-2 at 60, 117, 170; ECF No. 30-3 at 16; ECF No. 30-4 at 21, 103 (communications with RD

Legal Finance, LLC regarding agreements with RD Legal Funding Partners, LP and RD Legal

Finance, LLC). In fact, the General Counsel listed on 19 of 20 Zadroga Fund agreements as a

required recipient of notice has an RD Legal Funding, LLC email address. *See* ECF No. 30-2 at

4, 23, 44, 65, 83, 105, 124, 141, 159, 177; ECF No. 30-3 at 5, 24, 43, 61, 79; ECF No. 30-4 at 5,

28, 48, 67; ECF No. 30-4 at 103 (indicating that emails ending in "@legalfunding.com" are

connected to RD Legal Funding, LLC). In addition, all three RD Defendants, as listed in the

exhibits to the Affidavit of Roni Dersovitz,[13] have the same address: 45 Legion Drive, Cresskill,

NJ 07626.[14] And the ABA Number for wiring money, as listed on all of the agreements, is the

same regardless of the named RD Defendant recipient.

Furthermore, Defendants themselves group the three RD Defendants together as the "RD

Entities" and acknowledge that they are "affiliated finance companies." Mem. at 1. Roni

Dersovitz, in his Affidavit, refers to all of the RD Defendants as the "RD entities" and

establishes that he directs all of them. *See* ECF No. 30-1 ¶ 2.

Accordingly, each of the RD Defendants is on notice of the claims against them.

### H.   The Complaint adequately alleges that transactions occurred in New York.

In a final footnote, Defendants summarily challenge whether the Complaint alleges that

the NYAG has jurisdiction over the transactions at issue. S*ee* Mem. at 38 n.14. The Complaint

---

[13] Defendants improperly introduced facts in the Affidavit of Roni Dersovitz, a document that is neither integral nor otherwise incorporated in the Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). Facts from such extrinsic documents "may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *See id.*; *see also Carter v. Stanton*, 405 U.S. 669, 671 (1972) (per curiam). Even if the Court were to consider the Affidavit at this stage, it demonstrates that the Defendants were put on notice.

[14] The addresses for RD Legal Funding Partners, LP and RD Legal Finance, LLC, as written in the agreements, specify that they are located on the Second Floor.

amply establishes NYAG's jurisdiction—as Defendants concede, the Complaint "repeatedly alleges" that illegal activity occurred in New York. *Id.* (citing paragraphs from the Complaint). Defendants argue that the Complaint should be dismissed because (1) "the RD Entities' principal place of business is in New Jersey"; and (2) the Complaint does not make allegations regarding the residences of the customers. *Id.* Yet, as the very cases that Defendants cite establish, these arguments are non-sequiturs—the relevant consideration for General Business Law § 349 is whether there are New York transactions that are deceptive or that occur as a result of out-of-state deceptive conduct. *See New York v. Feldman*, 210 F. Supp. 2d 294, 303 (S.D.N.Y. 2002); *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (N.Y. 2002); *People v. Telehublink*, 301 A.D.2d 1006, 1009–10 (N.Y. App. Div. 2003) (NYAG can act on behalf of non-New York customers when an out-of-state corporation merely used a New York agent with a New York address to send and receive mail relating to its fraudulent sales activity); *People v. H&R Block, Inc.*, 16 Misc. 3d 1124(A), at *8 (N.Y. Sup. Ct. 2007), *aff'd in relevant part*, 58 A.D.3d 415, 417 (N.Y. App. Div. 2009). Not only does the NYAG plead illegal New York activity in the Complaint, but the agreements themselves, attached to the Affidavit of Roni Dersovitz, and incorporated by reference into the Complaint, further support that the NYAG has jurisdiction because they show that parties to the agreements reside in New York, agreements were executed in New York, portions of the transactions occurred in New York, and the agreements contain New York choice of law provisions. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) ("In adjudicating a motion to dismiss, a court may consider . . . any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."); *McNair v. Heyman*, Nos. 15-cv-4532 (LAP), 15-cv-4569 (LAP), 2016 WL 6820736, at *2 (S.D.N.Y. Sept. 19, 2016) (same).

I.       **Defendants' request to "dismiss" claims regarding other transactions is misplaced and should be denied.**

As described above, Plaintiffs have adequately pleaded all of the counts in the Complaint. Defendants have been put on notice as to the conduct alleged to violate the law. Defendants nevertheless seek to have this Court declare, at this stage, that certain transactions they entered into are *not* within the ambit of the Complaint. *See* Mem. at 39–40. This invitation is misplaced.

Defendants do not, and could not, dispute that a complaint in a government enforcement action may properly plead illegal conduct and provide examples of the defendants engaging in it, without specifying every instance in which they did so. *See, e.g.*, *People v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 147 (S.D.N.Y. 1995) (recognizing "New York's 'profound interest' in protecting possible future victims as well as the specified complainants," and asserting that "[t]he Attorney General's use of a small group of 'aggrieved persons' as exemplars for a larger class is neither new nor objectionable"). Nor can they dispute that relief may be appropriate for all injured consumers, including those injured in transactions not specifically described in the Complaint. *See, e.g.*, *Freecom Commc'ns*, 401 F.3d at 1204 n.7 (10th Cir. 2005) (stating that the FTC action "was not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers"); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1216 (8th Cir. 1991) (stating that the action is unlike private fraud action because it is "a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors"). If, as Defendants suggest, certain RD transactions, such as those concerning proceeds from the litigation in *Peterson v. Islamic Republic of Iran*, Nos. 01-cv-2094 (RCL), 01-cv-2684 (RCL) (D.D.C.), did not involve the illegal conduct alleged in the Complaint, then Defendants may not

face liability for those transactions. But to request that the Court conclude at this stage that transactions not specifically described in the Complaint did not involve such conduct is without basis. In short, determination of which of Defendants' transactions involved the illegal conduct alleged should await the development of the factual record during litigation.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motion.


Dated: June 12, 2017                                Respectfully submitted,


ANTHONY ALEXIS                                   ERIC T. SCHNEIDERMAN
*Enforcement Director*                              *Attorney General of the State of New York*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*                       JANE M. AZIA (NY 1539600)
JOHN C. WELLS                                    *Bureau Chief, Consumer Frauds and*
*Assistant Litigation Deputy*                        *Protection Bureau*
                                                 MELVIN L. GOLDBERG (NY 1828284)
*/s/Benjamin Z. Konop*                             *Assistant Attorney General*
BENJAMIN Z. KONOP (OH 0073458)                   120 Broadway
HAI BINH T. NGUYEN (CA 313503)                   New York, N.Y. 10271
*Enforcement Attorneys*                             Telephone (Azia): 212-416-8727
Consumer Financial Protection Bureau             Telephone (Goldberg): 212-416-8296
1700 G Street, NW                                Facsimile: 212-416-6003
Washington, D.C. 20552                           E-mail: Jane.Azia@ag.ny.gov
Telephone (Konop): 202-435-7261                  E-mail: Melvin.Goldberg@ag.ny.gov
Telephone (Nguyen): 202-435-7251                 Attorneys for Plaintiff
Facsimile: 202-435-7722                          State of New York
E-mail: Benjamin.konop@cfpb.gov
E-mail: Haibinh.nguyen@cfpb.gov
Attorneys for Plaintiff
Consumer Financial Protection Bureau

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 12, 2017, I filed the foregoing document with the Court's ECF

system, which will send notification of such filing to counsel for Defendants.

<i>/s/ Benjamin Z. Konop</i>
BENJAMIN Z. KONOP (OH 0073458)
1700 G Street, NW
Washington, D.C. 20552
Telephone: 202-435-7261
Facsimile: 202-435-7722
E-mail: Benjamin.konop@cfpb.gov

Attorney for Plaintiff
Consumer Financial Protection Bureau