

Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway | New York, NY 10036-4039 | tel 212.858.1000 | fax 212.858.1500

Carolina A. Fornos
tel: 212.858.1558
carolina.fornos@pillsburylaw.com

August 1, 2017

**VIA ECF**

Hon. Loretta A. Preska
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re**:**   *Consumer Financial Protection Bureau v. RD Legal Funding LLC, et al.*, 17 Civ. 890 (LAP)

Dear Judge Preska:

We respectfully submit this letter on behalf of the American Legal Finance Association ("ALFA") to request leave to file an *Amicus Curiae* Memorandum in Opposition to Defendant's Motion to Dismiss in the above-referenced action. The proposed *amicus curiae* memorandum will review industry best practices and discuss the impact this case could have on the legal funding industry and the consumers it serves.

**Background**

ALFA is the trade association that represents the nation's leading consumer legal funding companies.[1] Similar to RD Legal, ALFA member companies (RD Legal is not a member company), offer a financial product to consumers with pending personal injury or other tort-based claims —called pre-settlement "legal funding" or "litigation funding"—that provides consumers with funds, based upon the company's

---

[1] ALFA member companies include: LH Funding; PS Finance; Magnolia Legal Funding; Necessity Funding; US Claims; Plaintiff Support; Prospect Funding Partners; Lawyers Funding Group, LLC; Legal Assistance Funding; Argonaut Consulting; Pegasus Legal Funding, LLC; Casefunding; Thrivest Funding, LLC; Covered Bridge Capital; Grape Leaf Capital; Law Street Capital; Multi Funding USA; Mighty; Pravati Capital; Plaintiff Legal Funding; Fast Trak Legal Funding; Broadway Funding Group; Universal Funds; Towncenter Partners LLC; Barrister Capital; DRB Capital; PreSettlement Solutions; GreenLink Solutions; Cherokee Funding; Resolution Funding; Capital Financing; Global Financial; and LawCash.

August 1, 2017
Page 2

assessment of the likelihood of success of the claim, allowing the consumers to wait for a fair resolution of their claims, instead of feeling pressured financially to accept a resolution of their claim that may not be as advantageous.

Importantly, and unlike the transactions at issue in the instant case, pre-settlement legal funding transactions are entered into *before* a claim is resolved. If a consumer ultimately does not recover proceeds from the claim, ALFA members do not recover the funds that were advanced to that consumer. In other words, ALFA members are never assured of a return upon the money provided to the consumer, and take the risk that they may not recover those funds.

ALFA members dominate the legal funding market, and collectively possess 300 years of experience in the industry. Since ALFA's inception in 2004, its members have helped tens of thousands of consumers relieve financial pressures while they wait for resolution – including protecting against foreclosure, ensuring utility or medical bills are paid, and putting food on the table throughout the often long pendency of their claims. To best serve consumers and maintain the viability of the industry, ALFA has established best practices for the legal funding industry and required the use of model contracts designed to comply with traditional consumer protection financial regulations. These best practices and the use of the model contract are laid out in the ALFA Code of Conduct and agreed to by each of the member companies.[2] And, should an ALFA member not comply with the Code of Conduct, then ALFA has taken steps to address the problem with the member and expelled the member, if necessary.

ALFA's experience in this industry provides valuable insight into the standards and practices of the legal funding industry as a whole and can help the court better evaluate the facts of this case.

**The Proposed Amicus Curie**

As described herein, ALFA's unique position representing the nation's leading legal funding companies makes it well-situated to provide the Court with expertise not otherwise represented by the parties in this case. In the proposed *Amicus Curiae* Memorandum, ALFA will explain in more detail (1) the "non-recourse" nature of legal funding transactions, generally and (2) how the ALFA Code of Conduct and

---

[2] The ALFA Code of Conduct is publicly available on ALFA's website. *See* THE ALFA CODE OF CONDUCT, https://americanlegalfin.com/what-is-alfa/alfa-code-of-conduct (last visited July 14, 2017) (requiring members, for example, to adhere to agreements negotiated among ALFA and regulatory bodies).

August 1, 2017
Page 3

model contract are designed to protect consumers against the harms alleged in the instant case.

"District courts have broad discretion to permit or deny the appearance of amici curiae in a given case." *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992); *see also Zell/Merrill Lynch Real Estate Opportunity Partners Ltd. P'ship III v. Rockefeller Ctr. Props., Inc.*, No. 96 CIV. 1445, 1996 WL 120672, at *4 (S.D.N.Y. Mar. 19, 1996) ("[T]here is no governing standard for determining when a court in this district may entertain an *amicus* filing."). This Court has noted that "[t]he usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." *United States v. El-Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994) (citing *United States v. Gotti*, 755 F. Supp. 1157, 1158–59 (E.D.N.Y. 1991)).[3]

**Conclusion**

Accordingly, ALFA requests permission to file an *Amicus Curiae* Brief.

Respectfully submitted,

/s/ Carolina A. Fornos

Carolina A. Fornos

---

[3] Prior to his tenure on the Supreme Court, now-Justice Alito also commented on the purpose of *amici curiae*, explaining that they may be "entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group." *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (internal citation omitted).