**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and THE PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL FOR THE STATE OF NEW YORK, | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-00890-LAP |
| RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ, | |
| Defendants. | |

**MEMORANDUM OF LAW
OF *AMICUS CURIAE* AMERICAN LEGAL FINANCE ASSOCIATION
IN SUPPORT OF PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU**

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos
1540 Broadway
New York, NY 10036
(212) 858-1000

Mercedes K. Tunstall
1200 Seventeenth Street NW
Washington, DC  20036
(202) 663-8118

***Counsel for the American Legal Finance
Association, Inc.***

## **Table of Contents**

**Page**

PRELIMINARY STATEMENT AND INTEREST OF *AMICUS CURIAE* ...................................1

ARGUMENT ...............................................................................................................................4

    I.   Pre-Settlement Legal Funding Transactions Are Non-Recourse and Are
        Not Loans Because Repayment is Contingent, Not Absolute. ............................................4

    II.  ALFA's Model Contract and Code of Conduct Are Designed to Protect
        Consumers Against the Harms Alleged in the Instant Case. ...............................................8

        a.  ALFA's model contract promotes understanding with familiar
            language and a consumer-friendly format. ...............................................................9

        b.  ALFA members commit to the highest level of ethical and professional
            conduct by opting in to the ALFA Code of Conduct....................................................10

CONCLUSION...........................................................................................................................11

**Table of Authorities**

**Page(s)**

Cases

*Clever Ideas, Inc. v. 999 Restaurant Corp.*,
  No. 0602302/2006, 2007 N.Y. Misc. LEXIS 9248 (N.Y. Sup. Oct. 26, 2007) ...............7, 8, 9

*Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*,
  16 Civ. 5948 (LLS), 2017 WL 1944125 (S.D.N.Y. May 9, 2017) ..................................4, 5, 8

*In re Dryden Advisory Grp., LLC*,
  534 B.R. 612 (Bankr. M.D. Pa. 2015) ...........................................................................7

*Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*,
  950 N.Y.S.2d 723 (N.Y. Sup. Ct. 2012) .........................................................................4

*Lynx Strategies, LLC v. Ferreira*,
  957 N.Y.S.2d 636 (N.Y. Sup. Ct. 2010) ......................................................................4, 7

*O'Farrell v. Martin*,
  292 N.Y.S. 581 (City Ct. 1936) .....................................................................................5

*Platinum Rapid Funding Grp. Ltd. v. VIP Limousine Serves., Inc.*,
  No. 604163-15, 2016 WL 6603853 (N.Y Sup. Ct. Oct. 27, 2016) ...........................4

*Prof'l Merch. Advance Capital, LLC v. Your Trading Room, LLC*,
  No. 174692012, 2012 WL 12284924 (N.Y. Sup. Ct. Nov. 28, 2012) ......................4

*Rubenstein v. Small*,
  75 N.Y.S.2d 483 (N.Y. Sup. Ct. 1947) ...........................................................................4

*Singer Asset Finance Co., L.L.C. v. Bachus*,
  741 N.Y.S.2d 618 (N.Y. App. Div. 2002) .......................................................................4

*Transmedia Rest. Co., Inc. v. 33 E. 61st St. Rest. Corp.*,
  710 N.Y.S.2d 756 (N.Y. Sup. Ct. 2000) ......................................................................7, 8

Statutes and Codes

United States Code
  Title 15, Sections 1601–1667f .....................................................................................6

Rules and Regulations

Code of Federal Regulations
      Title 12, Section 1026 app. H-2 ...............................................................................10
      Title 12, Section 1026.1(b) ........................................................................................6
      Title 12, Section 1026.2(a)(14) ............................................................................6, 10

Other Authorities

American Legal Finance Association. *The Alfa Code of Conduct,* at
      https://americanlegalfin.com/what-is-alfa/alfa-code-of-conduct (last visited
      August 10, 2017)......................................................................................................3

**PRELIMINARY STATEMENT AND INTEREST OF *AMICUS CURIAE***

The American Legal Finance Association, Inc. ("ALFA") respectfully submits this memorandum of law as *amicus curiae* in support of The Consumer Financial Protection Bureau ("CFPB") to address the "non-recourse" nature of legal funding transactions (which occur pre-settlement) as contrasted to the transactions at issue in the instant case (which occur post-settlement). Further, ALFA explains how the ALFA Code of Conduct and model contract protect consumers against the harms that have been alleged in this case.

The CFPB and the New York State Attorney General (collectively, "Plaintiffs") brought the instant action against RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "Defendants") alleging, among other things, violations of federal and state laws prohibiting unfair, deceptive, and abusive acts and practices. The transactions at issue in the instant action involve a lump sum payment to a consumer in exchange for the consumer's interest in proceeds the consumer expects to receive from an *already existing* legal settlement or judgment. Among other things, Plaintiffs allege Defendants have (1) mischaracterized these transactions as sales, as opposed to loans, therefore materially interfering with consumers' ability to understand the terms and costs of the transactions, and (2) taken advantage of the confusion consumers experience due to the mischaracterization of these transactions in a manner that prevents these consumers from being able to protect their own interests.

ALFA, as *amicus curiae*, is the trade association that represents the country's leading consumer legal funding companies, which does not include Defendants.[1]   ALFA members

---

[1] ALFA member companies include: LH Funding; PS Finance; Magnolia Legal Funding; Necessity Funding; US Claims; Plaintiff Support; Prospect Funding Partners; Lawyers

represent a major cross section of the legal funding market, and collectively possess more than 300 years of experience in the industry.  Since ALFA's inception in 2004, its members have helped tens of thousands of consumers relieve financial pressures while they wait for resolution of claims —including by protecting against foreclosure, ensuring utility or medical bills are paid, and putting food on the table through the often long pendency of claims.  The funds provided by ALFA members are in exchange for an interest in a consumer's potential legal settlement or judgment that may never resolve in favor of the consumer.  Repayment by the consumer to the ALFA member is contingent, not absolute, which is in contrast to the transactions at issue in the instant case.

ALFA member companies offer a vital financial product to consumers with pending personal injury or other tort-based claims; by the terms of the contract, consumers use the funds for their immediate, personal economic needs.  These products—called pre-settlement "legal funding" or "litigation funding"—provide consumers with funds based on a company's assessment of the likelihood their claims will succeed.  Consumers are then able to wait for a fair resolution of their claims, instead of the alternative of accepting a settlement offer or other resolution that may be less advantageous than warranted, simply based on financial pressures.

Importantly, and unlike the transactions at issue in the instant case, pre-settlement legal funding transactions are entered into *before* a claim is resolved.  If a consumer ultimately does not recover proceeds from the claim, ALFA members do not recover the funds they advanced to

---

Funding Group, LLC; Legal Assistance Funding; Argonaut Consulting; Pegasus Legal Funding, LLC; Casefunding; Thrivest Funding, LLC; Covered Bridge Capital; Grape Leaf Capital; Law Street Capital; Multi Funding USA; Mighty; Pravati Capital; Plaintiff Legal Funding; Fast Trak Legal Funding; Broadway Funding Group; Universal Funds; Towncenter Partners LLC; LawCash; Barrister Capital; DRB Capital; PreSettlement Solutions; GreenLink Solutions; Cherokee Funding; Resolution Funding; Capital Financing; and Global Financial.

that consumer.  In other words, ALFA members are not assured of a return upon the money provided to the consumer, and take the risk that they may not recover those funds.

ALFA remains dedicated to ensuring consumers fully understand the terms and nature of these transactions.  To best serve consumers and maintain the viability of the industry, ALFA has established best practices for the legal funding industry and developed industry model contracts that it designed using a familiar, consumer-friendly format.  These best practices and the use of the model contracts are laid out in the ALFA Code of Conduct, which is agreed to by each ALFA member company.[2]  Should an ALFA member not comply with the Code of Conduct, then ALFA invokes a formal process to address the problem with the member and, if the member does not bring its practices into line, ALFA will even expel the member (and has done so in the past), if necessary.

*Amicus curiae* believes it is important to emphasize the differences between pre-settlement legal funding and the transactions at issue in the instant case, due to the possibility that a holding in this case could impact the legal funding industry as a whole. ALFA's extensive experience in this industry provides valuable insight into the standards and practices of the legal funding industry as a whole, and would like the opportunity to assist the Court with expertise not otherwise represented by the parties.

---

[2]  The ALFA Code of Conduct is publicly available on ALFA's website. *See* THE ALFA CODE OF CONDUCT, https://americanlegalfin.com/what-is-alfa/alfa-code-of-conduct (last visited August 10, 2017) (requiring members, for example, to adhere to agreements negotiated among ALFA and regulatory bodies).

**ARGUMENT**

This memorandum explains (1) the unique nature of pre-settlement legal funding transactions due to the transactions being "non-recourse," and (2) how ALFA's model contracts and Code of Conduct are designed to protect consumers against many of the harms alleged in the instant case.

I.    **Pre-Settlement Legal Funding Transactions Are Non-Recourse and Are Not Loans Because Repayment is Contingent, Not Absolute.**

Under New York Law, a transaction is not a loan when the right to repayment of the principal sum advanced is contingent on a future occurrence, and therefore it is not repayable absolutely.  *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 16 Civ. 5948 (LLS), 2017 WL 1944125, at *3–5 (S.D.N.Y. May 9, 2017); *see also Singer Asset Finance Co., L.L.C. v. Bachus*, 741 N.Y.S.2d 618 (N.Y. App. Div. 2002); *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 950 N.Y.S.2d 723, at *6 (N.Y. Sup. Ct. 2012) ("The concept of usury applies to loans . . . .  The instant transaction, by contrast, is an ownership interest in proceeds for a claim, contingent on the actual existence of any proceeds. Had respondents been unsuccessful in negotiating a settlement or winning a judgment, petitioner would have no contractual right to payment.").[3]

---

[3]    *See also Platinum Rapid Funding Grp. Ltd. v. VIP Limousine Serves., Inc.*, No. 604163-15, 2016 WL 6603853, at *5 (N.Y. Sup. Ct. Oct. 27, 2016) ("Since the Agreement specifically provides that it . . . does not require unconditional repayment by the Merchant or the Guarantor, it is not a loan."); *Prof'l Merch. Advance Capital, LLC v. Your Trading Room, LLC*, No. 174692012, 2012 WL 12284924, at *5 (N.Y. Sup. Ct. Nov. 28, 2012) ("Unless a principal sum advanced is repayable absolutely, the transaction is not a loan."); *Lynx Strategies, LLC v. Ferreira*, 957 N.Y.S.2d 636, at *2 (N.Y. Sup. Ct. 2010) ("The concept of usury applies to loans . . . . The instant transaction, by contrast, is an ownership interest in proceeds for a claim, contingent on the actual existence of any proceeds. Had respondent been unsuccessful in negotiating a settlement or winning a judgment, petitioner would have no contractual right to payment."); *Rubenstein v. Small*, 75 N.Y.S.2d 483, 485 (N.Y. Sup. Ct. 1947) ("For a true loan it is essential to provide for repayment absolutely and at all events or

The Southern District of New York considered this matter in *Colonial*, where the transaction at issue involved a company selling $898,500 of its future receipts to a buyer in exchange for an upfront advance of $600,000.  *See Colonial*, 2017 WL 1944125, at *1.  There was no certainty that the seller would collect enough receipts to repay the purchaser in full.  This Court held the transaction was not a loan, noting that "[p]ayment depend[ed] upon a crucial contingency: the continued collection of receipts by [the seller] from its customers. . . . [I]f [the seller's] sales decline or cease[,] the receipts purchase amounts might never be paid in full."  *Id*. at *3.  Importantly, the agreements at issue in *Colonial* specifically provided that payment was conditioned upon the seller's *prospective* sale of products and services, and because of this, the transactions were not loans.  *Id*. at *4.

The pre-settlement legal funding transactions offered by ALFA members are not repayable absolutely since payment is contingent on the future success of the consumer's claim.  Just like the buyer of receivables in *Colonial*, an ALFA member's right to repayment is dependent on a crucial future contingency: whether the consumer succeeds on his or her claim.  ALFA members' transactions are offered to consumers *before* the claim is resolved; upon resolution, ALFA members are paid only to the extent the consumer receives proceeds.  In the event the claim fails, the proceeds are substantially less than expected, or an opposing (losing) party refuses to pay required damages, ALFA members are not entitled to payment in full, or

---

that the principal in some way be secured as distinguished from being put in hazard."); *O'Farrell v. Martin*, 292 N.Y.S. 581, 584 (City Ct. 1936) ("Here, the parties provided . . . [the purchaser] should have recourse only to the proceeds of the action. . . . I feel obliged to hold that the so-called 'loan' was in fact an assignment of certain funds supported by consideration in the form of a promise to assign certain other funds on the happening of a named contingency.").

even payment at all.  ALFA members' transactions are not repayable absolutely, and cannot be considered loans under New York law.

ALFA members' pre-settlement legal funding transactions are similarly outside the definition of "credit" and "usury" for purposes of federal and many other states' lending laws. For instance, the Federal Truth in Lending Act ("TILA") and its implementing Regulation Z applies "to each individual that offers or extends credit." 12 C.F.R. § 1026.1(b); *see also* 15 U.S.C. §§ 1601–1667f.  Regulation Z defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment."   12 C.F.R. § 1026.2(a)(14).   However, the regulation's Official Interpretations carve the following out of the definition of "credit":

> Investment plans in which **the party extending capital to the consumer risks the loss of the capital advanced**. This includes, for example, an arrangement with a home purchaser in which the investor pays a portion of the down payment of the periodic mortgage payments in return for an ownership in the property, and shares in any gain or loss of property value.

12 C.F.R. § 1026.2(a)(14) (Supp. I 2017) (emphasis added).  ALFA members risk total loss of the funds advanced in pre-settlement legal funding transactions.  Accordingly, such agreements fall within this exception from the definition of "credit," and are therefore outside the scope of regulation under TILA.

The parties to the instant case have provided this Court with their own analyses of why the instant transactions would or would not be deemed "loans" in New York.  *See* Mem. in Supp. of Mot. to Dismiss ("MTD") at 26–31; Mem. in Opp. of Mot. to Dismiss ("Opp.") at 29–33; Reply in Supp. of  Mot. to Dismiss ("Reply") at 11-12.  Although Plaintiffs and Defendants each note that courts analyze multiple factors when determining whether a transaction is a loan, the parties differ in their assessments of which is the factor that is "critical" or "most important." *See* MTD at 27; Opp. at 29.  Defendants assert that a transaction's "non-recourse" nature is the

6

critical factor that will remove it from the definition of "loan," *see* MTD at 27 (citing *In re Dryden Advisory Grp., LLC*, 534 B.R. 612 (Bankr. M.D. Pa. 2015)), while Plaintiffs instead assert that the critical factor is the degree of risk – if there is no real risk of non-payment, the transaction is a loan, *see* Opp. at 29 (citing *Clever Ideas, Inc. v. 999 Restaurant Corp.*, No. 0602302/2006, 2007 N.Y. Misc. LEXIS 9248 (N.Y. Sup. Oct. 26, 2007)).

Defendants argue that a transaction is not a loan when a buyer of receivables has no recourse against the seller. *See* MTD at 27–29; *see also Dryden*, 534 B.R. at 623 ("Generally, if there is a full right of recourse against the seller, this weighs in favor of the existence of a loan because there is no transfer of risk."); *Lynx Strategies, LLC*, 957 N.Y.S.2d 636, at *1–2; *Transmedia Rest. Co., Inc. v. 33 E. 61st St. Rest. Corp.*, 710 N.Y.S.2d 756, 760 (N.Y. Sup. Ct. 2000) (transaction not a loan where "except in the case of a default or breach of the April Agreement, [the purchaser] bears the risk of not being repaid the advanced funds."). Defendants assert the "essential question" involves asking whether there is a contractual right to repayment from the seller in the event the purchased asset cannot be collected. MTD at 28.

Plaintiffs, on the other hand, assert that a transaction is a loan where "there are no reasonable means of non-payment, and accordingly no risk of nonpayment." Opp. at 29 (citing *Clever Ideas, Inc. v. 999 Restaurant Corp.*¸ No. 0602302/2006, 2007 N.Y. Misc. LEXIS 9248, at *5–6 (N.Y. Sup. Ct. Oct. 26, 2007)). The transaction at issue in *Clever Ideas* involved a purchase of future credit card receipts. A New York Supreme Court deemed this transaction a loan because it was supported by a personal guarantee and a security interest in the restaurant property, and consequently there *was* a reasonable means of non-payment. *Clever Ideas*, 2007 N.Y. Misc. LEXIS 9248, at *5–6; *cf. Colonial*, 2017 WL 1944125, at *12–13 (distinguishing *Clever Ideas* from the *Colonial* transaction—which was not a loan—because "[t]he only source

of payment is deposited receipts from future transactions. [Seller] assumes the risk that there will be no receipts, and therefore no payment.").

In contrast to the transactions at issue in this case, ALFA members, in pre-settlement legal funding transactions, maintain a contractual right to repayment from a consumer *only* in the event that the consumer receives proceeds from the claim in an amount sufficient to cover such repayment. ALFA members' transactions do provide for repayment in the event of fraud or a material breach of the Agreement, but otherwise ALFA members "bear the risk of not being repaid the advanced funds." *See Transmedia*, 710 N.Y.S.2d at 760.

ALFA members bear significant risk of non-payment in pre-settlement legal funding transactions, since at the time the agreements are negotiated, a consumer's claim has not been resolved. As noted *supra*, it is far from certain if there will be enough (or even any) proceeds to fully pay an ALFA member company once the claim reaches resolution. Such an occurrence is part of the business model of the ALFA member companies. This risk is also reflected in the terms of the transactions: ALFA's model contract, for instance, provides for non-payment to the ALFA member when the consumer receives no proceeds from the claim or settles for a much lower amount than anticipated. What is more, unlike the transaction agreement in *Clever Ideas*, the ALFA contract does not provide for personal guarantees or a security interest in property other than the hypothetical proceeds from the claim.

## II. ALFA's Model Contract and Code of Conduct Are Designed to Protect Consumers Against the Harms Alleged in the Instant Case.

In their complaint, Plaintiffs allege Defendants harmed consumers by, among other things, preventing them "from understanding the terms, costs, and conditions of RD's offer of credit." Complaint (ECF No. 1) ¶ 73. Plaintiffs further allege that Defendants failed to disclose

the cost of the transactions in a way that "allows consumers to reasonably compare the cost of RD's product to the cost of similar products."  Complaint (ECF No. 1) ¶ 28.[4]

Even though pre-settlement legal funding transactions are not loans, in the interest of protecting consumers, ALFA emphasizes that its members conform to the spirit of loan disclosure laws such as TILA.  As such, ALFA has developed a model contract that looks and feels like a standard loan agreement with which consumers are familiar, in the interest of promoting their understanding of the terms of the transaction.  Further, ALFA has developed a Code of Conduct that is designed to guide ALFA members so that their relationships with consumers are fair, accurate, and truthful.

   a.  *ALFA's model contract promotes understanding with familiar language and a consumer-friendly format.*

As noted in section I *supra*, ALFA members' pre-settlement legal funding transactions would not be deemed "credit" under TILA and Regulation Z as they fall under the Official Interpretation's exception to the definition for non-recourse arrangements. *See* 12 C.F.R. § 1026.2(a)(14) (Supp. I 2017).   Therefore, Regulation Z's specific formatting and content requirements for disclosing consumer credit terms do not technically apply to these transactions. *See, e.g.*, 12 C.F.R. pt. 1026 app. H-2 (loan model disclosure form).

Nonetheless, ALFA members believe that the Regulation Z "cost of credit" disclosures provide a format for disclosing the costs associated with consumer financial products with which consumers are most familiar.  In an effort to promote clarity and understanding of the terms of

---

[4] "RD therefore materially interferes with consumers' ability to understand terms and costs of RD's offers of credit, takes unreasonable advantage of consumers' lack of understanding of material costs or conditions of RD's offers of credit, and takes unreasonable advantage of consumers' inability to protect their interests in the transactions."  Complaint (ECF No. 1) ¶ 74.

legal funding transactions, ALFA has been instrumental in developing a model contract for its members that conforms closely to Regulation Z's disclosure requirements. ALFA's model contract is drafted for transparency and ease of use by including a Regulation Z-style disclosure page and explaining transaction terms as a series of consumer-friendly questions and answers in standard English.

Additionally, for more than a decade, ALFA has been utilizing a New York-specific model contract developed in response to the New York Attorney General's desire to ensure adequate consumer understanding of legal funding transaction terms. *See* Plaintiff Support Services, Inc., Assurance of Discontinuance, Op. Att'y Gen. (Feb. 17, 2005). This model contract, which ALFA members use in transactions with New York residents, also includes, among other things, (1) familiar TILA and Regulation Z-style disclosures, (2) the opportunity to cancel the transaction without penalty within five business days, and (3) a page for attorneys to confirm that they have explained the terms of the transaction to the consumer. Furthermore, the contracts are available in English and Spanish, ensuring that consumers with multiple language preferences enter into funding agreements with ALFA members only with a full understanding of what the terms mean.[5]

> b. *ALFA members commit to the highest level of ethical and professional conduct by opting in to the ALFA Code of Conduct.*

ALFA member companies demonstrate a commitment to complying with industry best practices by opting in to ALFA's fourteen-point Code of Conduct. *See* ALFA CODE OF CONDUCT, *supra* note 2. As part of this Code of Conduct, ALFA members agree, among other things, not to intentionally advance consumers money in excess of a consumer's needs at the

---

[5] ALFA is in the process of translating the newest version of its general (non-New York) model contract into Spanish.

time of the transaction. ALFA members further agree that they will not intentionally over-fund a consumer in relation to the perceived value of his or her claim.  Practices like these help ensure that legal funding transactions are "right sized" for the consumer, while at the same time present the lowest risk for ALFA members. This serves both a consumer protection function, and helps safeguard the viability of the industry's non-recourse business model, allowing ALFA members to avoid the harms alleged by Plaintiffs.

## CONCLUSION

*Amicus curiae* respectfully requests that the Court take the foregoing into consideration during its evaluation of this Motion to Dismiss, bearing in mind the critical differences between the transactions at issue in the instant case and the pre-settlement legal funding transactions offered by ALFA members.

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:     /s/ Carolina A. Fornos
        Carolina A. Fornos
        1540 Broadway
        New York, New York 10036
        Telephone: (212) 858-1000
        carolina.fornos@pillsburylaw.com

        Mercedes K. Tunstall
        1200 Seventeenth Street NW
        Washington, DC  20036
        Telephone: (202) 663-8118
        mercedes.tunstall@pillsburylaw.com

        *Attorney for American Legal Finance Association, Inc.*

11