# EXHIBIT 4

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE; NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| | The Honorable Anita B. Brody |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | **REPLY MEMORANDUM OF LAW OF RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, AND RONI DERSOVITZ RE: THE ASSIGNMENT OF SETTLEMENT PROCEEDS** |
| Plaintiffs, | |
| v. | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

BROTMAN LAW
ELLEN C. BROTMAN, ESQ.
150 North Radnor Chester Road
 Suite F200
Radnor, Pennsylvania 19087
Telephone:  (610) 977-2412
Facsimile:  (610) 977-0043

BOIES SCHILLER FLEXNER LLP
DAVID K. WILLINGHAM (*pro hac vice*)
 dwillingham@bsfllp.com
MICHAEL D. ROTH (*pro hac vice*)
 mroth@bsfllp.com
JEFFREY M. HAMMER (*pro hac vice*)
 jhammer@bsfllp.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for RD LEGAL FUNDING, LLC;
RD LEGAL FINANCE, LLC; RD LEGAL
FUNDING PARTNERS, LP; and RONI
DERSOVITZ

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ..................................................................................1

II.    THE SETTLEMENT AGREEMENT DOES NOT PROHIBIT THE
       ASSIGNMENT OF SETTLEMENT PROCEEDS ...........................................3

       A.    Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds...............3

       B.    The "Subject Matter of Class Action Complaint" Does Not Include the
             Subject Matter of the Settlement Agreement .............................................5

       C.    Interpreting Section 30.1 to Prohibit the Assignment of Settlement
             Proceeds Is Inconsistent with the Settlement Agreement as a Whole ....................8

III.   REVISED ARTICLE 9 OF THE UCC RENDERS THE ANTI-ASSIGNMENT
       CLAUSE INEFFECTIVE ...................................................................10

       A.    Article 9 of the UCC Applies to "Payment Intangibles" Like the Right to
             Settlement Proceeds Pursuant to the Settlement Agreement ................................10

       B.    Section 9-408(a) of the UCC Makes the Anti-Assignment Clause
             Ineffective ....................................................................................13

       C.    New York's Limited Exception to the UCC's Categorical Prohibition Of
             Anti-Assignment Clauses Does Not Apply .............................................13

             1.    The Income Exclusion in Section 104(a)(2) is Narrow in Scope .............14

             2.    The Settlement Agreement's Affirmative Disavowal of Any
                   Allocation Between Amounts Included or Excluded from Income
                   Precludes the Applicability of Section 9-408(d)(1) ................................16

IV.    CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Agar v. Comm'r*,
290 F.2d 283 (2d Cir. 1961)....................................................................................16

*Allhusen v. Caristo Constr. Corp.*,
303 N.Y. 446 (1952) ...................................................................................1, 4, 20

*Am. Gen. Life Ins. Co. v. Alvarez*,
No. 02-20419-CIV, 2003 WL 26089803 (S.D. Fla. Sept. 11, 2003)......................11

*Au New Haven, LLC v. YKK Corp.*,
210 F. Supp. 3d 549 (S.D.N.Y. 2016)....................................................................4, 5

*Cent. Transp. Int'l, Inc. v. Glob. Advantage Distribution, Inc.*,
No. 2:06-CV-401-FtM-29SPC, 2007 WL 4482271
(M.D. Fla. Dec. 17, 2007).......................................................................................4

*CIR v. Banks*,
543 U.S. 426 (2005).............................................................................................9, 10

*CIR v. Schleier*,
515 U.S. 323 (1995)........................................................................................... 14-16

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995).........................................................................................5

*Coregis Ins. Co. v. Amer. Health Found., Inc.*,
241 F.3d 123 (2d Cir. 2001).....................................................................................5

*Eastman Kodak Co. v. Altek Corp.*,
936 F. Supp. 2d 342 (S.D.N.Y. 2013).......................................................................6

*Francisco v. United States*,
54 F. Supp. 2d 427 (1999) .......................................................................................15

*Francisco v. United States*,
267 F.3d 303 (3d Cir. 2001).....................................................................................16

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*,
27 F. Supp. 3d 494, 508-10 (S.D.N.Y. 2014) .........................................................13

*In re Chorney*,
277 B.R. 477 (Bankr. W.D.N.Y. 2002) ........................................................12, 13, 17

*In re MF Glob. Inc.*,
  478 B.R. 611 (Bankr. S.D.N.Y. 2012) ................................................................4

*In re Montreal, Maine & Atl. Ry., Ltd.*,
  799 F.3d 1 (1st Cir. 2015) ...............................................................................11

*In re Wiersma*,
  324 B.R. 92 (9th Cir. B.A.P. 2005) ..................................................................11

*In re Wilson*,
  No. ADV. A10-4035-TJM, 2010 WL 5341917
  (Bankr. D. Neb. Dec. 21, 2010) .......................................................................11

*Jarecki v. Shung Moo Louie*,
  700 N.Y.S.2d 152 (N.Y. App. Div. 1999),
  *rev'd on other grounds*, 722 N.Y.S.2d 784 (2001) ..........................................19

*Liberty Life Assur. Co. of Boston v. Stone St. Capital, Inc.*,
  93 F. Supp. 2d 630 (D. Md. 2000) ...................................................................12

*Meyer v. United States*,
  173 F. Supp. 920 (E.D. Tenn. 1959) ................................................................18

*NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*,
  851 N.Y.S.2d 551 (2008) ...................................................................................6

*O'Gilvie v. United States*,
  519 U.S. 79 (1996) ...........................................................................................15

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
  472 F.3d 33 (2d Cir. 2006) .................................................................................8

*Pipitone v. United States*,
  180 F.3d 859 (7th Cir. 1999) ...........................................................................18

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
  109 F.3d 850 (2d Cir. 1997) ..........................................................................3, 5

*Prinster v. CIR*,
  No. 15675-07S, 2009 WL 1884298 (T.C. June 30, 2009) ................................17

*Reisman v. Indep. Realty Corp.*,
  89 N.Y.S.2d 763 (N.Y. Sup. Ct. 1949) .............................................................10

*Schiavone Constr. Co. v. City of New York*,
  No. 94 Civ. 1153 (CSH), 1995 WL 714339 (S.D.N.Y. Dec. 5, 1995),
  *aff'd,* 99 F.3d 546 (2d Cir. 1996) ..................................................................12

*Short v. Singer Asset Fin. Co.*,
    107 F. App'x 738 (9th Cir. 2004) .......................................................12

*Sillman v. Twentieth Century-Fox Film Corp.*,
    3 N.Y.2d 395 (1957) ...........................................................................4

*Singer Asset Fin. Co. v. Bachus*,
    741 N.Y.S.2d 618 (2002) ................................................................4, 12

*Snug Harbor Square Venture v. Never Home Laundry, Inc.*,
    675 N.Y.S.2d 365 (1998) .....................................................................8

*Sparrow v. CIR*,
    949 F.2d 434 (D.C. Cir. 1991) ...........................................................19

*Spinex Labs. Inc. v. Empire Blue Cross & Blue Shield*,
    622 N.Y.S.2d 154 (1995) .....................................................................4

*Sullivan v. Int'l Fid. Ins. Co.*,
    465 N.Y.S.2d 235 (N.Y. App. Div. 1983) ............................................4

*Taggi v. United States*,
    35 F.3d 93 (2d Cir. 1994) ..................................................................17

*Tamberella v. CIR*,
    139 Fed. App'x 319 (2d Cir. 2005) ....................................................16

*Woodbury v. Andrew Jergens Co.*,
    69 F.2d 49 (2nd Cir. 1934) (Hand, J.) ................................................10

## Statutes

26 U.S.C. § 61(a) ....................................................................................14

26 U.S.C. § 104(a) ............................................................................ *passim*

26 U.S.C. § 104(a)(1) ..............................................................................14

26 U.S.C. § 104(a)(2) ....................................................................... *passim*

N.Y. U.C.C. § 1-201(35) ...........................................................................9

N.Y. U.C.C. § 9-101 cmt. 4.a .................................................................12

N.Y. U.C.C. § 9-102(a)(42) .....................................................................13

N.Y. U.C.C. § 9-102(a)(61) .....................................................................13

N.Y. U.C.C. § 9-109(a)(3) ...............................................................................................11

N.Y. U.C.C. § 9-109 cmt. 15 .......................................................................................2, 11

N.Y. U.C.C. § 9-406(d) ....................................................................................................13

N.Y. U.C.C. § 9-406(d)(1) ...............................................................................................13

N.Y. U.C.C. § 9-408(a) ...........................................................................................2, 13, 14

N.Y. U.C.C. § 9-408(d)(1) ...........................................................................13, 14, 16, 17

N.Y. U.C.C. § 9-408 cmt. 2 .......................................................................................2, 13

N.Y. U.C.C. § 9-408 cmt. 15 .............................................................................................2

N.Y. U.C.C. § 9-701 .........................................................................................................12

Small Business Job Protection Act of 1996, Pub.L. No. 104-188,
    § 1605(a), 110 Stat. 1755 (1996) .............................................................................16

## Other Authorities

William F. Savino and David S. Widenor,
    *2002–2003 Survey of New York Law:  Commercial Law*,
    54 Syracuse L. Rev. 855 (2004).................................................................................11

## I.     INTRODUCTION

Under New York law, anti-assignment clauses may prohibit the "assignment[] of money due under [a] contract[]" only where it is done expressly, and with the "plainest words."  *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 452 (1952).  Even when that "very high bar" is met, New York's Uniform Commercial Code (the "UCC") invalidates any attempt to restrict the assignment of settlement proceeds except in narrow circumstances not present here.  The reasons for these restrictions are straightforward:  the law favors the assignability of contracts, and third parties must be put on clear notice that they cannot acquire the right to money due under a contract.

The anti-assignment clause in Section 30.1 of the Settlement Agreement, which is entitled "No Assignment of *Claims*" (emphasis added), does not come close to meeting the standard for voiding the assignment of the settlement proceeds at issue here.  The clause does not mention the Settlement Agreement at all, let alone the proceeds due under the agreement.  Instead, the anti-assignment clause is limited to "the subject matter of the Class Action Complaint"—*i.e.*, the players' tort claims—which necessarily does not include future proceeds due under a settlement agreement that did not even exist when the Class Action Complaint was filed.

Limiting the anti-assignment clause to the underlying personal injury claims is not only consistent with the plain language of the contract and New York law, it makes sense:  the anti-assignment clause provides assurance that class members did not assign and will not attempt to assign the claims that are being settled by the agreement.  It also provides a coherent and comprehensive way to read the Settlement Agreement that harmonizes all of its terms.

The same is not true of the reading proffered by Co-Class Counsel and the government (collectively, "Opposing Parties"), which would require the Court to interpret the anti-assignment clause to *implicitly* bar the assignment of settlement proceeds, despite the

1

requirement that only *explicit* limitations are enforceable, and "to have a broad scope" (Gov't Br. at 7),[1] despite the requirement that anti-assignment clauses must be read narrowly.  Indeed, Opposing Parties' interpretation would also require the Court to:

- Interpret the phrase "the subject matter of the Class Action Complaint" in Section 30.1 to *include* rights under the Settlement Agreement, even though the Settlement Agreement is expressly *excluded* from references to the subject matter of the Class Action Complaint elsewhere in the agreement.

- Ignore the parties' use of the phrase "the subject matter of the Settlement Agreement" elsewhere in the Settlement Agreement, which confirms that the parties *deliberately* did not use this phrase in the anti-assignment clause.

- Overlook references to "assigns" elsewhere in the Settlement Agreement and the Amended Final Order and Judgment approving the agreement, which necessarily means that certain assignments were contemplated and assignees are bound by the agreement.

- Disregard the Lien provisions in the Settlement Agreement, which include assignments such as those at issue in the defined term "Lien" and contemplate the assignment of settlement proceeds.

Opposing Parties' proposed reading not only violates fundamental rules of contract interpretation, but would also render the anti-assignment clause *unenforceable* under the UCC, which "makes ineffective any attempt to restrict the assignment" of payment intangibles such as settlement proceeds.  N.Y. U.C.C. §§ 9-408(a) & cmt. 2, 9-109 cmt. 15.  This black letter law cannot be avoided by reliance on the UCC's narrow exemption for settlement proceeds that have been allocated in a settlement agreement as compensation for the types of physical injuries that are non-taxable under 26 U.S.C. § 104(a)(2).  Here, the Settlement Agreement makes no such allocation and, even if it did, many of the claims that were the subject of the Settlement Agreement are not covered by this provision of the tax code.

RD Legal Finance, LLC ("FINCO") entered valid Assignment and Sale Agreements with seven former NFL players and, based in part on the players' assurances that they were permitted

---

[1] When citing ECF documents, the page numbers herein refer to the ECF-stamped page numbers.

to assign their settlement proceeds, has paid those players more than $1.6 million in return for a portion of their settlement proceeds.  Opposing Parties provide no plausible basis for interpreting Section 30.1 to prohibit the assignment of settlement proceeds in contravention of the strong policy favoring the free assignability of contract rights.  Accordingly, this Court should reject their arguments and find that the assignment of settlement proceeds, including the assignments made by the players to FINCO, are permitted under the Settlement Agreement.

## II.     THE SETTLEMENT AGREEMENT DOES NOT PROHIBIT THE ASSIGNMENT OF SETTLEMENT PROCEEDS

Consistent with its "No Assignment of Claims" title, Section 30.1 of the Settlement Agreement bars assignment of the claims relating to the allegations in the underlying Class Action Complaint.  (*See* ECF No. 6481-1 at § 30.1 (providing that no class member "has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint").)

Section 30.1 does not, however, bar the assignment of the *contractual proceeds* from the Settlement Agreement.  Only express limitations on assignability of money due under a contract are enforceable, and Section 30.1 does not even mention—let alone expressly prohibit—the assignment of settlement proceeds.

### A.     *Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds*

"Under New York law, only *express* limitations on assignability are enforceable."  *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original).  To prohibit the assignment of money due under a contract, an anti-assignment clause must contain "clear, definite and appropriate language"—not some "magical phrase" (Gov't Br. at 8)—declaring an assignment invalid.  *Allhusen*, 303 N.Y. at 452; *accord Sullivan v. Int'l Fid. Ins.*

3

*Co.*, 465 N.Y.S.2d 235, 237 (N.Y. App. Div. 1983) (citing *Allhusen*).  This standard sets a "very high bar . . . before contractual language can be found to prohibit [an] assignment," *In re MF Glob. Inc.*, 478 B.R. 611, 619 (Bankr. S.D.N.Y. 2012) (discussing *Allhusen*)—a bar that is satisfied only where the provision explicitly makes the assignment of specific rights under the contract void.

Examples of "clear, definite and appropriate language" that courts have held met the "very high bar" to void the assignment of payments due under a contract include:

- "The assignment by the second party [] of **this contract or any interest therein, or of any money due or to become due by reason of the terms hereof** without the written consent of the first party [] shall be void."  *Allhusen*, 303 N.Y. at 449 (emphasis added).

- "You cannot assign **any benefits or monies due under this Plan** to any person, corporation or other organization.  Any assignment by you will be void."  *Spinex Labs. Inc. v. Empire Blue Cross & Blue Shield*, 622 N.Y.S.2d 154, 155 (1995) (emphasis added).

- "[N]either party hereto shall assign **this agreement, in whole or in part, or any rights or monies payable hereunder**, without the prior written consent of the other party . . . ."  *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 400 (1957) (emphasis added).

- "**[P]eriodic payments due** [under the settlement agreement] 'are not subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance.'"  *Singer Asset Fin. Co. v. Bachus*, 741 N.Y.S.2d 618, 619 (2002) (emphasis added).

As these cases show, to be effective, an anti-assignment clause must expressly prohibit the assignment of money due under a contract.  Even where an anti-assignment clause expressly refers to the contract itself, the assignment is not void if it fails to prohibit the assignment of the specific right assigned.  *See Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 554 (S.D.N.Y. 2016) (holding that clause in licensing agreement prohibiting the assignment of "this Agreement *or any interest hereunder*, or . . . [any] *rights or obligations hereunder*" did not prohibit the assignment of patent that was the subject of the agreement) (applying New York law) (emphasis in original); *Cent. Transp. Int'l, Inc. v. Glob. Advantage Distribution, Inc.*, No. 2:06-CV-401-FtM-29SPC, 2007 WL 4482271, at *5 (M.D. Fla. Dec. 17, 2007) (holding assignment of "some claims under the contract" not void because term prohibited only the

4

assignment of "[t]his Contract" as a whole) (applying New York law).

Section 30.1 does not clear the "very high bar" required to render an assignment of settlement proceeds void.  The anti-assignment clause makes no mention *at all* of the Settlement Agreement, let alone an "express limitation[] on assignability" of monies due under the Settlement Agreement, and thus does not prohibit the assignment of settlement proceeds.  *See Pravin Banker*, 109 F.3d at 856.

**B.**     **The "Subject Matter of Class Action Complaint" Does Not Include the Subject Matter of the Settlement Agreement**

Opposing Parties, however, urge the Court to *infer* that the term "subject matter of the Class Action Complaint" *includes* the "subject matter of the Settlement Agreement."  This interpretation not only violates the rule that limitations on assignability must be clearly expressed, but also—as the government concedes—requires that the Court interpret the anti-assignment clause "to have a broad scope" (Gov't Br. at 7), directly contradicting the rule that anti-assignment provisions be construed "narrowly."[2]  *Au New Haven*, 210 F. Supp. 3d at 556.

The interpretation proffered by Opposing Parties also cannot be reconciled with the distinct uses in the Settlement Agreement of the phrases "subject matter of the Class Action Complaint" and "subject matter of this Settlement Agreement."  Opposing Parties urge the Court to ignore these distinctions, and conveniently assign different meanings to the terms depending on where they appear in the Settlement Agreement (Co-Class Counsel Br. ("CCC Br.") at 13 (meaning of "each provision is examined in its respective context"), 14 (terms "must be viewed in context")).  But basic rules of contract interpretation do not bend to convenience; these rules

---

[2] The cases upon which the government relies do not involve anti-assignment provisions and thus are inapposite.  (*See* Gov't Br. at 7 (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (arbitration clause); *Coregis Ins. Co. v. Amer. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (insurance coverage term)).)

dictate that "the same words used in different parts of a writing have the same meaning," *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) (citation omitted), and, conversely, "[t]he use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings," *NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (2008).

The phrases the "subject matter of the Class Action Complaint" and the "subject matter of the Settlement Agreement" are not interchangeable, and the Settlement Agreement makes clear that they were not intended to be. Consider the Release clause, in which class members released all claims in any way "relating to the Class Action Complaint."[3] (ECF No.6481-1 at § 18.1(a).) The released claims necessarily do not include claims under the Settlement Agreement, which class members retain and which the agreement later expressly *excludes* from the claims "relating to the Class Action Complaint." (*See id.* at § 18.3(e) ("Nothing in the Releases will preclude any action to enforce the terms of this Settlement Agreement.").)

Co-Class Counsel attempts to explain the distinct use of "subject matter of the Class Action Complaint" and "subject matter of the Settlement Agreement" in sections other than Section 30.1 by arguing that, in each instance, only one of the terms was used because in each circumstance there "would be no reason" to include the omitted term. (CCC Br. at 13-15.)[4] Co-Class Counsel is exactly right: there is no reason to include the omitted term in these other sections because the phrases have different meanings, but in Section 30.1 there *would be reason* to include the phrase "the subject matter of the Settlement Agreement" if the parties intended it

---

[3] The release is much broader than merely claims "relating to the subject matter of the Class Action Complaint," and includes all past, present and future claims "in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint . . . ." (ECF No.6481-1 at § 18.1(a).)

[4] *See also* CCC Br. at 13 ("[I]t would have made no sense for the underlying class action complaint to be mentioned."); *id.* at 14-15 (there "would [be] no reason to reference the Settlement Agreement").

to be subject to the anti-assignment clause.  If, as Co-Class Counsel argues, the use of the phrase "Class Action Complaint" in other provisions is limited to the Complaint itself and not the Settlement Agreement, then it makes no sense that the same phrase should then be construed more broadly in Section 30.1 to include both the Complaint and the Settlement Agreement. Indeed, the parties (and their experienced lawyers) easily could have made the anti-assignment clause pertain to "the subject matter of the Settlement Agreement," "the subject matter of the Class Action Complaint or Settlement Agreement," or "the subject matter of the Class Action Complaint, this Settlement Agreement, and money due under the Settlement Agreement."  They did not, however, and cannot now broaden the scope of the anti-assignment clause by redefining terms and phrases that were given specific meanings in the Settlement Agreement itself.

Opposing Parties' argument that there is no need to prohibit assignments of class members' claims, because the Settlement Agreement elsewhere releases those claims (CCC Br. at 11), is wholly meritless.  First, this argument overlooks that under the plain language of the anti-assignment clause, class members *have agreed* that they have not assigned their claims in the action.  It also ignores a clear and important purpose of the anti-assignment clause:  to ensure that the class members are the proper parties to release claims against the NFL.  Indeed, the Settlement Agreement takes a belt and suspenders approach:  (1) making the release binding on the class members' assigns; and (2) having the class members covenant that they have not and will not assign their claims.  (ECF No. 6481-1 at §§ 18.1(a), 30.1.)

There is also no merit to Opposing Parties' argument that the provision stating that "the Claims Administrator shall not recognize" any assignment is meaningless if it does not refer to the assignment of settlement proceeds.  (Gov't Br. at 7-8; CCC Br. at 12.)  Indeed, the clause has an obvious meaning:  the Claims Administrator is directed not to recognize the claims of any

assignees who attempt to avail themselves of the claims administration process, as the claims must be submitted to the administrator by the players, not any assignee.[5] It has nothing to do with the validity of an assignment of the proceeds that the players receive from the Claims Administrator *after* the claims process has concluded.[6]

### C. Interpreting Section 30.1 to Prohibit the Assignment of Settlement Proceeds Is Inconsistent with the Settlement Agreement as a Whole

As set forth in the opening memorandum of RD Legal Funding Partners, LP, FINCO, RD Legal Funding, LLC, and Roni Dersovitz (collectively, "RD Legal"), interpreting the "No Assignment of Claims" provision to prohibit the assignment of settlement proceeds is also inconsistent with the Settlement Agreement as a whole. *See Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 675 N.Y.S.2d 365, 366 (1998) ("[I]n construing a contract, the document must be read as a whole."). The agreement, for example, expressly permits Liens on settlement proceeds and devotes more than four pages to the handling of such Liens. (ECF No. 6481-1 at Article XI.) The government contends that this argument "conflates two distinct legal concepts, liens and assignments" (Gov't Br. at 9), but under the Settlement Agreement "Lien" is a defined term that refers more broadly to "any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever." (ECF No. 6481-1 at § 2.1(uu).) This definition necessarily includes the Assignment and Sale Agreements here, which provide for a

---

[5] The government apparently relies on the Claims Administrator's decision not to recognize the assignment of settlement proceeds as support for its interpretation of the anti-assignment clause. (Gov't Br. at 6-7.) Of course, the Settlement Agreement is interpreted according to "the clear language of the contract," *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Insurance Co.*, 472 F.3d 33, 42 (2d Cir. 2006), not the conduct of non-parties.

[6] The government also argues that Section 30.1 must include the Settlement Agreement because "[t]he complaint does not provide any of the parties' 'rights;' only the settlement agreement does that." (Gov't Br. at 7.) The government ignores, however, that the "rights" described in Section 30.1 are expressly those rights relating to the "subject matter" of the Class Action Complaint, which plainly refers to the right to legal redress for the conduct alleged in the complaint.

lien against the settlement proceeds and create a "security interest" under the UCC.  *See* N.Y.

U.C.C. § 1-201(35) ("security interest" includes "any interest of a . . . buyer of accounts, chattel

paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9").

Opposing Parties' proffered interpretation is also inconsistent with the Settlement

Agreement's indemnity and release clauses (ECF No. 6481-1 at §§ 11.4, 18.1(a)), as well as the

Amended Final Order and Judgment ("Order") that approved, and is incorporated into, the

Settlement Agreement (ECF No. 6534 at ¶ 19), all of which expressly refer to the NFL players'

"assigns."  Opposing Parties fail even to acknowledge—let alone attempt to provide meaning

to—the use of "assigns" in the indemnity and release clauses.  (ECF No. 6481-1 at § 11.4

(creating an indemnification obligation of "[e]ach Settlement Class Member, on his or her own

behalf, and on behalf of his or her . . . *assigns*"); *id.* at § 18.1 (releasing claims of "each

Settlement Class Member, on his or her own behalf and on behalf of his or her . . . *assigns*")

(emphases added).)  And while the government claims that the use of "assigns" in the Order is

limited to the NFL (Gov't Br. at 9), this argument is unpersuasive, as the Order plainly refers to

the assigns of *all* "Parties" to the Settlement Agreement.  (ECF No. 6534 at ¶ 19.)  Only RD

Legal's reading of the anti-assignment clause—which permits assignment of settlement

*proceeds*—gives meaning to the use of "assigns" in the Settlement Agreement and Order.

Finally, although Co-Class Counsel claims it is "specious" to contend that its expansive

reading of the anti-assignment clause would prohibit even contingency fee agreements (CCC Br.

at 15-16), it offers no reason to conclude otherwise.  While Co-Class Counsel unsuccessfully

attempts to distinguish *CIR v. Banks*, 543 U.S. 426, 434 (2005), it cannot change *Banks'* holding:

that contingency fee agreements "should be viewed as an anticipatory assignment to the attorney

of a portion of the client's income from any litigation recovery."  *Id.* at 434.  Co-Class Counsel

does not cite any law suggesting that a contingency fee agreement is anything other than an anticipatory assignment—let alone law to contradict the Supreme Court and New York law, which also recognizes that contingency fee agreements effect an assignment.  *See Reisman v. Indep. Realty Corp.*, 89 N.Y.S.2d 763, 766 (N.Y. Sup. Ct. 1949) (stating that contingency agreement "effected an equitable assignment to the attorneys"); *Woodbury v. Andrew Jergens Co.*, 69 F.2d 49, 50 (2nd Cir. 1934) (Hand, J.) (holding attorney "became by the law of New York an equitable assignee" under contingency agreement).  Co-Class Counsel's reading of Section 30.1 would thus bar even contingency fees owed to class members' counsel, an outcome that even Co-Class Counsel concedes would be absurd.

## III.    REVISED ARTICLE 9 OF THE UCC RENDERS THE ANTI-ASSIGNMENT CLAUSE INEFFECTIVE

It is black letter law that Revised Article 9 of the UCC, as adopted by New York, prohibits restrictions on the assignment of settlement proceeds.  While Opposing Parties correctly note that Article 9 does not prevent the assignment of a limited category of settlement proceeds that are excludable from gross income under the Internal Revenue Code (the "IRC"), neither provides any analysis of that limited exception, which does not apply here.[7]

### A.    *Article 9 of the UCC Applies to "Payment Intangibles" Like the Right to Settlement Proceeds Pursuant to the Settlement Agreement*

Article 9 of the UCC applies to, *inter alia*, "a sale of accounts, chattel paper, *payment*

---

[7] To the extent Opposing Parties argue that RD Legal's UCC argument is somehow "belated," the argument should be rejected.  The enforceability of the anti-assignment clause is being considered by this Court *de novo*, and accordingly there is no timing issue whatsoever.  RD Legal only raised the issue in the CFPB Litigation after Co-Class Counsel attempted to file an amicus brief in which it separately raised the issue of the enforceability of the anti-assignment clause.  That issue was—and remains—extraneous to the Rule 12(b)(6) motion in the CFPB Litigation, because the enforceability of the anti-assignment clause is not determinative of whether RD Legal offered an "extension of credit" to the players, which is the jurisdictional question squarely before Judge Preska.

*intangibles*, or promissory notes."  N.Y. U.C.C. § 9-109(a)(3) (emphasis added).  "Payment

intangibles" include tort claims—like the ones here—that have "been settled and reduced to

a contractual obligation to pay."  *Id.* at cmt. 15; *see also In re Montreal, Maine & Atl. Ry., Ltd.*,

799 F.3d 1, 7 (1st Cir. 2015) (explaining that a settled tort claim is a payment intangible subject

to Revised Article 9); *In re Wiersma*, 324 B.R. 92, 107 (9th Cir. B.A.P. 2005) ("[R]evised

Article 9 considers payment intangibles of either consumer or commercial tort actions to be

general intangibles."); *In re Wilson*, No. ADV. A10-4035-TJM, 2010 WL 5341917, at *3

(Bankr. D. Neb. Dec. 21, 2010) ("the right to payment upon settlement is . . . a payment

intangible" subject to Article 9); *Am. Gen. Life Ins. Co. v. Alvarez*, No. 02-20419-CIV, 2003 WL

26089803, at *8 (S.D. Fla. Sept. 11, 2003) (holding "payments generated by the structured

settlement arise out of a contract" and are subject to Revised Article 9); William F. Savino and

David S. Widenor, *2002–2003 Survey of New York Law:  Commercial Law*, 54 Syracuse L. Rev.

855, 927 (2004) ("[W]here a suit (even for tort) becomes extinguished and replaced by a

contractual obligation for settlement payments, [Revised] Article 9 will apply . . . .")).

     In fact, Article 9 was amended in 2001 expressly to include "payment intangibles":

> 4.  **Summary of Revisions.**  Following is a brief summary of some
> of the more significant revisions of Article 9 that are included in
> this Article.
>
> a. **Scope of Article 9.**  This Article expands the scope of Article 9
> in several respects.
>
>     . . .
>
> *Sales of payment intangibles and promissory notes.*  Section 9-109
> also includes within the scope of this Article most sales of
> "payment intangibles" (defined in Section 9-102 as general
> intangibles under which an account debtor's principal obligation is
> monetary) . . . .  Former Article 9 included sales of accounts and
> chattel paper, but not sales of payment intangibles . . . .  In its
> inclusion of sales of payment intangibles . . . , this Article
> continues the drafting convention found in former Article 9; it

> provides that the sale of accounts, chattel paper, payment
> intangibles, or promissory notes creates a "security interest."

N.Y. U.C.C. § 9-101 cmt. 4.a; *see also* N.Y. U.C.C. § 9-701 ("Revised Article 9 takes effect on

July 1, 2001.").

Opposing Parties, however, simply ignore these revisions.  Co-Class Counsel cites to a host

of irrelevant cases decided under the *prior* version of the UCC—which did not encompass payment

intangibles—to argue for the inapplicability of Revised Article 9 here.  (CCC Br. at 18 (citing

cases).)[8]  For its part, the government simply ignores the fact that Section 9-109 includes "payment

intangibles."  (Gov't Br. at 10 (acknowledging RD Legal's argument, but responding only that

settlement proceeds are not "an agricultural lien, a sale of accounts, or a consignment").)

The only case cited by Opposing Parties that even mentions Revised Article 9 is *In re*

*Chorney*, 277 B.R. 477 (Bankr. W.D.N.Y. 2002).  In that bankruptcy case, however, the court

explained that Revised Article 9 did not apply because the bankruptcy proceeding was filed prior

to the effective date of Revised Article 9.  *Id.* at 486.  The court then held that even under Former

Article 9, the right to receive payments under a settlement agreement was within the scope of the

UCC, *id* at 487, and therefore that "Section 9-318(4) of the Former Article 9 m[ade] ineffective .

. . the anti-assignment provisions" in the underlying settlement agreement.  *Id.* at 489.  The

analysis in *In re Chorney* thus fully supports RD Legal's position here:  the right to receive

proceeds under the Settlement Agreement is a "payment intangible" within the scope of Article

---

[8] *See Schiavone Constr. Co. v. City of New York*, No. 94 Civ. 1153 (CSH), 1995 WL 714339, at *7
(S.D.N.Y. Dec. 5, 1995), *aff'd*, 99 F.3d 546 (2d Cir. 1996) (finding former § 9–318(4) "does not
purport to apply to public contracts"); *Liberty Life Assur. Co. of Boston v. Stone St. Capital, Inc.*,
93 F. Supp. 2d 630, 638 (D. Md. 2000) (finding Missouri's former version of § 400.9–318(4)
"does not enable defendants to avoid the anti-assignment provision in the Settlement Agreement");
*Singer Asset Fin. Co. v. Bachus*, 741 N.Y.S.2d 618, 620 (2002) (finding "former 9–318 (4) . . .
does not apply" to assignment of general intangibles).  Co-Class Counsel also cites to *Short v.
Singer Asset Fin. Co.*, 107 F. App'x 738 (9th Cir. 2004), but *Short* did not even mention the UCC,
let alone discuss the terms or scope of Revised Article 9.

9, and, as discussed below, the anti-assignment provision in the Settlement Agreement accordingly is ineffective.

### B.   Section 9-408(a) of the UCC Makes the Anti-Assignment Clause Ineffective

Because the right to receive settlement proceeds is a payment intangible, the sale of settlement proceeds is, as a matter of law, subject to Section 9-408(a), "[w]hich makes ineffective any attempt to restrict the assignment of a general intangible . . . ."  N.Y. U.C.C. § 9-408 cmt. 2; *see id.* at § 9-102(a)(42) (defining "general intangible" to include "payment intangibles"); § 9-102(a)(61) (defining "Payment intangible" to mean "a general intangible under which the account debtor's principal obligation is a monetary obligation"); *see also id.* at § 9-406(d)(1) (making ineffective anti-assignment clauses relating to certain loan obligations).  The UCC thus renders ineffective any contractual provision that purports to restrict the assignability of payment intangibles such as the money due under the Settlement Agreement that were sold and assigned to FINCO.  *Cf. ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, 508-10 (S.D.N.Y. 2014) (finding anti-assignment clause invalid under Section 9-406(d)).

### C.   New York's Limited Exception to the UCC's Categorical Prohibition Of Anti-Assignment Clauses Does Not Apply

Opposing Parties attempt to avoid the plain language of Section 9-408(a) by invoking New York's narrow exemption from that section for the "right to receive compensation for injuries or sickness as described in [Section 104 of the Internal Revenue Code], as amended from time to time."  N.Y. U.C.C. § 9-408(d)(1).[9]  This exemption means that an anti-assignment

---

[9]  Section 9-408(d)(1) of New York's UCC is not included in the model Uniform Commercial Code, or in the commercial codes adopted by the majority of states.  The inclusion of the exemption, however, confirms that the assignment of settlement proceeds from tort claims *are* subject to Section 9-408(a)'s prohibition of anti-assignment clauses—otherwise there would be no need to exempt proceeds from a narrow subset of such claims.

clause is effective only if the amounts to be assigned are for the types of physical injuries or sickness excludable from income under the IRC.  Conversely, if the proceeds obtained in a settlement are taxable income, then Section 9-408(d)(1) does not apply, and an anti-assignment clause is ineffective.  As explained below, the Settlement Agreement does not allocate any money to the Section 104 exclusion, and thus N.Y. U.C.C. § 9-408(d)(1) does not apply here.

### 1.      The Income Exclusion in Section 104(a)(2) is Narrow in Scope

Except as otherwise provided, "gross income means all income from whatever source derived."  26 U.S.C. § 61(a); *CIR v. Schleier*, 515 U.S. 323, 327 (1995) (explaining Section 61(a) must be construed broadly).  Section 104 of the IRC, the tax provision referenced in Section 9-408(d)(1), provides a limited exclusion from income that must be construed narrowly.  *Schleier*, 515 U.S. at 328 (stating exclusions under Section 104 must be construed narrowly).  That provision provides, in relevant part:

> **(a)  In general.** – Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—
>
>       . . . .
>
> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness.

26 U.S.C. § 104(a)(2).[10]

Significantly, while Section 9-408(d)(1) specifically applies only to rights to compensation encompassed within Section 104(a)(2) of the IRC, neither of the Opposing Parties makes any effort to demonstrate that the settlement proceeds FINCO purchased fall within Section 104(a)(2)'s limited scope.  Instead, Co-Class Counsel states simply that it is "[b]eyond genuine dispute [that] monetary awards under the Settlement Agreement are compensation for

---

[10]  Section 104(a)(1) excludes from income damages received "under workmen's compensation acts" and is irrelevant here.  26 U.S.C. § 104(a)(1).

injuries or sickness" (CCC Br. at 17).  That statement, however, fails to recognize the limiting

effect of Section 104(a)(2) and the actual language in the Settlement Agreement.  For its part, the

government does not address the issue at all.

By statute, the income exclusion in Section 104(a)(2) does not include amounts:

1.  That are payable for other than "personal *physical* injuries," 26 U.S.C. § 104(a)(2)

(emphasis added);

2.  That are attributable to "punitive damages," *id.* § 104(a)(2) (applying income

exemption to "the amount of any damages (other than punitive damages) . . .");

3.  That are attributable to "emotional distress," *id.* § 104(a) ("For purposes of

paragraph (2), emotional distress shall not be treated as a physical injury or

physical sickness."); or

4.  That are "attributable to (and not in excess of) deductions allowed under section 213

(relating to medical, etc., expenses) for any prior taxable year . . . ." *id.* § 104(a).

Guided by the IRC, numerous courts have analyzed the types of damages that are, or are

not, excludable from gross income under 26 U.S.C. § 104(a).  The Supreme Court has long

instructed that "each element of damages must be examined individually to determine whether"

it fits into the exclusion.  *Francisco v. United States*, 54 F. Supp. 2d 427, 433 (1999) (Brody, J.)

(holding that delay damages (a form of pre-judgment interest) are not excludable from income

under 26 U.S.C. § 104(a)) (citing *O'Gilvie v. United States*, 519 U.S. 79, 84-85 (1996); *Schleier*,

515 U.S. 323).  Yet Opposing Parties have simply avoided undertaking any sort of analysis

regarding the tax code, and thus have failed to demonstrate that the settlement proceeds that

FINCO purchased fall within the scope of Section 104(a)(2) and, by extension, within the limited

exception to the UCC's categorical prohibition against restrictions on assignability.

15

2.     **The Settlement Agreement's Affirmative Disavowal of Any Allocation Between Amounts Included or Excluded from Income Precludes the Applicability of Section 9-408(d)(1)**

To take advantage of the exclusion from income under Section 104(a)(2) of the IRC, a taxpayer must meet two independent requirements.  "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights; and second, the taxpayer must show that the damages were received on account of personal injuries or sickness." *Schleier*, 515 U.S. at 337 (internal quotations omitted).  Section 104(a)(2) was amended in 1996 to add the word "physical" to the phrase "personal injuries or sickness." *See* Small Business Job Protection Act of 1996, Pub.L. No. 104-188, § 1605(a), 110 Stat. 1755, 1838 (1996).  This amendment limits the type of damages excludable from income to those received "on account of personal physical injuries or physical sickness," and expressly states that emotional distress does not constitute a physical injury or sickness.  *Id.*

"Whether a settlement payment is excludable turns on the intent of the payor in making the payment, which is a factual inquiry . . . ." *Tamberella v. CIR*, 139 Fed. App'x 319, 322 (2d Cir. 2005) (citing *Agar v. Comm'r*, 290 F.2d 283, 284 (2d Cir. 1961)); *Francisco v. United States*, 267 F.3d 303, 319 (3d Cir. 2001) ("[T]he most important fact in determining how section 104(a)(2) is to be applied is the intent of the payor.") (internal quotations and citation omitted).) "Where the express language of the settlement agreement indicates the nature of the underlying claim being settled and allocates the award among various claims, then the terms of the agreement are generally binding for tax purposes." *Tamberella*, 139 Fed. App'x at 322.  Thus, in the only case cited by Opposing Parties, *In re Chorney*, the court noted that had Revised Article 9 governed—which it did not—the exception in 9-408(d)(1) for the "right to receive

compensation for injuries or sickness as described in 26 U.S.C. Section 104(a)(1) and (2)" would have applied because "*the Settlement Agreement specifically sets forth that the Payments to the Debtor are damages*" within Section 104(a).  277 B.R. at 490 (emphasis added).

Here, far from containing a Section 104 allocation (which is common in settlement agreements), the Settlement Agreement affirmatively *disclaims* any sort of allocation:  "Each Settlement Class Member's tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member."  (ECF No. 6481-1 at § 30.14.)  In the absence of any sort of allocation, the income exclusion in Section 104(a)(2) of the IRC cannot apply.  *Cf. Taggi v. United States*, 35 F.3d 93, 96 (2d Cir. 1994) ("[S]ince the release was all-encompassing, including both contract and tort claims, the court was not in a position to apportion the payment among the various possible claims."); *see also, e.g.*, *Prinster v. CIR*, No. 15675-07S, 2009 WL 1884298, at *4 (T.C. June 30, 2009) ("In the absence of a basis for allocation, we presume the entire amount is not excludable [from income].").

While the Class Action Complaint unquestionably includes claims based on personal physical injuries, one of the two classes in the Class Action Complaint encompasses Retired NFL Football Players who have *not* been diagnosed with illness (Class Action Complaint, ECF No. 1 at ¶ 17.a), and involves class members who "are at increased risk" for future "personal injury" (*id.* at ¶ 19).  In other words, even at the time of settlement, the Class Action Complaint encompassed claims for certain individuals who have *not* been diagnosed, and who are at risk for, but have not yet suffered, personal injury.  *See* 26 U.S.C. § 104(a) (emotional distress damages are outside the scope of Section 104(a)); *Meyer v. United States*, 173 F. Supp. 920, 924 (E.D. Tenn. 1959) (holding "present payment for possible future injuries" are not exempt from

17

taxation as compensation for personal injuries or sickness).

Moreover, the releases in the Settlement Agreement and claims asserted in the action also undoubtedly cover damages that are *not* excludable as income under Section 104.  The Releases in Section 18.1, for example, include not just damages for personal physical injuries, but also claims for damages that *necessarily* do not involve physical injuries, such as:

- "debts, dues, . . . accounts, . . . contracts, . . . or promises," (ECF No. 6481-1 at § 18.1);

- claims arising out of "increased risk, possibility, or fear of suffering in the future . . . and including . . . emotional or mental harm, or anguish or loss of enjoyment of life," (*id.* at § 18.1(a)(vi));

- claims arising out of "medical monitoring for undeveloped, unmanifested, and or undiagnosed" injuries, (*id.* at § 18.1(a)(vii)); and

- claims "premised on any purported or alleged breach of any Collective Bargaining Agreement . . ." (*id.* at § 18.1(a)(viii)).

In addition, the Releases extend not just to the claims asserted or that could have been asserted in the "Class Action Complaint," but also to claims that were asserted or that could have been asserted in "any other Related Lawsuit."  (*Id.* at § 18.1(a)(i).)[11]  *See Pipitone v. United States*, 180 F.3d 859, 864 (7th Cir. 1999) ("The existence of an agreement that contains a release of undisclosed or potential claims is not sufficient evidence standing on its own to demonstrate that the amounts paid under the agreement are eligible for exclusion under § 104(a)(2).").  Even a cursory review of the short form complaints filed by the seven players who contracted with FINCO shows that some Related Lawsuits encompass damages—including punitive damages and prejudgment interest—that are outside the scope of Section 104.  (*See* ECF No. 1262 at 7 (seeking

---

[11] "Related Lawsuits" is a defined term to broadly encompass actions "pending in the Court, other than the Class Action Complaint, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum . . . ."  (ECF No. 6481-1 at § 2.1(zzz).)

"punitive and exemplary damages," "statutory damages," "medical monitoring . . . in the form of equitable relief,"[12] and "prejudgment interest"); ECF Nos. 1628, 220, 380, 1613 (same).)

Almost all of the cases discussing the allocation of damages under Section 104 involve disputes between taxpayers and the government over whether proceeds from a judgment or settlement were excludable from the taxpayer's gross income. Here, where the Settlement Agreement makes no allocation whatsoever, a third-party funder looking at whether an anti-assignment clause is barred by the UCC, cannot be required to wait until the Internal Revenue Service, the players, and the courts adjudicate on an individual basis whether all or some of a player's settlement proceeds are excludable from gross income. The policies favoring freedom of contract and the assignability of money due under contracts support a more clear rule that does not rely on subsequent events to determine the validity of a freely entered assignment. *See Jarecki v. Shung Moo Louie*, 700 N.Y.S.2d 152, 153 (N.Y. App. Div. 1999), *rev'd on other grounds*, 722 N.Y.S.2d 784 (2001) ("[t]he law favors the free assignability of contract rights").

To be sure, there may be individuals whose entire award under the Settlement Agreement is to compensate them for personal physical injuries. For others, a significant portion of their award may be for emotional distress resulting from an increased risk of a personal injury. And portions of the settlement awards to individual players may be attributable to the release of claims for punitive damages, prejudgment interest, or other claims that are not excluded from income under the IRC. Because, however, the settling parties have expressly disavowed any determination as to whether any of the settlement proceeds are excludable from taxable income under the IRC, the Court cannot determine as a matter of law that *all of the settlement proceeds* are excludable from taxable income and therefore exempt from the UCC's prohibition on anti-

---

[12]  *See Sparrow v. CIR*, 949 F.2d 434, 437 (D.C. Cir. 1991) ("[T]he term 'damages' as used in section 104(a)(2) embodies a monetary amount originally awarded at law, not in equity.").

assignment clauses.  Indeed, where, as here, a Settlement Agreement does not allocate the proceeds between taxable and non-taxable compensation, and where the underlying claims include both physical injuries and other damages that may not be excludable as income under the IRC, Section 9-408(d)(1) should not apply.

New York law, as explained above, allows for anti-assignment clauses to prohibit the "assignments of money due under contracts" only where it is done expressly, and with the "plainest words."  *Allhusen*, 303 N.Y. at 452.  Here, the parties could easily have incorporated language into the Settlement Agreement stating that the settlement proceeds were "exempt from income under 26 U.S.C. § 104(a)," or "for personal physical injuries."  Instead, they expressly disclaimed a class-wide allocation and stated that tax treatment of the settlement proceeds "may vary depending on the particular circumstances of each individual Settlement Class Member." (ECF No. 6481-1 at § 30.13.)  This language conclusively shows that the parties intended to avoid a class-wide exclusion from income under the IRC, and thus did not categorically exempt the settlement proceeds from the anti-assignment constraints in Section 9-408(a).

## IV.  CONCLUSION

For the reasons stated above and in RD Legal's opening memorandum, RD Legal respectfully requests that the Court conclude that the Settlement Agreement does not prohibit the assignment of settlement proceeds.

Dated this 13th day of October, 2017.        Respectfully submitted,

                                     /s/ David K. Willingham
                         BOIES SCHILLER FLEXNER LLP
                         DAVID K. WILLINGHAM