**EXHIBIT 6**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br>      Plaintiffs, <br><br>      v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S REPLY MEMORANDUM OF LAW ON THE QUESTION REFERRED TO THIS COURT BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN *CONSUMER FINANCIAL PROTECTION BUREAU v. RD LEGAL FUNDING, LLC*, NO. 1:17-CV-00890 (LAP) (S.D.N.Y.)**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT: THE ANTI-ASSIGNMENT PROVISION BARS ASSIGNMENTS
    OF MONETARY AWARDS ............................................................................................ 2

    A.     RD Legal's Reliance on the UCC Is Misplaced ....................................................... 2

    B.     The Anti-Assignment Provision Does Not Have the Limited Reach That RD
           Ascribes to It ............................................................................................................. 4

    C.     Class Counsel's Interpretation of the Anti-Assignment Provision Is Fully
           Consistent with Other Parts of the Settlement Agreement ...................................... 6

    D.     The Court Should Overrule RD Legal's Belated Jurisdictional Objection............. 8

III. CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*American General Life Insurance Company v. Alvarez*,
   No. 02-20419-CIV, 2003 WL 26089803 (S.D. Fla. Sept. 11, 2003) ......................................... 3

*Au New Haven, LLC v. YKK Corporation*,
   210 F. Supp. 3d 549 (S.D.N.Y. 2016) ..................................................................................... 5

*Central States, Southeast, and Southweast Area Pension Fund v. Cuyahoga Dairy, Inc.*,
   No. 1:15-MC-00041, 2015 WL 6444897 (N.D. Ohio Oct. 23, 2015) ...................................... 10

*Commissioner of Internal Revenue v. Banks*,
   543 U.S. 426 (2005) ................................................................................................................. 8

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
   No. C 08-4909 SI, 2009 WL 1313193 (N.D. Cal. May 12, 2009) .......................................... 10

*ImagePoint, Inc. v. JPMorgan Chase Bank, National Association*,
   27 F. Supp. 3d 494 (S.D.N.Y. 2014) ........................................................................................ 3

*In re Chorney*,
   277 B.R. 477 (Bankr. W.D.N.Y. 2002) .................................................................................... 3

*In re Fine Paper Antitrust Litigation*,
   685 F.2d 810 (3d Cir. 1982) ..................................................................................................... 9

*In re Hawley Down-Draft Furnace Co.*,
   233 F. 451 (E.D. Pa. 1916) ....................................................................................................... 8

*In re Montreal, Maine & Atlantic Railway, Ltd.*,
   799 F.3d 1 (1st Cir. 2015) ......................................................................................................... 3

*In re Mucelli*,
   21 B.R. 601 (Bankr. S.D.N.Y. 1982) ....................................................................................... 6

*In re Welding Rod Products Liability Litigation*,
   406 F. Supp. 2d 1064 (N.D. Cal. 2005) .................................................................................. 10

*In re Wiersma*,
   324 B.R. 92 (B.A.P. 9th Cir. 2005) *aff'd in part and rev'd in part*, 483 F.3d 933, *aff'd*,
   227 F. App'x 603 (9th Cir. 2007) ............................................................................................. 3

*In re Wilson,*
   No. ADV. A10-4035-TJM, 2010 WL 5341917 (Bankr. D. Neb. Dec. 21, 2010) ..................... 3

*Kearney for Kearney v. Jandernoa*,
   172 F.R.D. 381 (N.D. Ill. 1997) ................................................................................................ 10

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952) ..................................................................................................................... 9

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ..................................................................................................................... 4

*National Credit Union Adminstration Board v. RBS Securities, Inc.*,
   No. CV 11-5887-GW(JEMX), 2014 WL 12597071 (C.D. Cal. June 10, 2014) ......................... 9

*Pain Control Institute, Inc. v. GEICO General Insurance Company*,
   447 S.W.3d 893 (Tex. App. 2014) .............................................................................................. 3

*People ex rel. Spitzer v. Applied Card Systems, Inc.*,
   894 N.E.2d 1 (N.Y. 2008) ........................................................................................................... 4

*Petition of Harley & Browne*,
   957 F. Supp. 44 (S.D.N.Y. 1997) ................................................................................................ 7

*Socialist Workers Party v. Attorney General*,
   73 F.R.D. 699 (D. Md. 1977) .................................................................................................... 10

*State v. Philip Morris Inc.*,
   813 N.Y.S.2d 71 (App. Div. 1st Dep't 2006), *aff'd*, 869 N.E.2d 636 (N.Y. 2007) .................... 4

*United States ex rel. Rille v. Hewlett Packard Company*,
   No. 4:04CV00989-BRW, 2011 WL 6411486 (E.D. Ark. Dec. 21, 2011) .................................. 8

*William C. Atwater & Co. v. Panama R.R. Co.*,
   159 N.E. 418 (N.Y. 1927) ........................................................................................................... 6

**Statutes**

26 U.S.C. § 104(a)(1) ........................................................................................................................ 3

26 U.S.C. § 104(a)(2) ........................................................................................................................ 3

28 U.S.C. § 1407(b) .......................................................................................................................... 9

Idaho Code § 28-9-109(d)(13)(A) ..................................................................................................... 3

Me. Stat. tit. 11 § 9-1109(4)(h) ......................................................................................................... 3

Me. Stat. tit. 11 § 9-1109(4)(n) .................................................................................................. 3

Neb. Rev. Stat. UCC § 9-109(d)(14)(A) ..................................................................................... 3

N.Y. Gen. Oblg. Law § 13-101(1) .............................................................................................. 5

N.Y. Jud. Law § 475 ................................................................................................................... 7

N.Y. U.C.C. Law § 9-109(a)(3), cmt. 15 .................................................................................... 2

N.Y. U.C.C. Law § 9-109(d) ...................................................................................................... 7

N.Y. U.C.C. Law § 9-109(d)(2) .................................................................................................. 7

N.Y. U.C.C. Law § 9-406(d) ...................................................................................................... 3

N.Y. U.C.C. Law § 9-406(h)(2) .................................................................................................. 2

N.Y. U.C.C. Law § 9-408(d)(1) .................................................................................................. 2

**Other Authorities**

*Black's Law Dictionary* (5th ed. 1979) ...................................................................................... 4

William F. Savino & David S. Widenor, *2002-2003 Survey of New York Law:
   Commercial Law*, 54 Syracuse L. Rev. 855 (2004) ............................................................. 3, 4

I.      **INTRODUCTION**

Class Counsel respectfully submits this reply memorandum in response to RD Legal's opening memorandum (ECF No. 8435) on the issue referred by Judge Preska of the Southern District of New York in connection with the CFPB Action: namely, whether the Anti-Assignment Provision prohibits the assignment of monetary awards (whether in whole or in part).[1]

None of RD Legal's arguments against the Anti-Assignment Provision hold water.  Its principal reliance on Article 9 of the UCC fails because the New York version of that law expressly exempts anti-assignment clauses relating to personal injury or sickness compensation payments from its bar against the enforceability of such clauses.  RD Legal's authorities are simply inapposite.  Section II.A, *infra*.

No more persuasive is RD Legal's argument that the Anti-Assignment Provision has a limited reach because it mentions the "Class Action Complaint" rather than the "Settlement Agreement" – and that, given that other sections of the Settlement Agreement expressly reference one or the other, this manifests an intention to limit the Anti-Assignment Provision's scope.  The Anti-Assignment Provision employs broad "relating to" language.  Moreover, as previously noted, the reason why provisions of the Settlement Agreement cited by RD Legal reference either the Settlement Agreement or the Class Action Complaint is readily apparent when each provision is examined in its respective context.  Section II.B, *infra*.

Nor is there any inconsistency between interpreting the Anti-Assignment Provision to

---

[1] This reply memorandum adopts all of the shorthand definitions employed in Class Counsel's opening memorandum (ECF No. 8434) ("Opening Br."). "RD Legal Br." refers to pages of RD Legal's opening memorandum (ECF No. 8435), and "Gov't Br." to pages of the joint opening memorandum of the CFPB and NYAG (ECF No. 8438).  Page references to those three documents and to any other docketed filing are to ECF pagination, not to pages of the original document.

prohibit assignments of monetary awards and the enforceability of the Settlement Agreement's lien provisions. Liens and equitable assignments, arising by operation of law, are quite distinct from legal assignments that pass title, and RD Legal's suggestion that interpreting the Anti-Assignment Provision as precluding assignments of monetary awards would also foreclose the enforceability of attorneys' and governmental liens is dubious. Section II.C, *infra*.

Finally, RD Legal's belated jurisdictional objection fails. Federal judges have wide latitude to consult one another in resolving matters, and MDL transferee judges may sit in any district. Judge Preska appropriately deferred to this MDL Court as to the Anti-Assignment Provision's interpretation given this Court's familiarity with the Settlement Agreement and the likelihood of this issue arising again as to other lenders to Class Members. Section II.D, *infra*.

## II. ARGUMENT: THE ANTI-ASSIGNMENT PROVISION BARS ASSIGNMENTS OF MONETARY AWARDS

### A. RD Legal's Reliance on the UCC Is Misplaced

RD Legal's central argument is one that it belatedly asserted in the CFPB Action, after the completion of briefing on its motion to dismiss – namely, that the Anti-Assignment Provision is void because Article 9 of the UCC renders such contractual provisions unenforceable and settled tort claims that have been reduced to a contractual obligation to pay are "payment intangibles" within the meaning of comment 15 to section 9-109(a)(3) of the UCC. RD Legal Br. at 13.

The UCC does not avail RD Legal. As previously noted (Opening Br. at 17), New York's version of the UCC renders Article 9 inapplicable to "a claim or right to receive compensation for injuries or sickness[.]" N.Y. U.C.C. Law § 9-408(d)(1); *accord id*. § 406(h)(2). The cases that RD Legal cites do not alter this result. All but one did not involve personal injury or sickness compensation payments. Therefore, the exemption of such

compensation from the Article 9 bar against anti-assignment clauses was plainly not at issue in those cases.[2] Only one case involved such payments, but *Am. Gen. Life Ins. Co. v. Alvarez*, No. 02-20419-CIV, 2003 WL 26089803 (S.D. Fla. Sept. 11, 2003), dealt with a now-superseded Texas UCC provision, and that court circumvented the Article 9 exemption for claims arising out of tort through the unsupported reasoning that the source of the settlement payments was really a contract. *Id*. at *8. At any rate, Texas has enacted the same exemption from Article 9 for personal injury and sickness compensation payments. *See Pain Control Inst., Inc. v. GEICO Gen. Ins. Co.*, 447 S.W.3d 893, 900 n.4 (Tex. App. 2014).[3]

---

[2] RD Legal points to *In re Montreal, Me. & Atl. Ry., Ltd.*, 799 F.3d 1, 7 (1st Cir. 2015), mentioning the treatment of settled tort claims as payment intangibles, but that language was pure *dictum* because the issue there was the right to payment under an insurance policy. Therefore, a different Article 9 exclusion (under Maine's UCC) applied – one that the First Circuit held applicable. *See id*. at 5-9 (rejecting argument that payments under insurance policy were not subject to Me. Rev. Stat. tit. 11, § 9-1109(4)(h)). More to the point, Maine's version of the UCC contains the *same* Article 9 exemption as New York's. *See* Me. Rev. Stat. tit. 11, § 9-1109(4)(n). Consequently, the Anti-Assignment Provision would be *enforceable* under that state's UCC. RD Legal's reliance on *In re Wiersma*, 324 B.R. 92 (B.A.P. 9th Cir. 2005), *aff'd in part and rev'd in part*, 483 F.3d 933, *aff'd*, 227 F. App'x 603 (9th Cir. 2007), is similarly misplaced. The issue there was whether the cash settlement of a lawsuit for damage to collateral constituted a "payment intangible" under Idaho's UCC. *Id*. at 99. That is off point because Idaho's UCC contains the *same* exemption as New York's for personal injury or sickness compensation payments. *See* Idaho Code § 28-9-109(d)(13)(A). Likewise, RD Legal's citation of *In re Wilson*, No. ADV. A10-4035-TJM, 2010 WL 5341917, at *3 (Bankr. D. Neb. Dec. 21, 2010), is unavailing because that case involved settlement proceeds from litigation over a builder's construction deficiencies. *Id*. at *1-3. The Nebraska UCC's similar (albeit narrower) exemption for personal injury and sickness compensation payments, Neb. Rev. Stat. Ann. UCC § 9-109(d)(14)(A), was thus not at issue there. Finally, RD's "*cf*." citation of *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, (S.D.N.Y. 2014), *objections overruled*, No. 12-CV-7183 (LAK), 2014 WL 3891326 (Aug. 8, 2014), also fails because the security interest at issue there was in future accounts receivable. *Id*. at 498, 509.

[3] RD Legal's citation of a survey of New York UCC law actually *undermines* its position because that survey's authors acknowledged the change wrought by then-recent statutory revisions, noting that "[w]hile Revised Article 9, Section 9-406(d) still generally treats as ineffective terms restricting assignment, *subsection (h)(2) does not treat as ineffective terms restricting an assignment of 'a claim or right to receive compensation for injury or sickness as described in 26 U.S.C. §104(a)(1) and (2).*' Thus, for purported secured loans against structured settlement payment perfected after July 1, 2001, neither [*In re Chorney*, 277 B.R. 477 (Bankr. W.D.N.Y. 2002)] nor Former Section 9-318(4) [repealed as of July 1, 2001] provide a means to render ineffective the typical anti-alienation provision within the structured settlement agreement itself." William F. Savino & David S. Widenor, *2002-2003*

3

Because Article 9 of the New York version of the UCC – which is what governs here, *see* Settlement Agreement § 27.1(a) [ECF No. 6481-1, at 95] – does not forbid the Anti-Assignment Provision, RD Legal's derivative argument that Class Counsel's position would result in an unlawful construction of the Settlement Agreement, RD Legal Br. at 19, necessarily founders.

**B.      The Anti-Assignment Provision Does Not Have the Limited Reach That RD Ascribes to It**

RD Legal next argues that the Anti-Assignment Provision has to be construed narrowly and that its reference to "the Class Action Complaint" [ECF No. 6481-1, at 96] limits its reach to Class Members' legal claims. RD Legal Br. at 15. It adds that because other provisions of the Settlement Agreement reference either the agreement or the complaint, the reference to the latter in the Anti-Assignment Provision reflects a conscious decision to limit its scope. *Id*. at 16-17.

None of this is persuasive. The Anti-Assignment Provision broadly states that no Class Member shall assign or attempt to assign "any rights or claims *relating to* the subject matter of the Class Action Complaint." Settlement Agreement § 30.1 [ECF No. 6481-1, at 96] (emphasis added). As the CFPB and NYAG noted in their opening memorandum (Gov't Br. at 7 & n.19 (citing cases)), the use of "relating to" language connotes a broad reach.[4] In other words, the Anti-Assignment Provision extends to *any right or claim touching upon* the operative class pleading, and that undoubtedly includes the right to receive proceeds under the settlement of the

---

*Survey of New York Law: Commercial Law*, 54 Syracuse L. Rev. 855, 926 (2004) (footnotes omitted; emphasis added).

[4] *See People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 23 (N.Y. 2008) ("'The ordinary meaning of [the phrase "relating to"] is a broad one—to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with[.]'") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (in turn citing *Black's Law Dictionary* 1158 (5th ed. 1979))); *cf. State v. Philip Morris Inc.*, 813 N.Y.S.2d 71, 75 (App. Div. 1st Dep't 2006) ("The terms 'arising out of,' and most particularly 'relating to,' certainly evince a broad arbitration clause[.]") (citing cases), *aff'd*, 869 N.E.2d 636 (N.Y. 2007).

claims asserted in that pleading. *See* Opening Br. at 13.

Because the Anti-Assignment Provision employs broad "relating to" language, RD Legal's reliance (RD Legal Br. at 15) on *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549 (S.D.N.Y. 2016), for the proposition that anti-assignment clauses must be narrowly construed is misplaced. Besides, what was at issue in *Au New Haven* was an ambiguity as to what certain "hereunder" language was referring to. *See id.* at 555-56. There is no such ambiguity here.

Furthermore, Class Counsel already explained that, rather than reflecting the settling parties' conscious decision to expand or contract the scope of the Settlement Agreement provisions cited by RD Legal, the reason why those provisions referred to the Settlement Agreement or the Class Action Complaint (as the case may be) is readily apparent when each of those provisions is examined in its respective context. Opening Br. at 13-15.

Although RD Legal insists that rules of interpretation dictate that the Anti-Assignment Provision is narrow and prohibits only legal claims from being assigned, RD Legal Br. at 15, its interpretation violates canons of construction by rendering the provision utterly meaningless. As previously noted (Opening Br. at 11-12), the Settlement Agreement elsewhere *releases* Class Members' claims. Indeed, the release of claims explicitly extends to Class Members' respective successors and assigns. Settlement Agreement § 18.1(a) [ECF No. 6481-1, at 76]. What is more, New York (whose law governs the Settlement Agreement's interpretation) *already prohibits* the assignment of personal injury claims *by statute*. *See* N.Y. Gen. Oblg. Law § 13-101(1) ("Any claim or demand can be transferred, except . . . [w]here it is to recover damages for a personal injury[.]"). Thus, whether by reason of the Settlement Agreement's release provision or New York statutory law, there is no legal claim of any Class Member to assign in

5

the first place.[5]

Additionally, as also previously noted (Opening Br. at 12), RD Legal's interpretation would yield a nonsensical result, inasmuch as the Anti-Assignment Provision states that "the Claims Administrator shall not recognize" any attempted assignment, and it would be for a court, not a settlement administrator, to adjudicate legal claims.

In short, RD Legal's interpretation of the Anti-Assignment Provision reduces the provision either to a hollow redundancy or an absurdity. Undoubtedly, then, the Anti-Assignment Provision was intended to achieve a much different objective than foreclosing Class Members from assigning their legal claims – and that is to prohibit them from assigning their monetary awards. RD Legal's seeking refuge in truisms about the narrow interpretation of anti-assignment clauses is thus unavailing. As the New York Court of Appeals aptly put it long ago:

> Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish. The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed.

*William C. Atwater & Co. v. Panama R.R. Co.*, 159 N.E. 418, 419 (N.Y. 1927) (internal citations omitted).[6]

### C. Class Counsel's Interpretation of the Anti-Assignment Provision Is Fully Consistent with Other Parts of the Settlement Agreement

RD Legal also declares that Class Counsel's reading of the Anti-Assignment Provision conflicts with other sections of the Settlement Agreement and would prohibit the enforcement of

---

[5] That New York law does not prohibit the assignment of the proceeds of a personal injury claim, RD Legal Br. at 15 (citing *In re Mucelli*, 21 B.R. 601, 603 (Bankr. S.D.N.Y. 1982)), is completely beside the point. The issue here is whether the *settling parties* prohibited such assignments by contract, not whether state law forbids them.

[6] Similarly, RD Legal's citation of authority for the proposition that only express limitations of assignability are enforceable, RD Legal Br. at 16, miscarries for the simple reason that the Anti-Assignment Provision *is* an express limitation.

6

liens. *See* RD Legal Br. at 17-19. That contention, too, is without merit.

To begin with, Class Counsel has not categorically maintained that monetary awards cannot be alienated for any purpose. In fact, the Settlement Agreement acknowledges the legitimacy of liens by expressly defining what liens are recognized, entrusting the handling of lien issues to a Lien Resolution Administrator, and establishing a formal lien resolution process. Settlement Agreement §§ 2.1(uu)-(vv), 11.1-11.6 [ECF No. 6481-1, at 14, 63-68].

Liens and assignments, though, are not synonymous. The CFPB's and NYAG's opening brief points out the distinctions between the two. *See* Gov't Br. at 9 & nn.24-28. RD Legal's attempt to equate them fails. Nor are the putative assignments here the same as governmental (*i.e.*, Medicare and Medicaid) and health insurers' liens. *See* RD Legal Br. at 17-18. RD Legal's only support for that contention is its untenable UCC "payment intangibles" theory. Thus, there is no inconsistency between the Settlement Agreement forbidding Class Members from assigning their rights while honoring liens asserted against them.[7]

RD Legal's suggestion that Class Counsel's position would render attorneys' liens unenforceable is especially dubious. In New York, attorneys' liens attach by operation of statute, not as assignments. *See* N.Y. Jud. Law § 475; *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997) (noting that statute codified and enlarged common law concept of charging liens).[8] Even if some older cases viewed contingent fees as a form of *equitable* assignment, *see* RD Legal Br. at 18 (citing cases), that is not at odds with the Anti-Assignment

---

[7] Even accepting RD Legal's faulty equivalence between liens and assignments, the Settlement Agreement's detailed lien provisions would represent a carve-out from the Anti-Assignment Provision.

[8] That being the case, attorneys' liens are exempt from the New York UCC's coverage. *See* N.Y. U.C.C. Law § 9-109(d), (d)(2) (save agricultural liens, UCC Article 9 does not apply to liens that that are for (i) for services or materials and (ii) are conferred by statute or other rule of law).

7

Provision, which forbids Class Members from "assign[ing], or . . . attempt[ing] to assign . . . any rights or claims," Settlement Agreement § 30.1 [ECF No. 6481-1, at 96] – in other words, from making *legal* assignments.[9]

As for RD Legal's citation of *Commissioner v. Banks*, 543 U.S. 426 (2005), Class Counsel has already explained (Opening Br. at 16) that *Banks* held only that the legal fiction of the anticipatory assignment doctrine *under tax law* defeated attempts to avoid lawyers' interest in their clients' recoveries from being charged to the clients as income, *id*. at 433-36, and the Supreme Court in no way declared that attorneys' portions are full-fledged legal assignments.

Nor, contrary to RD Legal's assertion (RD Legal Br. at 18), does the Amended Final Order and Judgment contemplate assignments. Here, RD Legal mixes apples and oranges. The language cited by RD Legal is a mutual declaration that the Settlement Agreement is forever binding on the settling parties and, *inter alia*, their assigns (that is, anyone stepping into their shoes). ECF No. 6534, at 7 (¶ 19). That language is chiefly directed at the NFL Parties, and guards against settlement obligations being defeated by any corporate restructuring or sale of assets. In contrast, the Anti-Assignment Provision is directed only at Class Members, prohibiting them from assigning or attempting to assign any right or claim.

### D. The Court Should Overrule RD Legal's Belated Jurisdictional Objection

Finally, almost as a throwaway argument, RD Legal maintains that the referral of the assignability issue to this Court is unlawful and that, therefore, the Court should decline to answer the question that Judge Preska referred to it. RD Legal Br. at 19-20.

The Court should overrule this objection. RD Legal never previously protested the

---

[9] *See In re Hawley Down-Draft Furnace Co*, 233 F. 451, 454 (E.D. Pa. 1916) (distinguishing legal and equitable assignments; noting that, in case of former, legal title passes); *cf. United States ex rel. Rille v. Hewlett Packard Co.*, No. 4:04CV00989-BRW, 2011 WL 6411486, at *2 (E.D. Ark. Dec. 21, 2011) (Anti-Assignment Act did not prohibit attorney's lien that arose by operation of Arkansas law).

8

referral of the assignability issue to this Court on jurisdictional grounds, either when Class Counsel proposed it to Judge Preska,[10] in the immediate aftermath of Judge Preska's issuance of her referral order, or in the parties' court-directed meet-and-confer discussions in accordance with that order.

Putting aside the objection's timing, there is nothing improper about the referral order. Although it may be atypical, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution[s]." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Because courts have broad leeway in managing their dockets, *e.g.*, *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982), nothing precludes one district judge from consulting another on a specific question – particularly where, as here, the latter possesses familiarity with matters underlying the litigation pending before the former and the issue has broad ramifications in the implementation of a nationwide settlement overseen by the latter.[11]

Importantly, Judge Preska did not refer the assignability issue to merely any cognate district court but, rather, to the *MDL court* presiding over the implementation of the Settlement Agreement that underlies, in part, the CFPB's and NYAG's claims against RD Legal. Because an MDL judge is authorized to "exercise the powers of a district judge *in any district* . . . in such coordinated or consolidated pretrial proceedings," 28 U.S.C. § 1407(b) (emphasis added), the

---

[10] *See Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV00890 (LAP) (S.D.NY.), ECF Nos. 46 and 57 (RD Legal's opposition and follow-up letters to Class Counsel's request for leave to file *amicus curiae* brief, raising no jurisdictional objection to alternative proposed referral of assignability issue to this Court, arguing only that issues in CFPB Action should not be "tied own" in this "preexisting MDL").

[11] *Cf. Nat'l Credit Union Admin. Bd. v. RBS Secs., Inc.*, No. CV 11-5887-GW(JEMX), 2014 WL 12597071, at *2 (C.D. Cal. June 10, 2014) (in multiple related actions, S.D.N.Y. judge was designated as coordination judge, who would consult with fellow judges in Kansas and California).

9

Court can treat Judge Preska's referral order as tantamount to it sitting in the Southern District of New York for the limited purpose of resolving the discrete question in the referral order. Alternatively, the Court can construe the referral order more narrowly as a request for its opinion, leaving to Judge Preska the ultimate adjudication of the assignability issue in the CFPB Action. Either way, Judge Preska's referral order furthers both (i) the interests of comity among federal courts (in that the referred issue is one likely to present itself as to other lenders besides RD Legal, and most likely in this Court), and (ii) central objectives of MDL centralization, which are achieving efficiency and consistency.[12]

### III. CONCLUSION

For the foregoing reasons and those set forth in Class Counsel's and the CFPB's and NYAG's opening memoranda, the Court should hold that the Settlement Agreement prohibits assignments of monetary awards under the Settlement Agreement, including the putative assignments made by Class Members to RD Legal.

---

[12] *See In re Welding Rod Prods. Liab. Litig.*, 406 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (referring motion to quash to MDL court as to "best serve the interests of justice, judicial efficiency, and consistency underlying the MDL rules," given that MDL litigation was complex and judge presiding over it was "readily familiar with the underlying issues," having "already spent considerable time and effort coordinating the pretrial proceedings, including the resolution of extra-district non-party discovery disputes and the parties' *Daubert* motions"). Courts have also deferred to cognate district courts even when the latter are not MDL transferee courts. *E.g.*, *Kearney for Kearney v. Jandernoa*, 172 F.R.D. 381, 383 (N.D. Ill. 1997) (resolution of request for protective order by Western District of Michigan would "foster uniformity and judicial economy"); *Socialist Workers Party v. Attorney Gen.*, 73 F.R.D. 699, 701 (D. Md. 1977) (acceptance of argument that motion for protective order could not be transferred to district where action was pending accepting "would mean that no matter how complicated the case in the foreign Court might be, or how long it has been going on, or what relationship exists between the subject matter of the issues raised in the foreign Court and other similar procedural and substantive issues in the Court in which the case is pending, it would be impossible to transfer to that Court"); *Cent. States, Se., and Sw. Area Pension Fund v. Cuyahoga Dairy, Inc.*, No. 1:15-MC-00041, 2015 WL 6444897, at *2 (N.D. Ohio Oct. 23, 2015) ("[j]udicial efficiency and comity among the district courts counsel[ed] in favor of deferring to Northern District of Illinois" on motion to vacate judgment); *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-4909 SI, 2009 WL 1313193, at *2 (N.D. Cal. May 12, 2009) ("[i]n the interest of comity and conservation of the parties' and the judiciary's resources," court deferred to decision of judge in Eastern District of Texas and transferred action).

Dated: October 13, 2017

        Respectfully submitted,

        /s/ *Christopher A. Seeger*
        Christopher A. Seeger
        SEEGER WEISS LLP
        77 Water Street
        New York, NY 10005
        Phone: (212) 584-0700
        cseeger@seegerweiss.com
        ***Co-Lead Class Counsel***

        Sol Weiss
        ANAPOL WEISS
        One Logan Square
        130 N. 18th Street, Suite 1600
        Philadelphia, PA 19103
        Phone: (215) 735-1130
        sweiss@anapolweiss.com
        ***Co-Lead Class Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on October 13, 2017.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
