**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and THE PEOPLE OF THE STATE OF NEW YORK, BY ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL FOR THE STATE OF NEW YORK,<br><br>      Plaintiffs,<br><br>      v.<br><br>RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ,<br><br>      Defendants. | CASE NO. 1:17-cv-00890 (LAP)<br><br>**RD LEGAL'S MOTION ON REMAND TO DISMISS** |

CALCAGNI & KANEFSKY LLP
ERIC KANEFSKY
 *Eric@ck-litigation.com*
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102

KING & SPALDING LLP
DAVID K. WILLINGHAM (*pro hac vice*)
 *dwillingham@kslaw.com*
MICHAEL D. ROTH (*pro hac vice*)
 *mroth@kslaw.com*
633 W. Fifth St., Suite 1600
Los Angeles, California 90071
Phone: (213) 443-4355 / Fax (213) 629-9022

CALDWELL HAMMER LLP
JEFFREY M. HAMMER (*pro hac vice*)
 *jhammer@caldwellhammer.com*
633 W. Fifth St., Ste. 1710
Los Angeles, CA 90071
Phone: (213) 712-1390

Attorneys for Defendants RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1
II. BACKGROUND .....................................................................................................................2
III. THE RATIFICATION DOCTRINE DOES NOT APPLY .....................................................3
    A. The Ratification Doctrine Applies When an Agent Acts Without Authority ..........3
    B. The Ratification Doctrine Cannot Cure Unauthorized Acts by a Principal .............5
IV. EVEN IF THE RATIFICATION DOCTRINE APPLIES, DIRECTOR KRANINGER'S ACTIONS WERE INEFFECTIVE AND UNTIMELY ..........................9
    A. The CFPB Lacked Authority To Sue When It First Brought This Action (And Noticed Its Appeal) ........................................................................................10
    B. The CFPB Lacked Authority To Ratify This Suit After The Statute of Limitations Had Run ...............................................................................................11
V. CONCLUSION ......................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Disposal Servs. E., Inc. v. NLRB*,
  820 F.3d 592 (3d Cir. 2016) ................................................................................................. 12

*Benjamin v. V.I. Port Auth.*,
  684 F. App'x 207 (3d Cir. 2017) ........................................................................................... 12

*CFPB v. All American Check Cashing, Inc., et al.*,
  No. 18-60302 (5th Cir.) ......................................................................................................... 13

*CFPB v. Cashcall, Inc.*,
  No. 18-55407 (9th Cir.) ......................................................................................................... 13

*CFPB v. Citizens Bank, N.A.*,
  2020 WL 7042251 (D.R.I. 2020) ..................................................................................... 7, 13

*CFPB v. Gordon*,
  819 F.3d 1179 (9th Cir. 2016) ............................................................................................ 6, 8

*CFPB v. Navient Corp.*,
  No. 3:17-CV-101, 2021 WL 134618 (M.D. Pa. Jan. 13, 2021) ............................................. 12

*CFPB v. Navient Corp.*,
  No. 3:17-CV-101, 2021 WL 772238 (M.D. Pa. Feb. 26, 2021) ............................................ 12

*CFPB v. Seila Law LLC*,
  984 F.3d 715 (9th Cir. 2020) ..................................................................................... 7, 10, 12

*Clews v. Jamieson*,
  182 U.S. 461 (1901) ................................................................................................................ 8

*Collins v. Mnuchin*,
  Case No. 19-422 .................................................................................................................... 11

*Cook v. Tullis*,
  85 U.S. 332 (1873) .............................................................................................................. 8, 9

*Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*,
  139 F.3d 203 (D.C. Cir. 1998) .............................................................................................. 12

*FEC v. NRA Political Victory Fund*,
  513 U.S. 88 (1994) ........................................................................................................ *passim*

*FEC v. NRA Political Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) .................................................................................... 9, 10

*Fitzgerald v. McFadden*,
    88 F.2d 639 (2d Cir. 1937) ............................................................................................ 9

*GDG Acquisitions LLC v. Government of Belize*,
    849 F.3d 1299 (11th Cir. 2017) .................................................................................... 4

*Kristensen v. Credit Payment Servs. Inc.*,
    879 F.3d 1010 (9th Cir. 2018) ...................................................................................... 5

*Leviten v. Bickley, Mandeville & Wimple, Inc.*,
    35 F.2d 825 (2d Cir. 1929) ............................................................................................ 8

*LHC Nashua P'ship, Ltd. v. Sagamore Nashua, L.L.C.*,
    659 F.3d 450 (5th Cir. 2011) ........................................................................................ 9

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) ................................................................................................ 10

*Mnuchin v. Collins*,
    No. 19-563 (U.S.) ........................................................................................................ 13

*Newman v. Schiff*,
    778 F.2d 460 (8th Cir. 1985) ........................................................................................ 9

*Noel Canning v. NLRB*,
    705 F.3d 490 (D.C. Cir. 2013) ...................................................................................... 9

*Parmenter v. Fed. Deposit Ins. Corp.*,
    925 F.2d 1088 (8th Cir. 1991) ...................................................................................... 5

*Perry v. Scruggs*,
    17 F. App'x 81 (4th Cir. 2001) ..................................................................................... 5

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ........................................................................................ *passim*

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014) .......................................................................................... 1

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001) ............................................................................................ 1

*In re Vargas Realty Enter., Inc.*,
    440 B.R. 224 (S.D.N.Y. B.R. 2010) .............................................................................. 9

*Wilkes-Barre Hosp. Co. v. NLRB*,
    857 F.3d 364 (D.C. Cir. 2017) ................................................................................. 4, 6

**Statutes**

12 U.S.C. § 5564(a)-(b) ..................................................................................................... 8

12 U.S.C. § 5564(g)(1) .................................................................................................... 13

**Other Authorities**

Restatement (Second) of Agency § 82 (1958) .................................................................. 4

Restatement (Second) Of Agency § 84 (1958) .................................................................. 6

Restatement (Second) of Agency § 90 (1958) ................................................................. 11

Restatement (Second) of Agency § 90 cmt. A (1958) ..................................................... 11

Restatement (Third) of Agency § 4.01(1) (2006) .............................................................. 4

Restatement (Third) of Agency § 4.02 (2006) ................................................................... 4

Restatement (Third) of Agency § 4.03 (2006) ............................................................... 5, 7

Restatement (Third) Of Agency § 4.03 cmt b (2006) ........................................................ 4

Restatement (Third) Of Agency § 4.04 (2006) .................................................................. 5

I.      INTRODUCTION

Defendants RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "RD Legal") move on remand to dismiss this enforcement action filed by the Consumer Financial Protection Bureau ("CFPB") because it was brought by an unconstitutionally constituted agency, and the CFPB's untimely attempt to subsequently ratify this action cannot cure the agency's constitutional infirmity.

Here is what is *not* in front of this Court.  First, whether the CFPB's structure violated the Constitution has been conclusively determined.  This Court was right, and the CFPB wrong.  In *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192, 2202 (2020), the Supreme Court unequivocally held that the CFPB's "structure" "violate[d] the separation of powers."  Second, former-Director Kathleen Kraninger's attempted ratification is the only one at issue here.  This Court previously rejected then-Acting Director Mick Mulvaney's attempted ratification, and the CFPB did not challenge that decision on appeal.  Accordingly, the Second Circuit specifically "remand[ed] for the district court to consider in the first instance the validity of *Director Kraninger's* ratification of this enforcement action."[1]  (ECF No. 119 (emphasis added.))

The questions before this Court on remand are thus narrow and specific:  first, whether ratification applies at all to separation-of-powers violations like this—a question *Seila Law* left open; and second, even if it does, whether Director Kraninger's attempt to ratify the CFPB's initial bringing of the enforcement action—long after the statute of limitations for doing so had run—can remedy the underlying constitutional violation.  The answer to both questions is no.

---

[1] *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (where mandate was "unambiguously limited in scope," court could not consider extraneous issues or reopen issues that were ripe but not raised in initial appeal).

## II.   BACKGROUND

The CFPB filed this enforcement action with the New York Attorney General on February 7, 2017.  (ECF No. 1.)  This Court initially dismissed the case holding that the CFPB's structure was unconstitutional and the Consumer Financial Protection Act not severable.  (ECF No. 80.)  While that decision was pending on appeal, the Supreme Court decided *Seila Law*.  The Second Circuit then summarily affirmed this Court's constitutionality ruling, reversed the severability ruling, and remanded for the Court to consider whether former-Director Kraninger had validly ratified this enforcement action while this case was on appeal.  (ECF No. 119.)

This is not the CFPB's first tilt at ratification.  On May 11, 2018, then-Acting Director Mulvaney filed a purported ratification of the bringing of this action before this Court.  This Court, however, *rejected* that attempt at ratification.  (ECF No. 80 at 101-03.)  As this Court correctly concluded, the "CFPB's Ratification does not address accurately the constitutional issue raised in this case, which concerns the structure and authority of the CFPB itself, *not* the authority of an agent to make decisions on the CFPB's behalf."  (*Id.* at 101 (emphasis added).)  The CFPB did not contest this determination on appeal.  (CA Dkt. 114 at 14 n.5.)

Instead, after the Supreme Court decided *Seila Law* and while this case was on appeal, the CFPB's then-Director Kraninger submitted a declaration dated July 8, 2020.  (CA Dkt. No. 237-2.)  In that declaration, she asserted that she understood she was removable for cause, that she had considered the bases for bringing the enforcement action and for appealing its dismissal, and that she ratified both decisions.  (*Id.*)  That declaration came more than three years after the CFPB brought this enforcement action and nearly two years after it filed its notice of appeal—well beyond the statutory periods for either.  *See* 12 U.S.C. § 5564(g)(1) (three year statute of limitations); Fed. R. App. P. 4(a)(1)(B)(ii) (requiring notice of appeal be filed within 60 days where a federal agency is a party).  The Second Circuit declined to reach the propriety of that

2

attempted ratification on appeal, instead remanding for this Court to consider its validity "in the first instance."[2] (ECF No. 119 at 4.)

### III. THE RATIFICATION DOCTRINE DOES NOT APPLY

As an initial matter, the Supreme Court did not assume, let alone decide, that ratification could as a legal matter cure the CFPB's constitutional violations. And for good reason: The separation of powers challenge that RD Legal raised to the CFPB's structure, and which was decided in *Seila Law*, involved the structure and authority of the CFPB itself, not an agent's lack of authority to make decisions on behalf of the CFPB. The problem, as the Supreme Court saw it, was not too little power, but too much. *Seila Law*, 140 S. Ct. at 2201, 2203 (repeatedly emphasizing the "significant" power accorded the CFPB director).[3] In the CFPB's view, the solution to those two problems is the same (and effectively toothless as a sanction). It is not. Accordingly, as this Court previously concluded when considering the CFPB's prior attempted ratification, the doctrine itself—which operates to give effect to the acts of an agent acting without authority—is irrelevant here. (ECF No. 80 at 101.)

#### A. *The Ratification Doctrine Applies When an Agent Acts Without Authority*

The fundamental problem with applying the ratification doctrine here is that ratification is a principle of agency law employed when a purported agent acts without authority, but the CFPB seeks to apply ratification not to the acts of an agent (the Director), but to the filing of this

---

[2] The Second Circuit's mandate did not instruct this Court to address the validity of Director Kraninger's untimely attempt to ratify the CFPB's notice of appeal. That issue is still potentially ripe for Supreme Court review, and RD Legal continues to consider whether to petition for certiorari.

[3] That is also consistent with the fact that the Supreme Court did not focus simply on the absence of for-cause removal. To the contrary, it acknowledged that "several other features of the CFPB combine to make the Director's removal protection even more problematic" because "the agency's unique structure also forecloses certain indirect methods of Presidential control." *Seila Law*, 140 S. Ct. at 2204.

enforcement action by the principal itself (the CFPB).  *See FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994) (hereinafter "*NRA Victory Fund*").  That it cannot do.

"[R]atification starts with the assumption that the *agent* did not have actual authority at the time he acted," *GDG Acquisitions LLC v. Government of Belize*, 849 F.3d 1299, 1310 (11th Cir. 2017), and addresses the effect of a *principal*'s subsequent approval of that action.  *See also Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) ("[R]atification occurs when a principal sanctions the prior actions of its purported agent.") (citation omitted).  This fundamental premise is recognized in both the Restatement (Second) of Agency and the Restatement (Third) of Agency.  *See* Restatement (Second) of Agency § 82 (1958) (ratification gives effect to unauthorized act of an agent); Restatement (Third) of Agency § 4.01(1) (2006) (defining ratification as "the affirmance of a prior act done *by another*, whereby the act is given effect as if done by an agent acting with actual authority") (emphasis added).  The Restatement (Third) of Agency even explains that the result of a valid ratification is to give effect to the agent's act as if had been done with "actual authority."  Restatement (Third) of Agency § 4.02 (2006).  Ratification is about attribution—when a principal can properly be held responsible for an act by an otherwise unauthorized agent.

But here the constitutional problem was not simply that of the authority of a single, unremovable officer, but of the unconstitutionally structured agency as a whole.  Put differently, the problem was not an agent with too little authority, but a principal with too much.  That is not a situation to which agency law or ratification applies.

When a situation involves conduct by "an actor [who] is not an agent and does not purport to be one," the doctrine of ratification does not apply.  Restatement (Third) Of Agency § 4.03 cmt b (2006).  In situations (like here) involving the unauthorized conduct of the principal itself or conduct by someone not purporting to act as an agent, "the agency-law doctrine of

4

ratification is not a basis on which another person may become subject to the legal consequences of the actor's conduct. *Other bodies of law govern the circumstances under which such a consequence might occur*." Restatement (Third) of Agency § 4.03 (2006) (emphasis added). Unlike ratification, though, those other bodies of law do not relate back. *See also id.* § 4.04 (explaining, for example, that "a person not in existence at the time of an act or transaction may not subsequently ratify it," but "may elect to be bound" by the act through doctrine of adoption, which does not relate back).

### B. *The Ratification Doctrine Cannot Cure Unauthorized Acts by a Principal*

Because ratification is a creature of agency law, the doctrine does not apply to situations that do not involve purported agents acting without authority. *See, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("When an actor is not an agent and does not purport to be one, the doctrine of ratification does not apply.") (quoting Restatement (Third) of Agency § 4.03)); *Perry v. Scruggs*, 17 F. App'x 81, 91 n.1 (4th Cir. 2001) (finding "doctrine of ratification does not apply" where situation did not involve a purported agent acting without authority); *Parmenter v. Fed. Deposit Ins. Corp.*, 925 F.2d 1088, 1093 n.1 (8th Cir. 1991) ("[I]f no agency relationship exists at all, the doctrine of ratification does not apply.") (quoting H. Rueschlein & W. Gregory, The Law of Agency and Partnership, § 27, at 73 (2d ed. 1990)).

As this Court correctly recognized previously, the constitutional issues here "concern the structure and authority of the CFPB itself, not the authority of an agent to make decisions on the CFPB's behalf." (ECF No. 80 at 101.) Indeed, as explained in *Seila Law*, the constitutional issues were not whether Director Cordray acted within his authority in purporting to authorize the CFPB to take action in the first instance, but whether at that time, the CFPB's structure violated the separation of powers. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2192 ("We therefore hold

5

that the structure of the CFPB violates the separation of powers."). The Court in *Seila Law* recognized that the problem with CFPB's structure was that it allowed the Director to wield *too much* unchecked authority, not that the Director was acting *without* authority. *See id.* at 2191 ("[T]he Director wields vast rulemaking, enforcement, and adjudicatory authority over a significant portion of the U. S. economy.").

By contrast, to support its ratification efforts, the CFPB has previously relied upon cases involving agency officials serving in violation of the Appointments Clause. In those cases, unlike here, the agency officials (the agents) *are* acting without authority on behalf of the principal (the agency). Therefore, they fall squarely within proper scope of the ratification doctrine. *See CFPB v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (holding that, after invalidation of CFPB Director's recess appointment, the Director's "ratification, done after he was properly appointed as Director, resolves any Appointments Clause deficiencies"); *see also Wilkes-Barre*, 857 F.3d at 371 (holding that, after invalidation of Board members' recess appointments, NLRB properly ratified the appointment of its Regional Director who, in turn, ratified his prior unauthorized actions).

This case stands in stark contrast to *Gordon*, the primary case upon which the CFPB has relied. *Gordon* involved an enforcement action initiated during former-Director Cordray's invalid recess appointment. 819 F.3d at 1185-86. The Ninth Circuit held that Cordray's subsequent ratification of his own prior authorization of the action was sufficient, because the principal (the CFPB itself) had the authority to bring the enforcement action and the issue was Cordray's authority as director during his invalid recess appointment. *Id.* at 1191. *Gordon* thus expanded traditional notions of ratification and stands for the principle that an authorized agent can ratify *its* own prior unauthorized decisions. Even *Gordon*, however, does not stand for the principle that an authorized agent can ratify the prior *unauthorized acts of the principal*. In that

situation, the ratification doctrine does not apply.  *See* Restatement (Second) Of Agency § 84 (1958) (principal "cannot ratify" an act "which, when done" could not have been done by the principal); Restatement (Third) Of Agency § 4.03 (2006) (other doctrines, not ratification, apply when actor is not an agent).

Following *Seila Law*, courts that have addressed CFPB ratification have mostly *not* addressed the threshold question whether the ratification doctrine can apply to a situation where *an agent* is attempting to ratify the unauthorized acts of *the principal*.  For example, on remand in *Seila Law*, the Ninth Circuit reframed the Supreme Court's decision as pertaining solely to the Director's authority, not the authority of the CFPB itself.  *See CFPB v. Seila Law LLC*, 984 F.3d 715, 719 (9th Cir. 2020).  To do so, the Ninth Circuit concluded that if there had been a structural defect with the CFPB, the Supreme Court would not have remanded the case to determine if there was a valid ratification.  *Id.*; *see also CFPB v. Citizens Bank, N.A.*, 2020 WL 7042251, at *8 (D.R.I. 2020) (declining to condemn "all past (or just all pending) CFPB actions, without the possibility of ratification" because of potential for regulatory disruption).  But these opinions misread the Supreme Court's decision.[4]  The Supreme Court expressed *no view* on

---

[4] Decisions like *Citizens Bank* apparently declined to provide a meaningful remedy for the underlying constitutional violation even where there is no timely or proper ratification because the proper remedy (dismissal) would be, in its view, too sweeping.  Those concerns are misplaced.  First, absent some incentive to observe important constitutional limits in determining agency authority and structure (and for litigants to enforce them), those limits will inevitably erode.  To suggest that there should be *no* effective remedy undercuts the seriousness of those violations and the underlying separation of powers principles.  Second, those courts simply assumed that sweeping dismissals of every agency action would be required and concluded that that was too high a constitutional price.  That is wrong:  when there is no timeliness issue, the CFPB can always redo its action. It can, for example, issue a new civil investigative demand.  Thus, even if ratification *could* apply, it is only where, as here, the action in question must be done within a particular limitations period *and* the ratification occurs outside that period, that an agency's action cannot be redone or adopted.  *See infra*, Section IV.B.  And third, the reasoning of these courts ignores the fact that other state and federal enforcement agencies exist (and as in (footnote continued)

whether the ratification doctrine applies or whether there had, in fact, been a valid ratification. Instead, the Court expressly remanded the ratification issue because "[t]he parties dispute whether this alleged ratification in fact occurred and *whether, if so, it is legally sufficient to cure the constitutional defect in the original demand*. That debate turns on case-specific factual and legal questions not addressed below and not briefed [to the Supreme Court]." *Seila Law*, 140 S. Ct. at 2208 (emphasis added). *Seila Law* expressly *did not* address the *legal sufficiency* of the ratification doctrine itself and does not allow courts to make an end-run around the fact that, as a matter of law, the *ratification doctrine does not apply* to an agent's attempt to ratify an unconstitutionally structured principal's past acts.

Unlike the issues in *Gordon*, the constitutional infirmity here implicated the CFPB's authority—*i.e.,* the authority of the principal—to bring this action in the first place. Simply put, this case was filed and prosecuted by the CFPB (the principal) itself, not Director Cordray (the agent). *See* 12 U.S.C. § 5564(a)-(b) (enforcement actions may be brought in Bureau's own name). It thus involves the CFPB's past actions while its structure violated the separation of powers, and that violation arose from the Director's excess of authority, not the absence of it. That problem could not be ratified by Director Kraninger because the constitutional problem does not implicate agency or ratification principles at all. If the principal, once properly constructed, acts in exactly the same way as before, that is a new act, not a ratification of a prior act. As a new act, the principal must then comply with all ordinary jurisprudential rules, such as statutes of limitations and the like.

---

this case, the New York Attorney General) that have aggressively sought to enforce the same claims as the CFPB and therefore the remedy is limited.

There is no basis for the CFPB's claim that an agent (Director Kraninger) may ratify the prior act of the principal (the CFPB). To the contrary, neither the Supreme Court nor the Second Circuit have even gone as far as *Gordon* (i.e., to allow a now-authorized agent to ratify its own prior unauthorized acts) and instead for nearly 150 years have described ratification in its common law terms as a *principal* ratifying the unauthorized acts of an *agent*, not an agent ratifying the unauthorized acts of the principal. *See, e.g.*, *Cook v. Tullis*, 85 U.S. 332 (1873) (describing ratification by principal of acts by "an individual pretending to be an agent"); *Clews v. Jamieson*, 182 U.S. 461, 483 (1901) ("A principal can adopt and ratify an unauthorized act of his agent . . . ."); *Leviten v. Bickley, Mandeville & Wimple, Inc.*, 35 F.2d 825, 827 (2d Cir. 1929) ("Ratification" is the "subsequent adoption" by a principal of an act done by another "while purporting to act as [that principal's] agent"); *see also In re Vargas Realty Enter., Inc.*, 440 B.R. 224, 234 (S.D.N.Y. B.R. 2010) ("Ratification is the express or implied adoption" by the principal of "the unauthorized acts of an agent.") (cleaned up). To apply ratification here would stretch the doctrine beyond recognition.

## IV. EVEN IF THE RATIFICATION DOCTRINE APPLIES, DIRECTOR KRANINGER'S ACTIONS WERE INEFFECTIVE AND UNTIMELY

Even if this Court were to conclude that ratification is theoretically applicable (and to be clear, it is not), Director Kraninger's belated attempt at ratification nevertheless fails. For a ratification to be effective, "it is essential that the party ratifying [*i.e.*, the principal] should be able" (1) "to do the act ratified at the time the act was done," and (2) "also at the time the ratification was made." *NRA Victory Fund*, 513 U.S. at 98 (cleaned up). That two-prong test dates back to at least 1873 and continues to be binding precedent. *See Cook*, 85 U.S. at 339. To satisfy the test, the party seeking to assert ratification must satisfy both prongs, but the CFPB can satisfy neither. *Fitzgerald v. McFadden*, 88 F.2d 639, 643 (2d Cir. 1937) (burden on party asserting

9

ratification); *see also LHC Nashua P'ship, Ltd. v. Sagamore Nashua, L.L.C.*, 659 F.3d 450, 461 (5th Cir. 2011) (noting that "one seeking to prove ratification" bears the burden of proof).

### A. The CFPB Lacked Authority To Sue When It First Brought This Action (And Filed Its Notice Of Appeal)

The CFPB cannot satisfy the first prong of the *NRA Victory Fund* test for the simple reason that ratification cannot "give legal significance to an act which was a nullity from the start." *Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir. 1985). An unconstitutionally structured agency "lacks authority to bring [an] enforcement action." *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993) ("*Victory Fund I*"); *see, e.g.*, *Noel Canning v. NLRB*, 705 F.3d 490, 493, 514 (D.C. Cir. 2013), *aff'd sub nom. NLRB v. Noel Canning*, 573 U.S. 513, 557 (2014) (structural constitutional defect made the NLRB's proceedings "void *ab initio*"). Accordingly, the appropriate remedy for such a constitutional violation is dismissal. *Victory Fund I*, 6 F.3d at 828 (when a regulated party "raise[s] [a] constitutional challenge as a defense to an enforcement action," "no theory . . . would permit [a court] to declare the [agency's] structure unconstitutional without providing relief"); *see also Seila Law*, 140 S. Ct. at 2208 (plurality), 2220 (Thomas, J., joined by Gorsuch, J., concurring in part and dissenting in part) (majority recognizing that dismissal is the "straightforward remedy" for the undisputed "constitutional defect"). To conclude, as the CFPB does, that so long as some subsequent director at some later point blesses the decision, nothing else need be done, effectively leaves those asserting such violations with no meaningful remedy. But absent meaningful relief for successful constitutional challenges, there is no incentive to raise them. *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018).

The Ninth Circuit's recent decision on remand in *CFPB v. Seila Law* does not change that analysis. There, the court concluded that the CFPB had the authority to issue a civil investigative demand when it was initially issued because its "constitutional infirmity relate[d] to the Director

alone, not to the legality of the agency itself." 984 F.3d 715, 718-20 (9th Cir. 2020) (citing *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)).  But that is wrong.  In *Seila Law*, the Supreme Court expressly held that the CFPB's structure violated the separation of powers and that, as "*an agency*," it has "*no place in our constitutional structure.*"[5]  140 S. Ct. at 2201 (emphasis added).  Indeed, the Court extensively discussed other agencies whose structures did not violate the separation of powers, despite having "good-cause tenure" protection for their officers.  *Id.* at 2201 ("An agency with a structure like that of the CFPB is almost wholly unprecedented").  Because the separation of powers issue was not limited to a single individual but to the agency as a whole, the agency itself lacked constitutional authority to act.[6]

### B. The CFPB Lacked Authority To Ratify This Suit After The Statute of Limitations Had Run

The CFPB cannot satisfy the second prong of the *NRA Victory Fund* test either.  That is because Director Kraninger's attempted ratification on July 8, 2020, executed more than three years after the CFPB brought the underlying enforcement action (February 7, 2017)—and more than two years after the CFPB noticed its appeal (September 14, 2018)—came far too late.  *See* 12 U.S.C. § 5564(g)(1) (three year statute of limitations); Fed. R. App. P. 4(a)(1)(B)(ii) (requiring notice of appeal be filed within 60 days).

---

[5] While *Seila Law* also held that by severing the for-cause removal provision, the agency could continue to operate *prospectively*, implicit in that holding is that while the for-cause removal provision was in place—*i.e.*, at the time this action was filed—the agency was *not* constitutionally operational, otherwise there would have been no need for severance at all.  *See Seila Law*, 140 S. Ct. at 2192.

[6] The Supreme Court is currently considering similar issues in *Collins v. Mnuchin*, Case No. 19-422.  Specifically, two of the issues before the Court are:  (1) whether the Federal Housing Finance Agency's structure, which is comparable to the CFPB's, violates the separation of powers; and (2) whether courts must set aside a final agency action taken by the FHFA while it was unconstitutionally structured.

11

As the Supreme Court explained, "[i]f an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other *unless made before such time*." NRA Victory Fund, 513 U.S. at 98 (emphasis added) (quoting Restatement (Second) of Agency § 90 (1958)).  In fact, the Supreme Court gave two examples from the Restatement (Second) of Agency where the ratification doctrine is ineffective, both of which apply here:  "The bringing of an action, or of an appeal, . . . cannot be ratified after the cause of action or right to appeal has been terminated by lapse of time." *NRA Victory Fund*, 513 U.S. at 98 (quoting Restatement (Second) of Agency § 90 cmt. A (1958)).

Applying that principle, the Supreme Court held that the Solicitor General could not retroactively ratify the FEC's unauthorized decision to file for certiorari after the time for filing had lapsed.  It therefore dismissed the petition for want of jurisdiction.  Following *NRA Victory Fund*, courts have consistently distinguished between attempts to ratify litigation that occurred after the running of the statute of limitations and those that occurred before.  *Compare Benjamin v. V.I. Port Auth.*, 684 F. App'x 207, 212 (3d Cir. 2017) (affirming dismissal where ratification came after statute of limitations ran); *with Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 604 (3d Cir. 2016) ("*NRA* timing issue is not implicated here" (cleaned up)); *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203, 213 (D.C. Cir. 1998) (ratification permissible because "timing problem posed in *NRA* is not present here" and a valid officer was not barred from "starting the administrative proceedings over again"), *superseded by statute on other grounds*, *Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020)*, petition for cert. pending*.

None of the cases on which the CFPB relies in the parties' joint February 18, 2021 submission involve that same timing issue.[7]  (ECF No. 121.)  Take for example, the Ninth Circuit's decision on remand in *Seila Law LLC v. CFPB*, 984 F.3d 715, 718-20 (9th Cir. 2020), in which the Court expressly acknowledged that ratification *must* occur within the statutory limitations period.  It concluded that the ratification of the civil investigative demand was nonetheless valid because the "statutory limitations period pertains solely to the bringing of an enforcement action, which the CFPB has not yet commenced." *Id.* at 719.  Similarly, in *CFPB v. Citizens Bank, N.A.*, the enforcement action was brought a few months before the Supreme Court's decision in *Seila Law*, and the ratification came days after.  2020 WL 7042251, at *12.  The court there concluded that the CFPB could ratify its earlier tolling agreements, without which the statutes of limitations would have run, but in so doing, it expressly distinguished between the Bureau's decisions to bring civil enforcement actions which fall at "one end of the spectrum" and "ministerial tasks, for which ratification would be absurd" at the other. *Id.*  Tolling agreements, it concluded, were both "mundane" and "ministerial." *Id.*  At that other end of the spectrum, though, the court acknowledged that "*Seila Law* calls into question *all pending civil actions*"—including this one.  *Id.* (emphasis added).

---

[7] The only case that concluded that the CFPB could nonetheless maintain its action despite an untimely ratification did so by invoking equitable tolling (which appears to be the only time equitable tolling has been used in the context of ratification).  But in so doing, the court conceded that equitable tolling was an "extraordinary" form of relief and that absent that relief, "assuming that the CFPB discovered the violations more than three years prior to the July, 2020, ratification, Director Kraninger would not now have the power to reconsider the prior decision to bring suit, as the statute of limitations has expired." *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2021 WL 134618, at *10 (M.D. Pa. Jan. 13, 2021), motion to certify appeal granted, No. 3:17-CV-101, 2021 WL 772238 (M.D. Pa. Feb. 26, 2021).  That court, however, subsequently stayed the enforcement action and certified its decision for interlocutory appeal, acknowledging that the availability of equitable tolling was at a minimum unsettled under the law.

(footnote continued)

Here, Director Kraninger sought to ratify both the bringing of the enforcement action and the CFPB's subsequent appeal—actions that are the purest exercise of executive power "too late in the day to be effective."[8] *NRA Victory Fund*, 513 U.S. at 98.  Thus, under *NRA Victory Fund*, the only thing this Court can do is dismiss the CFPB's action.

## V.  CONCLUSION

This action began with a fundamental dispute over the constitutionality of the CFPB's structure.  For more than three years, the CFPB defended the constitutionality of its structure.  Then, only after judgment was entered in this Court and briefing complete in the Second Circuit, did the CFPB reluctantly reverse course, acknowledging, as Director Kraninger did, that its structure was unconstitutional.  Then, only after its constitutionality arguments were squarely rejected in *Seila Law*, did the CFPB attempt to ratify this enforcement action and its prior appeal.  That is far too little, and far too late.  The Court should dismiss the CFPB's suit without leave to amend.

| | |
|---|---|
| Dated this 12th day of March, 2021. | Respectfully submitted, |
| | /s/ Michael D. Roth |
| **CALCAGNI & KANEFSKY LLP** | **KING & SPALDING LLP** |
| ERIC KANEFSKY | DAVID K. WILLINGHAM (*pro hac vice*) |
| | MICHAEL D. ROTH (*pro hac vice*) |
| | **CALDWELL HAMMER LLP** |
| | JEFFREY M. HAMMER (*pro hac vice*) |
| | Attorneys for Defendants RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ |

---

[8] Appellate courts are also facing the timing issue. The Fifth Circuit in *CFPB v. All American Check Cashing, Inc., et al.*, No. 18-60302 (5th Cir.), will address whether the CFPB can maintain an enforcement action ratified after the statute of limitations has run, but has stayed proceedings pending *Mnuchin v. Collins*, No. 19-563 (U.S.).  The Ninth Circuit has called for additional briefing in *CFPB v. Cashcall, Inc.*, No. 18-55407 (9th Cir.), on the ratification issue.  The issue has also been certified for appeal to the Third Circuit.  *See supra* at 12 n.7.