UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSUMER FINANCIAL PROTECTION
BUREAU and THE PEOPLE OF THE
STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL FOR THE
STATE OF NEW YORK,

                Plaintiffs,

        -against-

RD LEGAL FUNDING, LLC; RD LEGAL
FINANCE, LLC; RD LEGAL FUNDING
PARTNERS, LP; and RONI
DERSOVITZ,

                Defendants.

17-cv-890 (LAP)

OPINION & ORDER

Loretta A. Preska, Senior United States District Judge:

    This is an action by Plaintiffs Consumer Financial

Protection Bureau (the "CFPB") and the People of the State of

New York, by Letitia James,[1] Attorney General for the State of

New York ("NYAG" or the "Attorney General"), against Defendants

RD Legal Funding, LLC; RD Legal Finance, LLC; RD Legal Funding

Partners, LP (collectively, the "RD Entities"); and Roni

Dersovitz, the founder and owner of the RD Entities (together

with the RD Entities, the "Defendants").  The CFPB asserts that

the Defendants violated certain provisions of the Consumer

Financial Protection Act ("CFPA" or the "Act").  The NYAG joins

---

[1] At the time the Complaint was filed, the Attorney General of
the State of New York was Eric T. Schneiderman.  The caption has
been amended to reflect the substitution.  (See Dkt. No. 135.)

the CFPB in bringing claims under the CFPA and independently
asserts that the RD Entities are liable under New York law for
the same actions and events that form the basis of the CFPA
claims.

Following this Court's dismissal of the CFPB's claims on
the ground that the CFPA's for-cause removal provision was
unconstitutional and not severable from the rest of the statute,
see Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC ("RD
Legal I"), 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018),[2] as amended,
2018 WL 11219167 (S.D.N.Y. Sept. 12, 2018), the Supreme Court
held that the for-cause removal provision was unconstitutional
but that the offending provision was severable from the rest of
the statute, Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S.
Ct. 2183, 2192 (2020).  In light of Seila Law, the Court of
Appeals affirmed in part and reversed in part RD Legal I and
remanded for this Court "to consider in the first instance the
validity of [then] Director Kraninger's [July 2020] ratification

---

[2] Before analyzing the CFPA's constitutionality, the Court
concluded that the RD entities were "covered persons" within the
meaning of the CFPA, id. at 752-768, that the CFPB adequately
alleged deceptive and abusive conduct by the RD Entities under
the CFPA, id. at 772-779, and that the CFPB adequately alleged
substantial assistance by Roni Dersovitz under the CFPA, id. at
773-779.  With respect to the NYAG's state law claims, the Court
concluded that the NYAG adequately alleged state law claims for
violations of civil and criminal usury laws, New York General
Obligations Law, deceptive practices, false advertising, and
fraud.  Id. at 780-784.

of this enforcement action."  Consumer Fin. Prot. Bureau v. RD

Legal Funding, LLC ("RD Legal II"), 828 Fed. Appx. 68 (2d Cir.

2020) (summary order) (Mem.).[3]  In other words, the case was

remanded to determine whether the July 2020 ratification of this

enforcement action by the then Director of the CFPB was

sufficient to ratify the CFPB's original decision to bring this

enforcement action in February 2017, when the CFPB was

unconstitutionally structured.

On remand, the Court sought the parties' views as to how

they wished to proceed.  (See Dkt. Nos. 120-121.)  On March 1,

2021, the parties jointly proposed a briefing schedule "to

address the validity of CFPB Director Kraninger's ratification

of this action."  (Dkt. No. 129.)

On March 12, 2021, Defendants filed the instant motion "to

dismiss this enforcement action filed by the [CFPB] because it

was brought by an unconstitutionally constituted agency, and the

CFPB's untimely attempt to subsequently ratify this action

cannot cure the agency's constitutional infirmity."  (Dkt. No.

132 at 1.)  The CFPB filed its brief in opposition on March 19,

---

[3] The Court of Appeals did "not reach defendants' other
arguments" (id. n.1) and did not purport to reverse any part of
this Court's June 21, 2018 order, as amended by its September
12, 2018 order, other than Part IV.C, which addressed the CFPB's
constitutionality and Acting Director Mulvaney's ratification.

2021 (dkt. no. 136), and Defendants filed their reply on April 2, 2021 (dkt. no. 138).

Over the ensuing nine months, the CFPB and Defendants submitted over a dozen letters addressing supplemental authority that they believe may be relevant to the ratification issue and the pending motion to dismiss.  Of note, the parties exchanged a series of letters on the import, if any, of the Supreme Court's June 2021 decision in Collins v. Yellen, 141 S. Ct. 1761 (2021). (See Dkt. Nos. 149, 150, 154, 155, 158, 161, 162, 163.)  The Court construes these numerous detailed submissions as supplemental briefing on the motion to dismiss.

Accordingly, the question presented in this motion to dismiss is narrow and concerns only Counts I-V of the Complaint— those counts brought under the CFPA—and it concerns those counts only to the extent they are brought by the CFPB.[4]  As explained in more detail below, the Supreme Court's decision in Collins v. Yellen compels the conclusion that the CFPB possessed the authority to bring this action in February 2017 and, hence, that ratification by Director Kraninger was unnecessary.  The motion to dismiss is denied.

---

[4]    Counts I-V are asserted independently by the NYAG.

I.   Background

The facts of this case are set forth in the Court's prior opinion.  RD Legal I, 332 F. Supp. 3d at 746-750.  Recited below are only those facts necessary to decide the narrow question presented.

The RD Entities are companies that offer cash advances to consumers waiting on payouts from settlement agreements or judgments entered in their favor.  The CFPB alleges that Defendants violated the CFPA by misleading these consumers into entering cash advance agreements that the Defendants represented as valid and enforceable sales but in reality functioned as usurious loans that were void under state law.

In bringing this action, the CFPB invokes its authority under Section 1054 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5564.  That statute provides, in relevant part, that:

> If any person violates a Federal consumer
> financial law, the Bureau may . . . commence
> a civil action against such person to impose
> a civil penalty or seek all appropriate legal
> and equitable relief including a permanent or
> temporary injunction as permitted by law.

12 U.S.C. § 5564(a).  The statute also provides that, subject to certain exceptions not relevant here or "as otherwise permitted by law or equity, no action may be brought under this title more

than 3 years after the date of discovery of the violation to
which an action relates." Id. § 5564(g)(1).

   The CFPB filed the Complaint on February 7, 2017.  (Dkt.
no. 1.)  On that date, the CFPB was headed by Richard Cordray,
who was appointed by President Obama and confirmed by the
Senate.  Director Cordray was removable only for cause under the
CFPA, a provision that the Supreme Court has ruled is
unconstitutional in violation of the separation of powers.  See
Seila Law, 140 S. Ct. at 2192.  That provision has been severed
from the CFPA, and CFPB directors are now removable at will by
the President.  Id.  According to Defendants, because the
enforcement action was brought at a time when the CFPB's
director was not removable at will, the CFPB Director's (and
therefore the CFPB's) decision to bring an enforcement action
was void ab initio.

   On November 24, 2017, Director Cordray resigned his
position at the CFPB.  English v. Trump, 279 F. Supp. 3d 307,
313 (D.D.C. 2018).  Later that day, President Trump appointed
Mick Mulvaney, the incumbent director of the Office of
Management and Budget, to be the acting director of the CFPB.
Id. at 314; see also Dkt. No. 78.  Acting Director Mulvaney was
removable by President Trump at will because the CFPA's removal
provision by its terms applied only to "the Director," not to an
acting director.  See 12 U.S.C. § 5491(c)(3); see also RD Legal

I, 332 F. Supp. 3d at 785 (noting that "the President may remove

Mr. Mulvaney at will").

On May 11, 2018, Eric Blankenstein, then Policy Associate

Director for Supervision, Enforcement, and Fair Lending of the

CFPB, submitted a declaration ratifying this enforcement action

under authority delegated to him by Acting Director Mulvaney:

> On March 11, 2018 . . . , Acting Director
> Mulvaney delegated to me the authority to
> ratify on behalf of the Bureau those
> enforcement matters where a lawsuit has been
> initiated and a complaint has been filed in
> court prior to November 25, 2017.
>
> . . .
>
> After having been briefed by the Bureau
> staff regarding this case, and pursuant to the
> authority delegated to me, I ratified the
> Bureau's decision to file a lawsuit against RD
> Legal Funding, LLC; RD Legal Finance, LLC; RD
> Legal Funding Partners, LP; and Roni
> Dersovitz.

(Dkt. No. 78-1.)

On December 11, 2018, Acting Director Mulvaney was replaced

by Director Kathleen Kraninger, who was appointed by President

Trump and confirmed by the Senate.  (Dkt. No. 136-1.)  On July

8, 2020, following the Supreme Court's decision in Seila Law,

Director Kraninger, who was removable by the President at will,

submitted a declaration ratifying this enforcement action:

> In my capacity as the Bureau's Director,
> I have considered the basis for the Bureau's
> decisions to file the lawsuit against

> Defendants and to appeal the district court's
> dismissal of that action.
>
>     On behalf of the Bureau, I hereby ratify
> the decisions to file the lawsuit against
> Defendants and to appeal the district court's
> dismissal of that action.

(Dkt. No. 136-1.)  The July 8, 2020 ratification came more than

three years after the filing of the Complaint on February 7,

2017 and, therefore, more than three years "after the date of

discovery of the violation to which [the] action relates."  12

U.S.C. § 5564(g)(1).

Defendants argue that the ratification doctrine does not

apply here as a legal matter and, even assuming it does, that

Director Kraninger's ratification came too late because at the

time of ratification the three-year statute of limitations had

expired.  The CFPB, relying on the Supreme Court's recent

decision in Collins, disagrees and argues that the decision to

bring suit is and was always valid and therefore ratification

was not necessary.  Defendants respond that Collins does not

apply here and, even if it does, the remedial test set forth in

Collins is met and warrants relief for Defendants in the form of

dismissal.

## II.  Legal Standard

Defendants do not identify in their papers the basis in

Rule 12(b) for their motion to dismiss.  Because the question

presented is not jurisdictional in nature and instead presents a

hybrid Article III and statute of limitations issue, the Court

construes the motion to dismiss as one brought under Rule

12(b)(6).  Accord Consumer Fin. Prot. Bureau v. Access Funding,

LLC, No. 16-cv-3759, 2021 WL 2915118, at *11 (D. Md. July 12,

2021); see also Consumer Fin. Prot. Bureau v. Nat'l Collegiate

Master Student Loan Tr., No. 17-cv-1323, 2021 WL 1169029, at *2-

3 (D. Del. Mar. 26, 2021).

In considering a motion to dismiss pursuant to Rule

12(b)(6), a court must "accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the

plaintiff's favor."  Phelps v. Kapnolas, 308 F.3d 180, 184 (2d

Cir. 2002) (citation and internal quotation marks omitted).

Though a court must accept all factual allegations as true, it

gives no effect to "legal conclusions couched as factual

allegations."  Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35

(2d Cir. 2017) (quoting Starr v. Sony BMG Music Entm't, 592 F.3d

314, 321 (2d Cir. 2010)).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.  Deciding whether a complaint states a

claim upon which relief can be granted is "a context-specific

task that requires the reviewing court to draw on its judicial

experience and common sense."  Rahman v. Schriro, 22 F. Supp. 3d

305, 310 (S.D.N.Y. 2014) (quoting Iqbal, 556 U.S. at 679).

    III. Discussion

    The question before the Court, as instructed by the Court

of Appeals and as briefed by the parties, is whether Director

Kraninger's July 2020 ratification of this enforcement action

against Defendants validly ratified, within the applicable

statute of limitations, the CFPB's filing of the Complaint in

February 2017 at a time when Defendants contend the CFPB lacked

authority to initiate the action.

    Although absent from the Complaint, the parties do not

dispute, and the Court therefore accepts as true for the

purposes of this motion, the Court of Appeals's statement that

"now-acting CFPB Director Kathleen L. Kraninger ratified the

enforcement action on July 8, 2020."  RD Legal II, 828 Fed.

Appx. 68.[5]  Indeed, RD Legal concedes that "the CFPB's then-

Director Kraninger submitted a declaration dated July 8, 2020,"

---

[5] The Court of Appeals appears to have been referencing the
"Declaration of Kathleen L. Kraninger, Director of Plaintiff-
Cross-Appellee Consumer Financial Protection Bureau, Regarding
Ratification", dated July 8, 2020 and filed in the Court of
Appeals, CA No. 18-2743, Dkt. No. 237-2.

10

in which "she asserted that she understood she was removable for

cause, that she had considered the bases for bringing the

enforcement action and for appealing its dismissal, and that she

ratified both decisions."  (MTD at 2.)  The CFPB likewise states

that "the Bureau's then-Director, Kathleen Kraninger, ratified

the decision to file this suit" (Opp. at 7) and filed Ms.

Kraninger's July 8, 2020 declaration of ratification as an

attachment to its opposition to the motion to dismiss (see dkt.

no. 136-1).

> A.   The CFPB Possessed the Authority to Initiate This
>      Enforcement Action, and No Ratification Was
>      Necessary.

After the Supreme Court decided Seila Law and the Court of

Appeals remanded to this Court for an inquiry into ratification,

the Supreme Court issued its opinion in Collins v. Yellen, 141

S. Ct. 1761 (2021).  There, the Supreme Court considered a

constitutional challenge to the structure of the Federal Housing

Finance Authority (FHFA), which was led by a single director

who--like the CFPB directors at issue in Seila Law--was

removable by the President only for cause.  Id. at 1770.  On the

constitutional merits (Part III.B of the majority opinion), a

majority of six Justices held, relying heavily on Seila Law,

that the FHFA's structure violated constitutional separation of

powers.  Id. at 1783-84.  In considering the appropriate remedy

(Part III.C of the majority opinion), eight of the nine Justices

11

agreed that the relevant criterion for determining whether an

agency head possesses "the authority to carry out the functions

of the office," id. at 1788, is whether the agency head was

properly appointed, not whether she was properly removable:

> All the officers who headed the FHFA during
> the time in question were properly appointed.
> Although the statute unconstitutionally
> limited the President's authority to remove
> the confirmed Directors, there was no
> constitutional defect in the statutorily
> prescribed method of appointment to that
> office.  As a result, there is no reason to
> regard any of the actions taken by the FHFA in
> relation to the third amendment as void.

Id. at 1787 (emphasis in original).  Put differently, "the

unlawfulness of the removal provision does not strip the

Director of the power to undertake the other responsibilities of

his office."  Id. at 1788 n.23 (citing Seila Law, 140 S. Ct. at

2207-2211).

This reasoning applies with equal force here.  The CFPB

brought this enforcement action in February 2017, when Director

Cordray was removable by President Trump only for cause.  But

there is no dispute that Director Cordray was properly appointed

by President Obama and confirmed by the Senate and, therefore,

"there is no reason to regard any of the actions taken by the

[CFPB] in relation to [this enforcement action] as void."  Id.

at 1787.  Director Cordray possessed "the authority to carry out

the functions of the office," Id. at 1788, including the

authority to exercise enforcement functions under 12 U.S.C.

§ 5564.  Because the CFPB, under Director Cordray, brought this

enforcement action in February 2017 with the necessary authority

and within the applicable statute of limitations, no

ratification was necessary.  Accord Consumer Fin. Prot. Bureau

v. Nat'l Collegiate Master Student Loan Tr., No. 17-cv-1323, ---

F. Supp. 3d ---, 2021 WL 5936404, at *2 (D. Del. Dec. 13, 2021).

Defendants argue that Collins is distinguishable

principally on the grounds that (1) Collins involved a suit by

shareholders against the Treasury Department seeking prospective

relief in the form of damages and an injunction whereas this

case involves an enforcement action by the CFPB against

Defendants that seek to dismiss the action due to the

unconstitutional removal restriction; (2) the action challenged

in Collins was initially taken by an acting director who was

removable at will whereas the action here was brought by

Director Cordray who was removable only for cause; and (3) the

Court in Collins was not presented with a statute of limitations

issue.  (Dkt. No. 154 at 1-3.)  The Court has considered these

arguments and finds them to be unpersuasive.

As discussed above, the Court in Collins broadly held that

what matters in terms of authority to carry out the functions of

an executive agency is whether a director was properly

appointed, not whether she was properly removable.  It is

therefore of no moment for purposes of determining whether the

CFPB possessed the necessary authority to bring this action

whether Director Cordray was removable for cause or at will; it

is undisputed that Director Cordray was lawfully appointed and

confirmed by the Senate.  The CFPB possessed the necessary

authority when it initiated this enforcement action, so there is

no statute of limitations issue here,[6] just as there was no

statute of limitations issue in Collins.  And nothing in the

Court's decision in Collins purported to limit its holding to

the type of relief sought or to the side of the "v" on which the

government agency happens to appear.

Although the Court of Appeals directed this Court to

consider the validity of Director Kraninger's ratification, RD

Legal II, 828 Fed. Appx. 68, the legal landscape has shifted

since the mandate issued such that ratification is no longer

directly implicated.  As the Supreme Court stated in Collins,

its decision in Seila Law to "remand the case so that the lower

courts could decide whether . . . the Board's issuance of an

investigative demand had been ratified by an Acting Director who

was removable at will by the President" did not "implicitly

mean[] that the Director's action would be void unless lawfully

---

[6] Defendants do not argue that at the time this enforcement
action was initiated in February 2017, "more than 3 years" had
passed since "the date of discovery of the violation to which
[the] action relates."  12 U.S.C. § 5564(g)(1).

14

ratified."  141 S. Ct. at 1788.  The Court concludes that

Director Cordray's exercise of authority in bringing this

enforcement action was not "void unless lawfully ratified."

Hence, analysis of the ratification issue is unnecessary.

> B.    Defendants Are Not Entitled to Dismissal Because
>       the Unconstitutional Removal Provision Did Not
>       Cause Them Harm.

Despite its holding that an unconstitutional removal

restriction does not void otherwise lawful exercises of agency

power by an agency head who is lawfully appointed, the Supreme

Court in Collins held that a remedy for an "unconstitutional

restriction on the President's power to remove" could be

appropriate where the restriction itself "inflict[ed]

compensable harm," which on the facts in Collins "[could not] be

ruled out."  Id. at 1789.  The Court offered two examples in

which an unconstitutional removal provision "would clearly cause

harm":

> Suppose, for example, that the President had
> attempted to remove a Director but was
> prevented from doing so by a lower court
> decision holding that he did not have "cause"
> for removal.  Or suppose that the President
> had made a public statement expressing
> displeasure with actions taken by a Director
> and had asserted that he would remove the
> Director if the statute did not stand in the
> way.

Id.

15

The parties dispute whether the Supreme Court's majority in
Collins established a "but for" test, or an "inflicted
compensable harm"/"caused harm" test, or some other inquiry for
determining the causal relationship between an unconstitutional
removal provision and an alleged harm flowing from that
restriction, which might warrant a remedy such as dismissal.
(See Dkt. Nos. 161, 162, 163.)  The CFPB points to Judge Bibas's
recent decision in Consumer Financial Protection Bureau v.
National Collegiate Master Student Loan Trust, which described
Collins as having established a test requiring a showing "that
the agency action would not have been taken but for the
President's inability to remove the agency head."  No. 17-cv-
1323, --- F. Supp. 3d ---, 2021 WL 5936404, at *2 (D. Del. Dec.
13, 2021).  In her partial concurrence in Collins, Justice Kagan
similarly summarized the majority's holding on remedy, with
which she agreed, as providing a remedy "only when the
President's inability to fire an agency head affected the
complained-of decision."  141 S. Ct. at 1801 (Kagan, J.,
concurring in part).

For their part, Defendants argue that the test set forth by
the Collins majority simply requires that the unconstitutional
removal provision "inflict[ed] compensable harm" or "cause[d]
harm," with reference to the non-exclusive examples that "would
clearly cause harm" provided by the Court and reproduced above.

16

(Dkt. No. 162 (quoting <u>Collins</u>, 141 S. Ct. at 1788-89).)

According to Defendants, the but-for test advocated by the CFPB

is contrary not only to <u>Collins</u> but also to the Supreme Court's

statement in <u>Seila Law</u> that litigants are "not required to prove

that the Government's course of conduct would have been

different in a 'counterfactual world.'"  (<u>Id.</u> (quoting <u>Seila</u>

<u>Law</u>, 140 S. Ct. at 2196) (cleaned up).)  But this language

related to the parties' standing, not their entitlement to a

remedy.  Indeed, the Court in <u>Collins</u> stated, in no uncertain

terms, that the passage on which Defendants rely "should not be

misunderstood as a holding on a party's entitlement to relief

based on an unconstitutional removal restriction."  141 S. Ct.

at 1788 n.24 (citing <u>Seila Law</u>, 140 S. Ct. at 2195-96).)

To the extent there is an actual dispute over the proper

test to be applied, the Court need not resolve the dispute

because the outcome is the same.  Suffice it to say that for

Defendants to be entitled to dismissal of this enforcement

action because of the CFPA's unconstitutional removal provision,

there must be <u>some</u> nexus between the existence of the unlawful

removal provision and the bringing of (or maintenance of) this

enforcement action.  See <u>Collins</u>, 141 S. Ct. at 1789.

The relief sought by Defendants is dismissal of this

enforcement action.  According to Defendants, "but for the

unconstitutional removal provision, Director Cordray would have

17

been removed prior to approving the filing of this enforcement

action." (Dkt. No. 154 at 4.) Even accepting that premise as

true, however, it does not follow that, once removed, Director

Cordray's successor would have declined to bring this

enforcement action. In fact, we know the opposite to be true.

After Director Cordray stepped down on Thanksgiving Day of

2017, President Trump appointed Mick Mulvaney to be acting

director of the CFPB. If President Trump felt that the

initiation of this enforcement action was in error and

contravened his obligation "to ensure the faithful execution of

the laws," he could have fired Acting Director Mulvaney for

refusing voluntarily to dismiss the action. See, e.g., Seila

Law, 140 S. Ct. at 2235 & n.9 (Kagan, J., concurring in part).

He did not do so. Rather, under Acting Director Mulvaney, the

CFPB reaffirmed its decision to bring this enforcement action[7]

and continued actively to prosecute the case,[8] including an

appeal of this Court's judgment against the CFPB.[9] President

Trump then appointed Kathleen Kraninger to direct to CFPB; her

tenure as Director began on December 11, 2018. Again, under

---

[7] See Dkt. No. 78-1.

[8] See, e.g., Dkt. Nos. 64 (letter dated 1/10/18), 67 (letter dated 1/17/18), 73 (letter dated 3/5/18), 92 (letter dated 8/10/18), 95 (letter dated 8/16/18).

[9] See Dkt. Nos. 103-104 (letter and proposed judgment to facilitate appeal dated 9/4/18), 108 (notice of appeal dated 9/14/2018); see also Dkt. Nos. 114-115 (letter and revised proposed judgment dated 10/23/2018).

Director Kraninger, the CFPB reaffirmed its decision to bring

this enforcement action[10] and continued actively to prosecute the

case following issuance of the Court of Appeals' mandate.[11]

Whatever harms might have flowed from President Trump's

alleged desire--but inability--to fire Director Cordray, the

CFPB's decision to bring, and years of unbroken prosecution of,

this enforcement action against these Defendants was not one of

them.  "Thus, the CFPB's initial decision to bring this suit was

not ultra vires" and Defendants are not entitled to relief in

the form of dismissal of this action.  See Nat'l Collegiate

Master Student Loan Tr., 2021 WL 5936404, at *2.

                         *    *    *

In its June 21, 2018 opinion and order, the Court concluded

that "the CFPB lacks authority to bring this enforcement action

because its composition violates the Constitution's separation

of powers, and thus the CFPB's claims are dismissed."  RD Legal

I, 332 F. Supp. 3d at 785 (cleaned up).  The Supreme Court has

since held that a properly appointed agency head does not lack

the authority to undertake the responsibilities of his office

---

[10] See Dkt. No. 136-1.
[11] See, e.g., Dkt. Nos. 121 (joint letter dated 2/18/21), 125
(appearance for telephonic status conference), 136 (opposition
to motion to dismiss dated 3/19/21), 143 (letter dated 4/15/21),
145 (letter dated 5/18/21), 149 (letter dated 6/25/21), 153
(letter dated 7/14/21), 155 (letter dated 7/23/21), 160 (letter
dated 10/4/21).

simply because of an unconstitutional removal restriction.  That

decision is binding here.  Because the CFPB possessed the

authority to bring this enforcement action, and because the

decision to bring this enforcement action was unaffected by the

unconstitutional removal restriction then in effect, the motion

to dismiss is DENIED and the CFPB's claims against Defendants

may proceed.

Counsel shall confer and inform the Court by letter no

later than March 30, 2022, how they propose to proceed.

**SO ORDERED.**

Dated:     New York, New York
           March 16, 2022

_____
LORETTA A. PRESKA
Senior United States District Judge